FILED by ___ D.C.

ELECTRONIC

**Apr 21 2006**

CLARENCE  MADDOX
CLERK  U.S.  DIST.  CT.
S.D.  OF  FLA.- MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

LINEX TECHNOLOGIES, INC.

      Plaintiff,

                                    Case No. 05-80300-CIV-MARRA/SELTZER

  v.

                                      Judge Marra

MOTOROLA, INC., et al.,

                                      Mag. Judge Seltzer

      Defendants.

## DEFENDANTS' JOINT MEMORANDUM OF LAW
## IN SUPPORT OF THEIR PROPOSED CLAIM CONSTRUCTION TERMS

Defendants Motorola, Inc., Nortel Networks, Inc., Tropos Networks, Inc., and Strix Systems, Inc. (collectively, "Defendants"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their proposed constructions of the disputed terms in asserted claims 32 and 33 of U.S. Patent No. 6,493,377. There are 13 disputed terms presently at issue, as identified in the Joint Claim Chart filed by the Plaintiff and the Defendants (DE 65), which sets forth the parties' respective construction or definition for each of the 13 disputed terms. For the reasons set forth in the following memorandum of law, the Defendants respectfully request that the Court adopt each of the Defendants' proposed constructions.

## I.     INTRODUCTION

This case involves U.S. Patent No. 6,493,377 (the "'377 Patent"), a patent directed to a distributed network, spread-spectrum system. [1] Plaintiff Linex Technologies neither manufactures nor sells any products covered by the '377 Patent, but has accused the Defendants of infringing the patent.

When the terms within the claims of the '377 Patent are properly construed, not one of any of the Defendants' products infringe the '377 Patent. Defendants believe their interpretations of these claim terms are appropriate and consistent with the patent statute and case precedent.

---

[1]  A copy of the '377 Patent is attached as Exhibit 1.

## II.    OVERVIEW OF THE '377 PATENT

The '377 patent relates to a system for routing data from cell phones or other end user devices (referred to as "remote stations") through the "nodes" of an infrastructure network.  The patent illustrates a prior art "star network" in Figure 1.  According to the patent, in this prior art network, "the routing of data is [by] a fixed communication path, from a remote station through a base station to the central office and vice versa."  '377 Patent, col. 1, ln. 29-32.[2]

The patent further discloses the use of a "spread-spectrum" communication system, with "a plurality of remote stations and a plurality of nodes."  *Id.* at col. 2, ln. 21-22.  Each node in the system is capable of receiving and forwarding data packets that originate with a remote station.  Each "packet has a source address and a destination address, and may contain other information such as flow-control information, forward error correction, and message data."  *Id.* at col. 2, ln. 47-51.

The nodes are further able to receive, store, and transmit the packets to other nodes in the system.  To perform these operations, each node may also include a store-and-forward subsystem and a flow-control subsystem, or the flow-control subsystem can be centralized.  *Id.* at col. 2, ln. 29-36 and col. 6, ln. 4-23.  Additionally, as shown in Figure 2, the nodes may communicate with multiple adjoining nodes, and certain nodes, called "hub nodes," may also communicate with a "central telephone office."  *Id.* at col. 4, ln. 4-11.

The specific route that a packet takes through the infrastructure network from, for example, a remote station outside the infrastructure network "to an intended hub node and central office, toward the destination address," or from a hub node to a remote station, is determined by the "flow-control" system.  *Id.* at col. 3, ln. 20-21.  "The flow-control subsystem communicates traffic information between each of the nodes in the plurality of nodes."  *Id.* at col. 3, ln. 60-62. "The traffic information typically includes traffic density at each of the nodes and node-memory availability.  Using the traffic information, and in response to a packet having the destination address to the hub node, the flow-control subsystem routes the packet through appropriate nodes to the hub node or, in the case of a 'local call,' to the remote user directly."  *Id.* at col. 2, ln. 63 – col. 3, ln. 1.

Although this is a general overview of the patented system, Claims 32 and 33 are the specific claims that are at issue in this case.  Defendants submit below what is believed to be

---

[2] Citations to the patent are to column and line number.

512020v1

proper interpretation of certain terms in the claims in accordance, primarily, with the intrinsic evidence in the patent as is consistent with case precedent.

## III.   THE APPLICABLE LAW REGARDING CLAIM CONSTRUCTION

### 1.   STANDARD

Patent infringement requires a two-step analysis.   First, the court must construe the meaning of the claims as a matter of law.  *See Markman v. Westview Instr., Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996) (affirming district court's grant of judgment as a matter of law restricting the meaning of "inventory").   Then, the trier of fact determines whether the accused product infringes the patent-in-suit by comparing the properly-construed claims to the accused product.  *Id.*  The purpose of claim construction is to resolve ambiguities in the claim language to assist the trier of fact in resolving any issues of infringement.  *See Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1379 (Fed. Cir. 2006) (reversing the district court's broad construction of "adjustable" based on narrow usage in the specification); *see also Markman*, 52 F.3d at 979.  This is crucial, as "[i]t is 'a bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (internal citations omitted).   "[T]he claim construction task requires [the] court to discern the meaning of [claim] term[s] in the context of [the] invention and field of art."  *Curtiss-Wright*, 438 F.3d at 1379.  As the Federal Circuit recently noted,

> the words of a claim 'are generally given their ordinary and customary meaning'…The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation.

*Id*. at 1312-1313 (internal citations omitted).

Every patent's specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  *See, e.g., Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (affirming summary judgment that "aesthetically pleasing" was indefinite); 35 U.S.C. § 112, ¶ 2 (2000).  Indefiniteness can affect regular claim elements and means-plus-function claim elements.  *E.g. Default Proof Credit Card System, Inc. v. Home Depot U.S.A., Inc.,* 412 F.3d 1291, 1298-99 (Fed. Cir. 2005) (affirming summary judgment by Judge Altonaga that patent was invalid for failing to disclose structure for "means for dispensing … debit card").  A valid claim

3

term or means-plus-function element must be "amenable to construction." *Novo Industries, L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1358 (Fed. Cir. 2003) (reversing the district court's construction of indefinite claim language because the "district court was required to guess as to what was intended"). An "insolubly ambiguous" term is indefinite. *See Datamize*, 417 F.3d at 1347 ("aesthetically pleasing"); *Novo Industries*, 350 F.3d at 1358 ("a rotatable"); *Default Proof*, 412 F.3d at 1298-99 ("means for dispensing"). When the Court cannot know "how the claim should be interpreted" the claim is invalid for indefiniteness. *Novo Industries*, 350 F.3d at 1358.

### 2.   CLAIM INTERPRETATION

#### A.   *Intrinsic vs. Extrinsic Evidence*

The Federal Circuit has stated that "[i]ntrinsic evidence is the most reliable guide to help the court determine which of the possible meanings of the terms in question was intended by the inventor to particularly point out and distinctly claim the invention." *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004); *accord Phillips*, 415 F.3d at 1317. Intrinsic evidence includes the claims, specification, and prosecution history; extrinsic evidence is everything else. *See Interactive Gift Exp., Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed Cir. 2001).

Extrinsic evidence "may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips*, 415 F.3d at 1319. Nevertheless, "because extrinsic evidence can help educate the court regarding the field of the invention and can help the court determine what a person of ordinary skill in the art would understand claim terms to mean, it is permissible for the district court in its sound discretion to admit and use such evidence." *Id.* (internal citations omitted). Within the class of extrinsic evidence, the Federal Circuit has observed that dictionaries and treatises can be useful in claim construction. *Phillips*, 415 F.3d at 1318. The Federal Circuit has "especially noted the help that technical dictionaries may provide to a court to better understand the underlying technology and the way in which one of skill in the art might use the claim terms." *Id.* (internal quotations omitted).

#### B.   *Ordinary Meaning, the Lack of Ordinary Meaning and the Specification*

Terms in patent claims, including the claims at issue in the instant case, either have an ordinary meaning to persons skilled in the art or do not have such a meaning. Where a term has an ordinary meaning, that ordinary meaning generally applies. *Phillips*, 415 F.3d at 1312-13.

"[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313.  A court "cannot look at the ordinary meaning of the term … in a vacuum.  Rather, [it] must look at the ordinary meaning in the context of the written description and the prosecution history." *Id.*; *see also Curtiss-Wright*, 438 F.3d at 1378 (mistake to put "too much emphasis on the ordinary meaning" without adequate grounding in the specification)

In construing the claims, the Court must consider whether the "patentee [has chosen] to be his own lexicographer and used terms in a manner other than their ordinary meaning." *Interactive Gift*, 256 F.3d at 1331.  A patentee may ascribe a specific meaning to a term either explicitly or implicitly: "the specification may define claim terms by implication …." *Astrazeneca AB v. Mutual Pharm. Co., Inc.*, 384 F.3d 1333, 1339-40 (Fed. Cir. 2004) (inventor's lexicography operated as an "implicit disavowal of nonsurfactant solubilizers").  The Court should consider what the patent specification "envisions and discloses" in construing the claims. *Interactive Gift*, 256 F.3d at 1337.  Where a term has no ordinary meaning, the patentee has necessarily acted as his own lexicographer.

Whether a claim must, in any particular case, be limited to the embodiment in the specification depends on the specificity of the description of the invention and on the prosecution history. *Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328, 1330 (Fed. Cir. 2000) (construing claims to include the inventor's definition of "water-soluble polydextrose" in the specification); *see also SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1344-45 (Fed. Cir. 2001) ("separate" lumens included only the "coaxial" lumens disclosed in the specification, and excluded "side-by-side" lumens).  Generally, details or limitations appearing in the specification are not read into a claim because the claim, not the specification, measures the invention. *Fuji Photo Film Co., Ltd., v. U.S. Int'l Trade Comm'n*, 386 F.3d 1095, 1106 (Fed. Cir. 2004) (holding that there is no merit in the argument that, without a limiting interpretation, a "claim would not be supported by the specification, and that the claim should be read narrowly for that reason.  It is a familiar axiom of patent law … that the scope of the claims is not limited to the preferred embodiments described in the specification.").  However, in some instances, the specification may limit the scope of the claims to the preferred embodiment, *see SciMed*, 242 F.3d at 1344-45, or in unusual circumstances may exclude the preferred embodiment altogether.

5

*E.g. Elekta Instrument S.A. v. O.U.R. Scientific Intern., Inc.*, 214 F.3d 1302 (Fed. Cir. 2000) (construing patent claim to exclude the preferred and only embodiment for a medical device based on unambiguous claim language and the prosecution history).

Accordingly, whether or not a term has an ordinary meaning, "the specification is 'usually ... dispositive ... [and] the single best guide to the meaning of a disputed term.'" *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 386 F. Supp. 2d 526, 532 (S.D.N.Y. 2005) (citing *Phillips*, 415 F.3d at 1315); *Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 770 (Fed. Cir. 1996) (holding that claim language and specification made clear that openings "adjacent each of said side walls and end walls" of a rail car required the openings to be adjacent to all four walls of the railcar).

## IV.    CLAIM 32 IS INDEFINITE

As an initial matter, claim 32 is indefinite because the '377 patent does not disclose the "structure" (i.e., algorithm) that performs the claimed functions of the "flow-control means." In particular, claim 32 requires a "flow-control means" that performs, in relevant part, "selecting a path of a multiplicity of nodes … to the destination node, said flow-control means for routing, responsive to the traffic information, the respective packet through the path of the multiplicity of nodes to the respective destination node." In other words, the flow-control means determines the specific path a packet takes through the network. The parties agree that the "flow-control means" of claim 32 must be interpreted as a "means-plus-function" element under 35 U.S.C. § 112, ¶ 6. That statute provides that when a claim element is "expressed as a means . . . for performing a specified function without the recital of structure . . . , such claims shall be construed to cover the corresponding structure . . . in the specification and equivalents thereof."

Where the patent does not disclose the underlying structure to perform the claimed function, however, then the patent claim is invalid. *See, e.g., Default Proof Credit Card System, Inc. v. Home Depot U.S.A., Inc.,* 412 F.3d 1291 (Fed. Cir. 2005) (affirming summary judgment by Judge Altonaga that patent was invalid for failing to disclose structure for "means for dispensing … debit card"). "To meet the definiteness requirement, structure disclosed in the specification must be clearly linked to and capable of performing the function claimed by the mean-plus-function limitation." *Id.* at 1299. The fact that a person of ordinary skill in the art might be able to create a structure to perform the function is irrelevant; the patent must disclose a structure for performing the function. *See Medical Instrumentation & Diagnostics Corp. v.*

*Elekta AB*, 344 F.3d 1205, 1212 (Fed. Cir. 2003) ("It is important to determine whether one of skill in the art would understand the *specification itself to disclose the structure*, not simply whether that person would be capable of implementing that structure.") (emphasis added).

The issue of whether a patent adequately discloses a structure for performing the claimed function of a means-plus-function element may be determined during claim construction. *See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1112 (Fed. Cir. 2002) (affirming holding of indefiniteness made at claim construction); *ASM America, Inc. v. Genus, Inc.*, 260 F. Supp. 2nd 827, 857-58 (N.D. Cal. 2002) (holding, during claim construction, that claim was indefinite as a matter of law because of the "failure to provide any structure for performing the claimed function.").

Where the claimed function is to be performed by a computer, as with the flow-control means of claim 32, the Court must determine what algorithm, if any, is disclosed in the specification to perform the claimed  function:  "In a means-plus-function claim in which the disclosed structure is a computer, or a microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm." *WMS Gaming, Inc. v. Int'l Game Tech.*, 180 F.3d 1339, 1349 (Fed. Cir. 1999); *see also ABB Automation, Inc. v. Schlumberger Res. Mgmt. Servs., Inc.*, 2003 U.S. Dist. LEXIS 7597, at *2-3 (D. Del. May 6, 2003) ("a court must identify the algorithm disclosed in the specification (often in the form of figures or flowcharts) when construing means-plus-function claim limitations involving a microprocessor programmed to carry out an algorithm"); *Tehrani v. Hamilton Med., Inc.*, 331 F.3d 1355, 1361-62 (Fed. Cir. 2003) (vacating and remanding "for the district court to determine what algorithm forms part of the structure of the 'means for processing' limitation" recited in the patent claims).

In *WMS Gaming*, the court considered, in connection with a slot machine patent, whether an algorithm was disclosed to perform the claimed "means for assigning a plurality of numbers representing said angular positions of said reel. . . ."  The court held that the algorithm was sufficiently disclosed in a table of numbers depicted in Figure 6 of the patent. *Id.* at 1345, 1349. If the algorithm had not been disclosed, then the patent claim would be invalid.

In *MDS Assoc. v. United States*, 37 Fed. Cl. 611 (Cl. Ct. 1997), for example, the court considered a patent related to a collision avoidance radar system for ships.  The patent claims had a means plus function element relating to a moving vehicle (the "ownship") calculating the

7

"closest point of approach" of a target object.  The patent disclosed that the calculation was based on certain variables, such as velocity and target location.  37 Fed. Cl. at 625.  In particular, the claim recited "means responsive to the velocity representative and target position signals for providing a vector signal representative of … the closest point of approach."  Nevertheless, the court held that the patent claim was invalid because there was no specific algorithm disclosed for performing the calculation.  While a computer programmer might know how to create such an algorithm, this did not save the patent claim:

> The Government does not assert that this specification is not enabling; one of ordinary skill in the art in 1969 could have written a variety of operable computer programs performing the claimed function.  The question is whether the '902 specification identifies which of the many possible computer programs performing the claim function is foreclosed from future enterprise.
>
> ***
>
> The '902 specification failure to disclose a means for the claimed function leaves one skilled in the art of automated collision avoidance radar systems unable to discern the scope of the patent . . . Without a disclosure of a means for processing own ship and target velocity input signals to calculate [closest point of approach] data, one skilled in the art is left to guess which of the multiple means for performing the claimed function is covered by the patent.  Because one skilled in the art cannot "discern what it meant by that [the means-plus-function] language" the patent is indefinite.  *In re Donaldson Co.*, 116 F.3d at 1195.

*Id.* at 625.

Similarly, claim 32 is indefinite because the '377 patent does not disclose an algorithm for "selecting [the] path" of a packet through the network.  At best the patent discloses that the path is "responsive to the traffic information."  *See, e.g.*, col. 2, ln. 64-66 ("Using the traffic information, in response to a packet having the destination address to the hub node, the flow-control subsystem routes the packet through appropriate nodes to the hub node."); col. 6, ln. 14-18 ("Using the traffic information and in response to a packet having the destination address to the hub node, the flow-control subsystem 340 routes the packet through appropriate nodes to the appropriate hub node."), 20-21 ("[T]he flow-control subsystem 340 transmits the packets from the hub node to an appropriate node. . . .").  This is no different than the patent in *MDS* disclosing that the calculation of the closest point of approach was based on velocity and target position.  *Disclosing the relevant variables does not disclose the algorithm for the calculation.* Without such disclosure, persons skilled in the art cannot determine "which of the many possible computer programs for performing the claimed function is foreclosed from future enterprise."

*MDS Assocs.*, 37 Fed. Cl. at 24; *see also Medtronic v. Guidant*, 2004 WL 1179338 (D. Minn. May 25, 2004) ("[I]nclud[ing] all possible algorithms which could be programmed into the microprocessor would expand the claim to cover an untenable number of algorithms.")

Because the '377 patent fails to disclose an algorithm for selecting the path a packet takes through the network, the Court should find claim 32 to be indefinite.

## V.    CLAIM TERMS TO BE CONSTRUED IN THE '377 PATENT

Pursuant to the agreement of the parties set forth in the Joint Report Outlining Discovery Plan (DE 51), as incorporated into the Court's Order Setting Trial Date (DE 56), the Plaintiff and the Defendants submitted to this Court a Joint Claim Chart (DE 65) presenting their respective proposed constructions for a number of disputed claim terms. The following discussion provides support for Defendants' proposed construction for each of those terms, and explains why Plaintiff's proposed constructions are unsupported.

### 1.    SPREAD-SPECTRUM [MODULATION/SYSTEM] (CLAIMS 32 AND 33)

**"Either of two communication methods, known as direct sequence spread spectrum (DSSS) and frequency hopping spread spectrum (FHSS), in which the bandwidth for transmitting information is deliberately widened by means of a spreading function over that which would be needed to transmit the information."**

Claims 32 and 33 each recite the term "spread spectrum." In one instance, the term appears in the preamble of these claims. Specifically, the preamble of claim 32 recites a "spread-spectrum system," whereas the preamble of claim 33 recites a "spread-spectrum method." '377 Patent, col. 16, ln. 4, 27. Both claims also recite the term "spread-spectrum modulation" to describe the modulation of packets in the spread-spectrum system or method. *Id.* at col. 16, ln. 11, 32-33. The parties have not included the term "modulation" in their Joint Claim Chart, and the term is not defined in the '377 patent, but one skilled in the art would interpret "modulate" to mean "varying the amplitude, frequency or phase for the transmission of intelligence."

Other than the fact that the '377 patent recites "spread-spectrum" in connection with a system, a method, and the modulation of packets, the term is used consistently throughout the '377 patent, and in essentially the same regard in both claims 32 and 33. The parties generally agree that the term "spread-spectrum" refers to a method or form of communication in which transmitting information (*i.e.*, a signal) is widened (*i.e.*, spread) over a bandwidth greater than that which would be needed to transmit the information alone. This interpretation is supported by Section 2.1 of the FCC's Part 15 Rules (2000), in which a spread spectrum system is defined

9

as "[a]n information bearing communications system in which . . . the bandwidth is deliberately widened by means of a spreading function over that which would be needed to transmit the information alone."  47 C.F.R. § 21(c) (2001).[3]

However, at the time the application that led to the '377 patent was filed, one skilled in the art would have understood "spread-spectrum" to include only two communication methods: direct sequence spread spectrum ("DSSS") and frequency hopping spread spectrum ("FHSS"). The conclusion that the term "spread-spectrum" in claims 32 and 33 is limited to DSSS and FHSS is supported by, *inter alia*, authority from the governmental agencies responsible for regulating distributed networks.  For example, in 2000 (the year that the application that led to the '377 patent was filed), the Federal Communications Commission specifically held that spread-spectrum operation was "*limited to frequency hopping and direct sequence spread spectrum systems.*"  *In re Amendment of Part 15 of the Commission's Rules Regarding Spread Spectrum Devices*, Dkt. No. 99-231 (emphasis added).[4]  Significantly, this ruling was made in response to a petition that the FCC consider alternate forms of communication as spread spectrum.  In denying the petition, the FCC ruled that, although there may be alternative digital technologies that have spectrum characteristics similar to spread spectrum systems, Section 2.1 provided for only two specific types of spread spectrum systems: DSSS and FHSS.  *Id.*  Thus, in the year 2000, one skilled in the art would have understood "spread-spectrum" to include only DSSS and FHSS.

## 2.   REMOTE STATION (CLAIMS 32 AND 33)

**"An end-user device in a wireless system which is capable of communicating only with a node in that system."**

Claims 32 and 33 each recite the term "remote station."   There is no ordinary meaning for the term "remote station" in isolation.  Hence, consistent with *Phillips*, one skilled in the art would need to consult the intrinsic evidence to properly ascertain the meaning of the term.

The term "remote station" is used throughout the '377 patent to describe a type of user device that communicates by way of a network, whether it be a cellular-type network as discussed in column 1, lines 13-26 of the "Description of the Relevant Art" section of the '377

---

[3] While it is appropriate for the Court to look to the state of the art at the time of the alleged invention, Defendants note that the 2001 definition is fully consistent with the current definition of "spread spectrum."  *See* 47 C.F.R. § 2.1 (2006).

[4]  This decision can be found at www.hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-01-158A1.doc.

patent, or a distributed network as described throughout the "Detailed Description of the Preferred Embodiments." Since claims 32 and 33 are each directed to "a distributed network", a "remote station" in this context is a user device that wirelessly communicates only with a node in the distributed network. *See, e.g.,* '377 Patent, col. 3, ln. 59 - col. 4, ln. 3 and col. 5, ln. 32-55. A person of ordinary skill in the art would understand from the '377 patent that when a "remote station" is to communicate with another "remote station" or with the central office, the "remote station" will transmit packets to a node. *See, e.g., Id.* at col. 6, ln. 62-63 and col. 7, ln. 1-11. Likewise, packets that are intended for receipt by a "remote station" that have been sent from the central office or another "remote station" reach the recipient "remote station" through a node in the network. *See, e.g., Id.* at col. 6, ln. 30-34, 58-59.

The parties are in general agreement that a "remote station" communicates with a node. However, Plaintiff's definition fails to sufficiently resolve ambiguities by neglecting to define *how* the remote station communicates with a node. On the contrary, Defendants' definition captures what one skilled in the art would clearly understand to have been the patentee's intended meaning for the term "remote station." Specifically, as is apparent from the '377 patent specification and drawings, the patentee intended for a "remote station" to be an end-user device that can *only* communicate with a node. The '377 patent provides no other manner of operation for a "remote station." Accordingly, an interpretation that does not require the "remote station" to communicate only with a node would be, at best, incomplete, ambiguous, and inconsistent with the patentee's intended meaning of the term.

### 3. NODE (CLAIMS 32 AND 33)

"**A communication device having multiple transceivers for store-and-forward routing of packets to and from end-user devices within a limited geographic area using spread-spectrum modulation, and further including at least one transceiver for store-and-forward routing of packets to and from another node within the distributed network.**"

Claims 32 and 33 each include the term "node." There is no ordinary meaning for the term "node" in isolation. Hence, consistent with *Phillips*, one skilled in the art would need to consult the intrinsic evidence to properly ascertain the meaning of the term. In doing so, one skilled in the art would understand from the specification of the '377 patent that in the context of claims 32 and 33, a "node" is required to communicate "over radio waves" with an end user device (remote station) and with other nodes in the network. *See, e.g.,* '377 Patent, col. 2, ln. 45-54.

512020v1

According to the '377 patent, to be able to communicate with a remote station within a limited geographic area, a node includes a plurality of spread-spectrum transceivers, or equivalently, a plurality of spread-spectrum transmitters and a plurality of spread-spectrum receivers.  *See Id.* at col. 4, ln. 12-15 and col. 5, ln. 1-5.  Furthermore, a node includes at least one other transceiver, or equivalently, at least one other transmitter and receiver pair, that is capable of communicating with other nodes.  *See Id.* at col. 4, ln. 16-29 and col. 5, ln. 19-24. The transceivers in the node enable store-and-forward routing of packets to and from end-user devices (remote stations) and store-and-forward routing of packets to and from another node. *See, e.g., Id.* at col. 5, ln. 4-10 and col. 6, ln. 4-23.

The parties are in general agreement that a "node" communicates with a remote station and another node.  However, Plaintiff's definition fails to sufficiently resolve ambiguities by neglecting to define *how* a node communicates with a remote station and another node.  On the contrary, Defendants' definition captures what one skilled in the art would clearly understand to have been the patentee's intended meaning for the term.  One skilled in the art would understand from the context of claims 32 and 33, taken in view of the relevant description in the '377 patent, that a "node" is required to include the limitations set forth in the above definition.  Moreover, consistent with *Fuji Photo* cited above, this definition does not require that limitations of the embodiments disclosed in the '377 patent be read into claims 32 and 33.  Rather, this definition accurately represents those features of a "node" that are necessary to achieve the functionality of a "node" as envisioned by the patentee.  Accordingly, the Court should adopt the clearer, unambiguous definition offered by the Defendants.

### 4.      PACKET (CLAIMS 32 AND 33)

**"A formatted block of information for communicating in a packet switching network, including at least a source address and a destination address."**

Claims 32 and 33 recite the term "packet" in the same context and with the same limitations.  "Packet" is not explicitly defined in the specification of the '377 patent, but the patent uses the term in a manner consistent with its well-understood meaning to persons skilled in the art of telecommunications; namely, a formatted block of information that is transmitted between stations in a packet switching network.

Plaintiff's proposed construction differs from Defendants' in that Plaintiff seeks to eliminate any requirement that the packet be "formatted," and Plaintiff further seeks to

12

encompass communications in any type of distributed network as opposed to a "packet switching network."  In each case, Plaintiff's effort to broaden the scope of this claim term is contrary to both the disclosure in the patent and the ordinary meaning of the term "packet."

As to the requirement that the packet be "formatted," the only relevant disclosure in the specification of the '377 patent is a description of "one way a packet may be *structured*."  '377 Patent, col. 5, ln. 63-64 (emphasis added), Figure 6.  Likewise, a well-known and respected reference in the communications art defines the term "packet" as "data…organized in a specific way."  Newton's Telecomm Dictionary 526 (14th ed. 1998)  (attached as Exhibit 2).  Structuring a packet and organizing the data in a packet in a specific way results in the information being "formatted."

Defendants' proposed requirement that the packet be an instrument for communicating information in a "packet switching network" is also consistent with the specification, which discloses a network that "routes the packet through appropriate nodes" ('377 Patent, col. 6, ln. 14-18), and with the common usage of the term in the art, in which a packet switching network is defined as "a network designed to carry data in the form of packets."  Newton's Telecomm Dictionary at 528.  Indeed, the very use of the word "packet" implies communications in a packet switching network.  Claims 32 and 33 require "routing…the respective packet through the path of the multiplicity of nodes," and routing of packets by nodes of a network is known in the art as "packet switching."  *See, e.g.,* Newton's Telecomm Dictionary at 527 (defining "packet switching" as "sending data in packets through a network").  Plaintiff's attempt to broaden this term to encompass communications in any and all "distributed networks" is unfounded.

### 5.    DESTINATION ADDRESS (CLAIMS 32 AND 33)

**"A unique network identifier for the final intended recipient of the packet in the network. In the context of the asserted claims, the final intended recipient is the destination node."**

The parties agree that a destination address is a unique identifier for the intended recipient of a packet.  Defendants' definition, however, provides further clarity.  In particular, Defendants' definition recognizes: (1) that there is only one "intended recipient," and (2) that the intended recipient is the "destination node."  This definition is supported by the claim language, the patent specification, and common sense.

A packet has a single destination, and a single destination address – the address of the destination node.  This requirement is consistent with the patent claims.  Claim 32, for example,

refers to a packet at the first node "having a respective destination address of a respective destination node of the plurality of nodes."  The flow control means selects the path for the packet "through the plurality of nodes to the destination node."  *See also* '377 Patent, claim 33 ("selecting . . . , from the respective node, having a respective destination address of a respective destination node . . . , a path of a multiplicity of nodes through the plurality of nodes to the destination node").  Thus, claims 32 and 33 both expressly tie the "destination address" to the "destination node."

The fact that the destination node is the *final* node in the path (as opposed to some intermediate stop) is consistent with the patent specification.  The patent notes that each packet "has a source address and a destination address."  *See* '377 Patent, claim 32, claim 33; *see also id.* at col. 2, ln. 48-49; col. 5, ln. 60-61; Fig. 6.  The packet thus includes information about where it enters the distributed network (the source address) and where it should exit the network (the destination address).  The source and destination address are static – there is nothing in the patent that suggests they are dynamically changed as the packet is routed through the network.  More particularly, "each packet [has] a destination address to either the hub or a remote station."  *See, e.g.*, *Id.* at col. 6, ln. 19-20.   Both the hub node and the remote station correspond to final destinations, at which packets exit the distributed network.  *See, e.g., Id.* at col. 6, ln. 62-65 ("packet is forwarded, node to node, until the packet arrives at the hub").  Similarly, "the node routes the packet(s) to an appropriate second recipient node on the way to an intended hub node and central office, *toward the destination address*."  *Id.* at col. 3, ln. 19-21 (emphasis added).  Unless the "destination address" is the final destination toward which the packet is routed, the term "destination address" becomes meaningless.  The "destination address" identifies the final intended recipient within the network.

Defendants' definition – that there is a single destination – is also consistent with the ordinary meaning of the term.  "Destination" is consistently defined as one's ultimate goal, not the intermediate steps along the way.  A family traveling from New York to Disney World, for example, would identify themselves as having a single destination address – Orlando.  They would not characterize every town and village along the way as a destination address.

14

Case No. 05-80300-CIV-MARRA/SELTZER

6.      RESPECTIVE NODE (CLAIMS 32 AND 33)

**"The first node within the distributed network that receives a packet originated by a remote station; also called the 'first node.'"**

Defendants have proposed a definition for "respective node" to advance the purpose of claim construction – to remove any ambiguities.   "Respective node" is a term used in both claims 32 and 33, but not used anywhere else in the patent.   In the context of the claims, "respective node" is used to refer to the node where the packet's journey through the network begins.   Claim 32 calls for "a plurality of nodes . . . with each packet transmitted between a *respective node* and remote station. . .; and . . . flow-control means responsive to the traffic information and to a respective packet, from a first node having a respective destination address of a respective destination node . . ., for selecting a path of a multiplicity of nodes through the plurality of nodes to the destination node."   (emphasis added).   Similarly, claim 33 calls for "communicating, to a *respective node* of the plurality of nodes, with one or more remote stations of a plurality of remote stations. . .  with each packet transmitted between the *respective node* and the remote station. . . ." and "selecting . . . from the *respective node* . . . a path of a multiplicity of nodes through the plurality of nodes to the destination node." (emphasis added). Both claims therefore identify the "respective node" as the node in which a path is determined to the destination node.   There is nothing that suggests that the flow-control means selects the path at anything other than the first node in the network at which the packet enters.

Further, "respective" requires that some specific node be identified.   "Respective" means "relating to two or more . . . things regarded individually; particular:   *successful in their respective fields*."   The American Heritage College Dictionary (3d ed.) (1997).   It is used as a referent to identify which among several things is being discussed.   In the context of the patent claims, "respective" is used to identify which of the "plurality of nodes" is being referenced. The specific context of the claims reflects that the "respective node" is the first node within the network that receives a packet.   Throughout the patent claims, "respective node" and "first node" are used interchangeably to refer to the initial node in the network.   *See, e.g.*, '377 Patent, claims 4 and 10 ("each packet transmitted between a respective node and remote station").   Further, if "respective node" were not the first node, then the term would be indefinite, and the claim would be invalid under 35 U.S.C. § 112.   For these reasons Defendants' definition, which clarifies the meaning of "respective node" in the claims, should be adopted.

15

7.      **FLOW-CONTROL MEANS (CLAIM 32)**

**"A central computer or processor maintaining traffic information about all of the nodes in the distributed network which (a) communicates such traffic information between all of the nodes; (b) selects a path for routing a packet from a first node to a destination node in view of the traffic information; and (c) causes the packet to be transmitted to the destination node through a selected path."**

Claim 32 of the '377 patent requires that the distributed network, spread-spectrum system include a "flow-control means" for communicating traffic information between the plurality of nodes.  '377 Patent, col. 16, ln. 14-15.  The proper construction of "flow-control means" is governed by 35 U.S.C. §112, ¶ 6, which permits a claim limitation to be expressed as a "means for" performing a specified function without the recital of structure in the claim itself.  35 U.S.C. §112, ¶6.   Under such circumstances, the claim is limited to the corresponding structure described in the patent specification for performing the recited function and equivalents thereof. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308-09 (Fed. Cir. 1998).

The first step in analyzing a "means for" clause is to "identify the claimed function." *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 249 F.3d 1314, 1324 (Fed. Cir. 2001).  The function of "flow-control means" is set forth in the remainder of claim 32, which is consistent with functions (a), (b) and (c) set forth in the construction proposed above.  Specifically, claim 32 recites a "flow-control means":

> [(a)] *for communicating traffic information between the plurality of nodes*, with the traffic information including traffic density at each of the plurality of nodes, said flow-control means, [(b)] *responsive to the traffic information and* to a respective packet, from a first node, having a respective destination address of a respective destination node of the plurality of nodes, *for selecting a path of a multiplicity of nodes through the plurality of nodes to the destination node*, said flow-control means for [(c)] *routing*, responsive to the traffic information, *the respective packet through the path of the multiplicity of nodes to the respective destination node*.

'377 Patent, col. 16, ln. 14-26 (emphasis added).

The next step in analyzing a "means for" clause is to identify what structures disclosed in the written description correspond to the means for performing that function.  *Lockheed*, 249 F.3d at 1324.  As discussed in Section IV above, the '377 patent fails to properly disclose a corresponding structure for the "flow-control means," rendering claim 32 invalid for

16

indefiniteness.  In particular, the patent fails to disclose any algorithm for performing the recited function of the "flow-control means."

Notwithstanding the deficiency in the disclosure of the '377 patent, Plaintiff has proposed a construction of "flow-control means" that apparently is based on the general references in the specification to using a processor or computer to performing the required functions.  While the law is clear that such a general disclosure is insufficient to satisfy the requirements of 35 U.S.C. § 112, ¶ 6 (as explained above), even that disclosure compels a substantially narrower definition of "flow-control means" than the one Plaintiff proposes.  In particular, viewed most favorably to Plaintiff and overlooking the indefiniteness of the claim, the corresponding structure associated with the "flow-control means" would have to be the "flow-control sub-system," which is set forth in Figures 4 and 5, and which "typically *includes a processor or computer*."  '377 Patent, col. 16, ln. 14-15.

The conclusion that the "flow-control subsystem" is the structure corresponding to the "flow-control means" is supported by the fact that the specification attributes all but one of the functions performed by the "flow-control means" in claim 32 to the "flow-control subsystem." For example, the specification explains that the flow-control subsystem communicates traffic information between each of the nodes and, using the traffic information and in response to a packet having a destination address, routes the packet through appropriate nodes.  '377 Patent, col. 6, ln. 10-18.

Finally, the proper construction of claim 32 requires that the flow-control means (*i.e.*, the computer or processor) be central in the distributed system and maintain traffic information about all of the nodes.  As an initial matter, the plain language of claim 32 is clear that it is the distributed network, not the plurality of nodes, that contains the flow-control means.  The presence of the word "and" between the three basic elements of the distributed network: (1) a plurality of remote stations; (2) a plurality of nodes; *and* (3) flow-control means" mandates that the "flow-control means" is a centralized portion of the distributed network.  This interpretation is also consistent with the specification's description of a distributed system that has a "*central* flow-control system."  '377 Patent, col. 6, ln. 4-10 (emphasis added).

Moreover, in order to perform the specified functions (*i.e.*, communicate traffic information, select a path and route the packets), the flow-control means must contain information about the traffic at all of the nodes, not just certain nodes.  This interpretation is

17

consistent with structure of claim 32 (discussed, *supra*) and the distinction drawn in other claims of the '377 patent. For example, independent claim 4 stipulates that the "flow-control means" communicates traffic information between a "multiplicity of neighboring nodes." '377 Patent, col. 9, ln. 37. The patentee therefore understood the difference between a network in which the flow-control means contains traffic information about some (but not all) of the nodes, versus a centralized network containing traffic information about all of the nodes, and understood how to draft claims in order to distinguish between the two. Had the patentee intended the flow-control means in claim 32 to contain traffic information at only some of the nodes, this limitation would be reflected in the claim language. By contrast, in claim 32, there is no reference to a multiplicity of nodes; the claim structure indicates a flow-control means that is a centralized computer in the distributed network; and the functions performed by the flow-control means requires knowledge of the traffic information at all nodes in the network. As such, the flow-control means in claim 32 must contain traffic information at all the nodes in the network.

### 8. TRAFFIC INFORMATION (CLAIMS 32 AND 33)

**"Information communicated between nodes in routing packets that indicates the capacity of a node to handle additional packets in view of, at least, the traffic density at that node."**

Claims 32 and 33 each recite the term "traffic information" in the same context and with the same limitations. "Traffic information" is not explicitly defined in the specification of the '377 patent. Nevertheless, the definition of the term, as would be understood by a person of ordinary skill in the art, can be readily gleaned by the manner and context in which it is used. For instance, both the asserted claims and the specification make it clear that "traffic information" relates to conditions that exist *at a node*, as opposed to, for example, a condition of a communications link between two nodes or the general conditions of the network. *See, e.g.,* '377 Patent, col. 16, ln. 15-17 (claim 32 reciting that traffic information includes traffic density *at each of the plurality of nodes*") (emphasis added); col. 3, ln. 6-10 (explaining that packets are routed "[b]ased on the traffic *at each node*") (emphasis added); col. 6, ln. 12-14 ("traffic information typically includes traffic density *at each of the nodes* and memory availability") (emphasis added).

Plaintiff's proposed construction omits any requirement that "traffic information" be *communicated* between nodes. This omission is contrary to the claim language itself and the patent specification. The plain language of claims 32 and 33 requires "*communicating* traffic

information between the plurality of nodes." *Id.* at col. 16, ln 14-15, 36-37 (emphasis added). The specification provides that information in one or more packets is communicated between nodes by the store-and-forward subsystem (*id.* at col. 5, ln. 66 - col. 6, ln. 3), and that flow-control information, including traffic information from a previous node, is included in the packets communicated between nodes. *Id.* at col. 5, ln. 60-64 and Fig. 6.

Plaintiff also seeks to broaden the meaning of "traffic information" to encompass any information relating to conditions of the network or the transmission of data in the network, but the usage of the term in the patent is much more specific. The patent is clear that "traffic information" reflects the capacity of a given node to handle an additional packet. The asserted claims require that the path through which a packet will be routed is selected responsive to the traffic information at each node, and the specification explains that "[n]odes chosen for a particular path have available capacity and storage, and can forward the packet to a subsequent node." *Id.* at col. 6, ln. 54-56.

Plaintiff's proposed construction also eliminates any requirement that the traffic information includes the "traffic density" at each node, but each of the asserted claims explicitly requires this limitation. *See* '377 Patent, col. 16, ln. 15-17, 37-38 (claims 32 and 33 reciting "traffic information including traffic density"). Moreover, the specification explains that traffic information typically includes a measure of the memory available at the node for processing and/or storing a packet to be transmitted. *Id.* at col. 6, ln. 10-14, 54-56. Plaintiff's omission of the traffic density limitation from its proposed construction thus ignores the express language of the claims and the disclosure in the patent specification.

### 9. TRAFFIC DENSITY (CLAIMS 32 AND 33)

**"The number of packets presently traversing a node per unit of time."**

Claims 32 and 33 each recite the term "traffic density" in the same context and with the same limitations. "Traffic density" is not explicitly defined in the specification of the '377 patent. Nevertheless, the definition of the term, as would be understood by a person of ordinary skill in the art, can be readily gleaned by the manner and context in which it is used. For instance, both the asserted claims and the specification make it clear that "traffic density" relates to a condition that exists at a node, as opposed to, for example, a condition of a communications link between two nodes or of the network in general. *See, e.g.,* '377 Patent, col. 16, ln. 15-17 (claim 32 reciting that traffic information includes traffic density *at each of the plurality of*

19

nodes"); col. 6, ln. 12-14 ("traffic information typically includes traffic density *at each of the nodes* and memory availability") (emphasis added).

"Traffic density" does not appear to be a term of art as applied to a node in a packet-switching network.  An ordinary meaning of "density" is a quantity per unit volume, unit area, or unit length.  In this context, the unit is a packet.  Thus, a person skilled in the art, reading the term "traffic density" in the context of the claims and the specification of the '377 patent, would understand that the term refers to the quantity, or number, of packets presently being handled by the node.

Plaintiff's proposed construction introduces ambiguity into the claims by seeking to define "traffic density" as an "amount of traffic" instead of the "number of packets" as required by Defendants' proposed construction.  The only type of communication disclosed in the patent specification is the transmission of packets, and thus the only supported quantification of such traffic is the number of packets.  Plaintiff's attempt to define the term generically will not be helpful to the jury in resolving the infringement issues in this case.

### 10. RESPONSIVE TO THE TRAFFIC INFORMATION (CLAIMS 32 AND 33)

**"Reacting to the traffic information, including the traffic density at each of the plurality of nodes."**

Claims 32 and 33 each include the phrase "responsive to the traffic information."  In particular, claim 32 requires that the "flow control means" be "responsive to the traffic information" when selecting a path and when routing a respective packet through the path.  Claim 33 also requires that the path be selected "responsive to the traffic information," and that the respective packet be routed through the path "responsive to the traffic information."

The phrase "responsive to the traffic information" has no ordinary meaning.  Hence, consistent with *Phillips*, one skilled in the art would need to consult the intrinsic evidence to properly ascertain the meaning of the phrase.

The phrase "responsive to the traffic information" is not defined in the specification of the '377 patent.  However, one skilled in the art would understand from the context of the '377 patent that the path selecting and packet routing is required to be performed in response to the traffic information including the traffic density.  Specifically, the traffic information that is communicated between each of the nodes includes traffic density at each of the nodes and memory availability.  *See* '377 Patent, col. 6, ln. 13-15.

Moreover, according to the '377 patent, a path of a multiplicity of nodes is selected by taking into account congestion and the available capacity of the nodes in the network. *See Id.* at col. 6, ln. 24-28, 53-57.   As one skilled in the art would therefore further appreciate from the context of the '377 patent, the congestion and available capacity of the nodes cannot be ascertained without considering the traffic density at each of the nodes.   There is no other purpose, according to the '377 patent, for the traffic density data to be collected and communicated.

The parties are in general agreement that the phrase should at least be interpreted as "reacting to the traffic information," however, Plaintiff's interpretation falls short by leaving an ambiguity in the claim as to the role the "traffic density" component of the traffic information plays.  As stated above, there is no reason for a measure of the "traffic density" to be taken and included in the "traffic information" if the "traffic density" were not to be considered when making path selection and routing decisions.  Accordingly, the Court should endeavor to remove any ambiguity surrounding this phrase (as well as the "traffic density" and "traffic information" terms) by construing it in the manner proposed by the Defendants.

### 11.     FIRST NODE (CLAIMS 32 AND 33)

**"The first node within the distributed network that receives a packet originated by a remote station, also called the 'respective node.'"**

The parties agree that the "first node" is "the first node within the distributed network that receives a packet originated by a remote station." *See* '377 Patent, col. 7, ln. 4-5 ("the packet enters the distributed network through a node near the remote station sending the packet"). The only dispute is whether "first node" is synonymous with "respective node" in the context of the claims.  The fact that the terms are synonymous within the context of the claims is addressed above, in connection with the claim term "respective node."

### 12.     DESTINATION NODE (CLAIMS 32 AND 33)

**"A hub node capable of communicating with devices both within and outside of the distributed network."**

Similar to its position with respect to "destination address," Plaintiff's proposed definition for "destination node" leaves too many ambiguities.  Plaintiff's proposed definition does not, for example, clarify whether there can be multiple destination nodes within the plurality of nodes (there cannot be), or what the "destination node" is (it is the "hub node").

21

Again, Plaintiff's construction does not accomplish the purpose of claim construction—to remove ambiguities.

"Destination node" has no ordinary meaning.  The term is one coined for the patent.  Accordingly, it is important that the claims be interpreted "in the context of the particular claim in which the disputed term appears [and] in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.  In that regard, neither the patent specification (other than the claims) nor the drawings make any reference to "destination node."  The patent does, however, specifically refer to the "destination address" as being the address to the *hub node*.  The patent describes that packets may be routed through the distributed network either to a remote station or to a central telephone office.  *See, e.g.,* '377 Patent, Abstract.  When the packets are directed to a central telephone office, they are sent to a "hub node," which connects the distributed network to that central telephone office.  *Id.* at col. 2, ln. 26-27.  Thus, a hub node is capable of communicating with devices both within and outside of the distributed network.

> Using the traffic information and in response to a packet having the *destination address to the hub node*, the flow-control subsystem 340 routes the packet through appropriate nodes *to the appropriate hub node*.  Based on the traffic at each node, and each packet having *a destination address to either the hub* of a remote station, the flow control subsystem 340 transmits the packet...

*Id.* at col. 6, ln. 14-20 (emphasis added).  The patent thus expressly describes a hub node as a destination.  *See also Id.* at col. 2, ln. 64-67; col. 6, ln. 63-65 ("packet is forwarded, node to node, until the packet *arrives at the hub*" (emphasis added)).  No other type of node is described as a destination.  The only "nodes" capable of serving as destinations are hub nodes.  Therefore, the "destination node" of the alleged invention must be a hub node.

The Defendants' proposed construction provides clarity and is consistent with the patent, which expressly defines "destination node" as a "hub node."  The remainder of the construction merely clarifies that a "hub node" is capable of communicating with devices both within and outside of the distributed network.  This interpretation is consistent with the alleged invention described in the patent, and should be adopted.

13.   SELECTING A PATH OF A MULTIPLICITY OF NODES (CLAIM 32) AND SELECTING
A PATH OF A MULTIPLICITY OF NODES (CLAIM 33)

**"Selecting a path including multiple nodes between the first (or respective) node and the destination node."**

Claims 32 and 33 each include language requiring the selection of a path of a multiplicity of nodes.  However, claim 32 expressly recites the phrase "selecting a path of a multiplicity of nodes" while claim 33 as written includes intermediate language that separates the word "selecting" from the phrase "a path of a multiplicity of nodes."  Nevertheless, the definition should be the same for both claims.

Plaintiff evidently believes that the phrase has an ordinary meaning and requires no specific construction.  Defendants, as evidenced by their proposed definition, believe that the phrase unambiguously requires a "path" to consist of multiple nodes between the first (or respective) node and the destination node, and thus request that the Court adopt this definition.

In particular, language in claims 32 and 33 recites that a "path" is selected, in contrast to, for example, the language of each of claims 4, 10, 16 and 22 that recites selecting a "second node."  As described in the '377 patent, the need for selecting a "path," as opposed to a "node," is to ensure that a plurality of packets having voice data arrive sequentially at their intended destination.  *See* '377 Patent, col. 6, ln. 24-28.  In the context of claim 32, the path is selected from the first node to the destination node, and is thus between the first node and the destination node.  Similarly, in the context of claim 33, the path is selected from the respective node to the destination node.  In each instance, the claim language requires that the path itself include "a multiplicity of nodes."  Consistent with the language of the claim, as well as the related description in the '377 patent, the "multiplicity" does not include the first (or respective) node or the destination node, but rather, the nodes that make up the path *between* the first (or respective) node and destination node.

## VI.   CONCLUSION

Defendants respectfully request that the Court adopt each of the proposed constructions set forth above, as those constructions are fully consistent with the controlling intrinsic evidence and are supported by pertinent extrinsic evidence.  By contrast, Plaintiff's proposed constructions

512020v1

seek to unduly broaden the scope of the alleged invention beyond what is actually described and claimed in the '377 patent.[5]

Dated:  April 21, 2006                          Respectfully submitted,


  /s/ DARRELL PAYNE_____
Darrell Payne, Esq.                              Eric K. Gabrielle, Esq.
Fla. Bar No. 773300                              Fla. Bar No. 160725
**SHOOK HARDY & BACON, L.L.P.**                  Marissa D. Kelley, Esq.
Miami Center, Suite 2400                         Fla. Bar No. 379300
201 S. Biscayne Blvd.                            **STEARNS, WEAVER, MILLER, WEISSLER,**
Miami, Florida U.S.A.  33131-4332                **ALHADEFF & SITTERSON, L.L.P.**
Tel: (305) 358-5171                              200 E. Broward Boulevard, Suite 1900
                                                 Fort Lauderdale, Florida  33301-1949
Michael E. Barry, Esq.                           Tel: (954) 462-9500
David J. Moorhead, Esq.                          Fax: (954) 462-9567
Nicole M. Bulman, Esq.
**GARDNER CARTON & DOUGLAS L.L.P.**              Mark M. Supko, Esq.
191 N. Wacker Drive, Suite 3700                  Michael H. Jacobs, Esq.
Chicago, IL  60606-1698                          **CROWELL & MORING, L.L.P.**
Tel: (312) 569-1000                              1001 Pennsylvania Avenue, N.W.
                                                 Washington, DC  20004-2595
Joseph J. Buczynski, Esq.                        Tel: (202) 624-2500
**Gardner Carton & Douglas L.L.P.**              Fax: (202) 628-5116
1301 K Street, NW, Suite 900, East Tower
Washington, DC  20005-3317
Tel: (202) 230-5000                              *Counsel for Nortel Networks, Inc.*


*Counsel for Motorola, Inc.*

---

[5]  The undersigned has been authorized by the Defendants to file this joint memorandum of law on behalf of the Defendants.  The Defendants have previously filed their agreed motion for leave to file this joint memorandum of law in excess of the Local Rule 7.1.C.2. page limits.

512020v1

Case No. 05-80300-CIV-MARRA/SELTZER

Charles H. Lichtman, Esq.
Fla. Bar No. 501050
**BERGER SINGERMAN**
Las Olas Centre II
350 E. Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida  33301
Tel: (954) 627-9913
Fax: (954) 523-2872

Ramsey M. Al-Salem, Esq.
Jessica L. Rossman, Esq.
**PERKINS COIE, L.L.P.**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Tel: (206) 359-8000
Fax: (206) 359-9000

*Counsel for Strix Systems, Inc.*

James A. Gale, Esq.
Fla. Bar No. 371726
Gregory L. Hillyer, Esq.
Fla. Bar No. 682489
**FELDMAN GALE, P.A.**
Miami Center, Suite 1920
201 South Biscayne Blvd.
Miami, FL  33131-4332
Tel: (305) 358-5001
Fax: (305) 358-3309

*Counsel for Tropos Networks, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY BY CERTIFY that a true and correct copy of the foregoing was served by U.S. Mail on this 21st day of April 2006, upon counsel for the Plaintiff, Linex Technologies, in accordance with the following service list.

*/s/* DARRELL PAYNE

## Service List

Julie Braman Kane
julie@colson.com
COLSON HICKS EIDSON
255 Aragon Avenue, 2nd Floor
Coral Gables, Florida 33134-5008
Tel: (305) 476-7400
Fax: (305) 476-7444

Edward W. Goldstein
egoldstein@gfiplaw.com
Corby R. Vowell
cvowell@gfiplaw.com
GOLDSTEIN & FAUCETT, L.L.P.
1177 West Loop South, Suite 400
Houston, TX  77027
Tel: (713) 877-1515
Fax: (713) 877-1737

*Counsel for Linex Technologies, Inc.*

25

512020v1

US006493377B2

(12) **United States Patent**  (10) **Patent No.:**     **US 6,493,377 B2**
Schilling et al.                 (45) **Date of Patent:**         **Dec. 10, 2002**

(54) **DISTRIBUTED NETWORK, SPREAD-SPECTRUM SYSTEM**

(75) Inventors: **Donald L. Schilling**, Palm Beach Gardens, FL (US); **Joseph Garodnick**, Centerville, MA (US)

(73) Assignee: **Linex Technologies, Inc.**, West Long Branch, NJ (US)

( * ) Notice:     Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 62 days.

(21) Appl. No.: **09/729,911**

(22) Filed:     **Dec. 6, 2000**

(65)          **Prior Publication Data**

US 2002/0067756 A1 Jun. 6, 2002

(51) **Int. Cl.**[7] ................................................ **H04B 1/69**
(52) **U.S. Cl.** ....................... 375/130; 370/342; 370/353; 370/441
(58) **Field of Search** .......................... 375/130; 370/320, 370/335, 342, 441, 352, 353, 354, 355, 356

(56)            **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 5,455,865 | A | * | 10/1995 | Perlman | 370/445 |
| 5,604,869 | A | * | 2/1997 | Mincher et al. | 370/280 |
| 5,742,593 | A | * | 4/1998 | Sharony et al. | 370/280 |
| 6,301,239 | B1 | * | 10/2001 | Chuprun et al. | 370/342 |

* cited by examiner

*Primary Examiner*—Don N. Vo
(74) *Attorney, Agent, or Firm*—David Newman Chartered

(57)            **ABSTRACT**

A distributed network, spread-spectrum system comprising a plurality of remote stations and a plurality of nodes. One or more hub node(s) connect(s) to a central telephone office. A node's spread-spectrum transceiver communicates, using packets having spread-spectrum modulation, over radio waves, with the plurality of remote stations. Each packet has a source address and a destination address, and may have other information such as a header, start of message, end of message, flow-control information, forward error correction, and message data. A store-and-forward subsystem stores and forwards one or more packets to and from the remote station. The store-and-forward subsystem stores and forwards the one or more packets to and from another node in the plurality of nodes. A flow-control subsystem controls the store-and-forward subsystem, to store each packet arriving at the spread-spectrum transceiver. The flow-control subsystem communicates traffic information between each of the nodes in the plurality of nodes. The flow-control subsystem routes the packet through appropriate nodes to the hub node from a remote station. Based on the traffic at each node, the flow-control subsystem transmits the packet from the hub node to an appropriate node, and routes the packet to a recipient remote station. The flow-control subsystem routes the plurality of packets through a path in the plurality of nodes to ensure that the plurality of packets arrive sequentially for voice or video packets.

**37 Claims, 6 Drawing Sheets**



Case 9:05-cv-80300-KAM   Document 68   Entered on FLSD Docket 04/24/2006   Page 27 of 44



FIG.1 PRIOR ART

**U.S. Patent**        Dec. 10, 2002        Sheet 2 of 6        US 6,493,377 B2



FIG.2

Case 9:05-cv-80300-KAM   Document 68   Entered on FLSD Docket 04/24/2006   Page 29 of 44



FIG.3

U.S. Patent          Dec. 10, 2002          Sheet 4 of 6          US 6,493,377 B2



FIG.4

U.S. Patent        Dec. 10, 2002        Sheet 5 of 6        US 6,493,377 B2



FIG.5

| HEADER | SOURCE ADDRESS | DESTINATION ADDRESS | TRAFFIC FROM PREVIOUS NODE(S) | START DATA | CODED DATA | END DATA |
|--------|----------------|---------------------|-------------------------------|------------|------------|----------|

FIG.6

US 6,493,377 B2

**1**

# DISTRIBUTED NETWORK, SPREAD-SPECTRUM SYSTEM

## BACKGROUND OF THE INVENTION

This invention relates to spread-spectrum communications, and more particularly to a wireless distributed network for reducing power and power variations, when transmitting packets having spread-spectrum modulation.

## DESCRIPTION OF THE RELEVANT ART

As the data rate increases, the power transmitted by a cellular "telephone" and by the cellular base station (BS) must also increase to ensure a low probability of error. As illustratively shown in FIG. 1, a star network, as is presently used for cellular networks, is used to communicate data between a central office 50 and a plurality of remote stations (RS). A plurality of base stations 20, 30, 40, communicate directly with the central office 50. A first base station 20 communicates data between a first plurality of remote stations 21, 22, 23, 24. A second base station 30 communicates data between a second plurality of remote stations 31, 32, 33, 34, 35, 36. A third base station 40 communicates data between a third plurality of remote stations 41, 42, 43, 44, 45.

In the star network of FIG. 1, data, in general, are not communicated directly between base stations, but through the central office 50. The routing of data is a fixed communication path, from a remote station through a base station to the central office, and vice versa. Data generally are not routed, with dynamically changing paths, between remote stations which communicate with a base station, and data are not routed between remote stations directly through base stations, without passing through the central office 50. Also, data are not routed to the central office 50, using communications paths which dynamically vary between base stations, depending upon availability.

The power transmitted by the base station and the remote stations, and the ability to properly control the power, are problems which are growing in importance with the start of third generation (3G) wireless systems, which stresses data transmission which requires low error rates and Internet access.

Previously, a user could transmit data at the rate of 9.6 kilobit per second (Kb/s). Now, with 3G wireless systems, this rate is increasing to 384 kb/s and higher. For the increased data rates, the power must increase by a factor of 40 or more to ensure no degradation of performance.

A proposed solution to this problem is to install additional base stations, or towers. This is a very costly solution since some base stations will be overloaded with traffic and other base stations underutilized. This solution, however, certainly will reduce the power transmitted. Users who are distant from the base station still will be required to transmit significantly larger power than users located near the base station, to alleviate the near-far power problem. This very significant difference in distance and therefore in transmitted power, requires very accurate power control, which is a limiting feature in the current, standardized, 3G system. For example, consider acquisition: One limitation is effective packet size; that is, it takes significant time for the base station to help the user adjust its transmit power to the correct level. As more time is required, the packet will, in effect, increase in length, using time which could be allocated for data transmission or the transmission of additional

**2**

data packets. This "ramp up" time could exceed the duration of the data portion of the packet itself. As another example, during power control adjustment, a user transmitting with too much power can increase the error rate of a user transmitting at the proper power level.

The present base station multi-access scheme currently in use is not a preferred system approach.

## SUMMARY OF THE INVENTION

A general object of the invention is to increase capacity of data from remote stations to a central office.

Another object of the invention is to reduce power levels and power level variations required for transmitting from remote stations and from the base stations.

An additional object of the invention is a more flexible network, which dynamically adapts to changing data requirements between remote stations and a central office.

According to the present invention, as embodied and broadly described herein, a distributed network, spread-spectrum system is provided, comprising a plurality of remote stations and a plurality of nodes. The plurality of nodes forms the distributed network. The distributed network plus the plurality of remote stations form the distributed system. In the plurality of nodes, one or more nodes are hub nodes, which connect to a central telephone office. The plurality of nodes covers a geographic area. Each node covers a micro-cell having a radius, which, typically, is less than one mile. Each node includes a plurality of spread-spectrum transceivers, or, equivalently, a plurality of spread-spectrum transmitters and a plurality of spread-spectrum receivers. Each node also includes a store-and-forward subsystem, and a flow-control subsystem, at least one node transmitter, and more typically a plurality of node transmitters, and at least one node receiver and more typically a plurality of node receivers.

Transmission between the remote station and a node is through the use of CDMA modulation, although any other modulation technique may be employed. Transmitting between nodes may be by cable, fiber optic cable, or microwave link, using any of a variety of modulation techniques. Steerable antennas may be employed. Such modulation and communications channels are well-known in the art.

Each node's spread-spectrum transceiver communicates, using packets having spread-spectrum modulation, over radio waves, with a plurality of remote stations. Each packet has a source address and a destination address, and may contain other information such as flow-control information, forward error correction, and message data. The store-and-forward subsystem stores and forwards one or more packets to and/or from the remote station. The store-and-forward subsystem stores and forwards the one or more packets to and from another node in the plurality of nodes.

A node transmitter communicates with a node receiver located at a different node from the transmitting node.

The flow-control subsystem in the distributed network controls the store-and-forward subsystem, to store each packet arriving at the spread-spectrum transceiver. The flow-control subsystem communicates traffic information between each of the nodes in the plurality of nodes. The traffic information typically includes traffic density at each of the nodes and node-memory availability. Using the traffic information, and in response to a packet having the destination address to the hub node, the flow-control subsystem routes the packet through appropriate nodes to the hub node

US 6,493,377 B2

3

or, in the case of a "local call", to the remote user directly. A "local call" is defined as a call between remote stations located within (i.e., accessing) the same distributed network. For the local call, the central office connection is not required.

Based on the traffic at each node, and each packet having a destination address to a remote station, the flow-control subsystem transmits the packet from a central office to an appropriate hub node to an appropriate node, and routes the packet to the next recipient node. Each packet in a message may traverse a different route. In response to a plurality of packets having voice data, the flow-control subsystem routes the plurality of packets through the same path in the plurality of nodes to ensure that the plurality of packets arrive sequentially. The flow control procedure balances the activity in each node relative to other nodes in the distributed network.

When an information packet(s) arrives from a remote station, the node routes the packet(s) to an appropriate second recipient node on the way to an intended hub node and central office, toward the destination address.

Additional objects and advantages of the invention are set forth in part in the description which follows, and in part are obvious from the description, or may be learned by practice of the invention. The objects and advantages of the invention also may be realized and attained by means of the instrumentalities and combinations particularly pointed out in the appended claims.

BRIEF DESCRIPTION OF THE DRAWINGS

The accompanying drawings, which are incorporated in and constitute a part of the specification, illustrate preferred embodiments of the invention, and together with the description serve to explain the principles of the invention.

FIG. 1 is a block diagram of a current cellular spread-spectrum system, showing all base stations communicating with a central office;

FIG. 2 is a block diagram of a distributed network, spread-spectrum system;

FIG. 3 is a block diagram of a distributed network, spread-spectrum system;

FIG. 4 is a block diagram illustrating key elements of a node with a central office communicating with a set of a plurality of nodes;

FIG. 5 is an alternative block diagram illustrating key elements of a node; and

FIG. 6 shows a representative example of a packet.

DETAILED DESCRIPTION OF THE
PREFERRED EMBODIMENTS

Reference now is made in detail to the present preferred embodiments of the invention, examples of which are illustrated in the accompanying drawings, wherein like reference numerals indicate like elements throughout the several views.

As illustratively shown in FIG. 2, a distributed network, spread-spectrum system is provided, comprising a plurality of remote stations and a plurality of nodes 110, 120, 130, 140, 150, 160, 170 180, 190. The plurality of nodes 110, 120, 130, 140, 150, 160, 170 180, 190 forms the distributed network. The distributed network plus the plurality of remote stations form the distributed network. The plurality of nodes 110, 120, 130, 140, 150, 160, 170 180, 190 of FIG. 2, depicts, by way of example, a first node 110, a second

4

node, 120, a third node 130, a fourth node 140, a fifth node 150, a sixth node 160, a seventh node 170, an eighth node 180 and a ninth node 190.

In the plurality of nodes 110, 120, 130, 140, 150, 160, 170 180, 190, one node, the second node 120, is a hub node, which communicates to a central telephone office 50. Thus, there may be a plurality of hubs. In an alternative embodiment, as shown in FIG. 3, a set of the plurality of nodes (hubs) communicates to the central office 50. The set of the plurality of nodes (hubs), may include the entire plurality of nodes.

The plurality of nodes 110, 120, 130, 140, 150, 160, 170 180, 190 covers a geographic area. Each node in the plurality of nodes 110, 120, 130, 140, 150, 160, 170 180, 190 covers a micro-cell having a radius much less than one mile.

FIGS. 4 and 5 illustratively show an example of what might be at each node. For communicating between nodes, in FIG. 4, for example, there is a node transceiver 350, or equivalently, a node transmitter 351 and a node receiver 352. The node transmitter 351 and the node receiver 352 are coupled through a node isolator 353 to a node antenna 354. Transceiver 350 can be at microwave frequencies or connect to a fiber optic link or any other channel capable of handling the traffic between nodes.

FIG. 5 shows an example of a plurality of node transceivers 350, 360 and 370, or equivalently, a plurality of node transmitters 351, 361, 371 and a plurality of node receivers 352, 362, 372. In place of using a single antenna and an isolator, the first node transmitter 351 is coupled to a first node-transmitter antenna 356, and the first node receiver 352 is coupled to the first node-receiver antenna 357. Similarly, the second node transmitter 361 is coupled to a second node-transmitter antenna 366 and the second node receiver 362 is coupled to the second node-receiver antenna 367, and the third node transmitter 371 is coupled to the third node-transmitter antenna 376 and the third node receiver 372 is coupled to the third node-receiver antenna 377. The antennas could be omnidirectional, sectored, or steerable (smart) antennas.

With each node using the node transmitter 351 and the node receiver 352, of FIG. 4, or the plurality of node transmitters 351, 361, 371 and the plurality of node receivers, 352, 362, 372 of FIG. 5, a node communicates with a different node having a node transmitter and node receiver node receiver. Thus, in the plurality of nodes 110, 120, 130, 140, 150, 160, 170 180, 190, the first node 110 communicates with the second node 120, the fourth node 140 and the fifth node 150. The second node 120 communicates with the first node 110, the third node 130, the fourth node 140, the fifth node 150 and the sixth node 160. The third node communicates with the second node 120, the fifth node 150 and the sixth node 160. The fourth node communicates with the first node 110, the second node 120, the fifth node 150, the seventh node 170 and the eighth node 180. The fifth node communicates with the first node 110, the second node 120, the third node 130, the fourth node 140, the sixth node 160, the seventh node 170, the eighth node 180 and the ninth node 190. The sixth node 160 communicates with the second node 120, the third node 130, the fifth node 150, the eighth node 180 and the ninth node 190. The seventh node 170 communicates with the fourth node 140, the fifth node 150 and the eighth node 180. The eighth node 180 communicates with the fourth node 140, the fifth node 150, the sixth node 160, the seventh node 170 and the ninth node 190. The ninth node communicates with the fifth node 150, the sixth node 160 and the eighth node 180.

US 6,493,377 B2

5

Each node may include a plurality of spread-spectrum transceivers **310, 320, 330**, or, equivalently, a plurality of spread-spectrum transmitters **311, 321, 331** and a plurality of spread-spectrum receivers **312, 322, 332**, a store-and-forward subsystem **341**, and a flow-control subsystem **340**. The flow-control subsystem **340** typically would include a processor or computer. The store-and-forward subsystem **341** typically would include memory and the memory may be part of the computer embodying the processor for the flow-control subsystem **340**. The memory may be random access memory (RAM) or hard drive, or other volatile or non-volatile memory and memory storage device. Other devices are well-known in the art, and include hard drives, magnetic tapes, compact disk (CD), and other laser/optical memories and bubble memory devices. The particular flow-control subsystem **340** and the store-and-forward subsystem **341** would be specified by a particular system requirements and design criteria.

Each node in the plurality of nodes **110, 120, 130, 140, 150, 160, 170 180, 190** also includes at least one node transmitter **351**, and more typically a plurality of node transmitters **351, 361, 371** and at least one node receiver **352** and more typically a plurality of node receivers **352, 362, 372**.

The store-and-forward subsystem **341** is coupled to and controlled by the flow-control subsystem **340**. The plurality of spread-spectrum transmitters **311, 321, 331**, are coupled between a plurality of spread-spectrum antennas **316, 326, 336** and the flow-control subsystem **340**. The plurality of spread-spectrum receivers **312, 322, 332** are coupled between a plurality of receiver antennas **317, 327, 337** and the flow-control subsystem **340**. FIGS. 2 and 3 show the first node **110** communicating with a first plurality of remote stations **111, 112, 113, 114**. The second node **120** communicates with a second plurality of remote stations, with FIGS. 2 and 3 showing a first remote station **121** of the second plurality of remote stations. The third node **130** communicates with a third plurality of remote stations **131, 132** and the fourth node **140**, the fifth node **150** and the sixth node **160** communicate with a fourth plurality of remote stations, a fifth plurality of remote stations, and a sixth plurality of remote stations, respectively. FIGS. 2 and 3 show the fourth node **140** communicating with a first remote station **141** of the fourth plurality of remote stations, the fifth node **150** communicating with a first remote station **121** of the fifth plurality of remote stations, and the sixth node **160** communicating with a first remote station **161** of the sixth plurality of remote stations. The seventh node **170** and the eighth node **180** are shown communicating with a seventh plurality of remote stations **171, 172, 173** and an eighth plurality of remote stations **181, 182**, respectively. The ninth node **190** communicates with a ninth plurality of remote stations, and FIGS. 2 and 3 show the ninth node **190** communicating with a first remote station **191** of the ninth plurality of remote stations.

Each node's spread-spectrum transceiver, or equivalently spread-spectrum transmitter and spread-spectrum receiver, communicates, using packets having spread-spectrum modulation, over radio waves, with the plurality of remote stations. Each packet has a source address and a destination address, and may have header, start of data, end of data, and other information such as flow-control information, forward error correction, and message data. FIG. 6 shows, by way of example, one way a packet may be structured.

The store-and-forward subsystem **341** stores and forwards one or more packets to and from the remote station. The store-and-forward subsystem **341** stores and forwards the one or more packets to and from another node in the plurality of nodes **110, 120, 130, 140, 150, 160, 170 180, 190**.

The flow-control subsystem **340** in the distributed network controls the store-and-forward subsystem, to store each packet arriving at the spread-spectrum transceiver. In a preferred embodiment, the flow-control subsystem **340** also is distributed throughout the network, with a flow-control subsystem **340** resident at each node. It is possible, of course, to have a central flow-control system. The flow-control subsystem **340** communicates traffic information between each of the nodes in the plurality of nodes. The traffic information typically includes traffic density at each of the nodes and memory availability. Using the traffic information and in response to a packet having the destination address to the hub node, the flow-control subsystem **340** routes the packet through appropriate nodes to the appropriate hub node. Based on the traffic at each node, and each packet having a destination address to either the hub or a remote station, the flow-control subsystem **340** transmits the packet from the hub node to an appropriate node, and routes the packet to the first recipient node. Each packet may traverse a different route en route to the remote station.

In response to the traffic congestion and to a plurality of packets having voice data, the flow-control subsystem routes the plurality of packets through a path in the plurality of nodes to ensure that the plurality of packets arrive sequentially. The flow control procedure balances the activity in each node relative to other nodes in the distributed network.

When an information packet arrives from a central office, the hub node routes the information packet to an appropriate second recipient node on the way to an intended remote station destination address.

Consider, by way of example, FIG. 3, with calls from the central office **50** to remote stations. There is a set of nodes (hubs) **110, 120 130** who tell the central office **50** of the availability of each hub node **110, 120, 130**. By having a set of hub nodes, the central office has redundancy, in case of hub node failure, for sending and receiving packets to and from remote stations. Based on availability of a hub node, a packet is sent to a particular hub node, which is available. If two or more hub nodes are available, any of the available hub nodes can be the recipient of the packet.

Each hub keeps track of the traffic flow, memory availability, of many nodes. The first nodes of which are kept track, include the closest surrounding nodes, as defined by design criteria. The next set of node(s) where the hub keeps information might be the next layer of closest nodes.

When sending a packet from a hub to a remote station, the path routing the packet through various nodes is not known, a priori, except maybe for voice. Typically, a packet is forwarded from the hub to a node, which is on the particular path to the remote user. Nodes chosen for a particular path have available capacity and storage, and can forward the packet to a subsequent node. This ability is called "look ahead".

The packet passes through various nodes, until the packet reaches the remote station. Since the path is not predefined, and not necessarily a direct part "as the crow flies", paths for several packet for the same remote station can be different.

For packets passing from a remote station to the central office **50**, the remote station accesses the nearest node. The packet is forwarded, node to node, until the packet arrives at the hub. Paths for packets are not predefined, and can be different for different packets from the remote station to the hub.

US 6,493,377 B2

7

For local calls within the distributed network, there is no need for packets going to a hub or central office. Instead, if the data are sent to another remote station located within the distributed network, the packet enters the distributed network through a node near the remote station sending the packet, and exits the distributed network from a node near the recipient remote station. The packet does not travel a predefined path, and different packets from the sending remote station can travel different paths to the recipient remote station. This depends on the destination address as in a phone system.

An advantage of the present invention is that the nodes and the connected remote stations form micro-cells. Thus, low power can be used by the remote stations, and by nodes (base stations), reducing the potential of radio frequency effects on the user of the remote station, such as RF burns, brain tumors, etc. Handoff for a remote station traveling between nodes can be done in any of the standard ways available for packet communications and base stations. One such technique is for the remote station to monitor the control signals from several of the strongest nodes (base stations). When the signal strength from the node (base station) being used by the remote station falls below a threshold, then the remote station transmits the next packet to a node having the largest signal strength being monitored by the remote station.

Each node is small and can be mounted on telephone poles, building, etc. The nodes require little space and low amounts of power.

It will be apparent to those skilled in the art that various modifications can be made to the distributed network, spread-spectrum system of the instant invention without departing from the scope or spirit of the invention, and it is intended that the present invention cover modifications and variations of the distributed network, spread-spectrum system provided they come within the scope of the appended claims and their equivalents.

We claim:

**1**. A distributed network, spread-spectrum system, comprising:

a plurality of remote stations;

a plurality of nodes for covering a geographic area, the plurality of nodes including a hub node, each node covering a micro-cell having a radius less than one mile, each node including,

a spread-spectrum transceiver for communicating, using packets having spread-spectrum modulation, over radio waves, with the plurality of remote stations, each packet having a source address and a destination address;

a store-and-forward subsystem, coupled to the spread-spectrum transceiver, for storing and forwarding one or more packets to and from the remote station, and for storing and forwarding the one or more packets to and from another node in the plurality of nodes;

a flow-control subsystem, coupled to the store-and-forward subsystem, for controlling the store-and-forward subsystem, to store each packet arriving at the spread-spectrum transceiver, said flow-control subsystem communicating traffic information between each of the nodes in the plurality of nodes, with the traffic information including traffic density at each of the nodes, said flow-control subsystem, responsive to the traffic information and to a packet having the destination address to the hub node, for routing the packet through appropriate nodes to the hub node, said

8

flow-control subsystem, responsive to the traffic at each node, each packet having a destination address to a first recipient node, for transmitting the packet from the hub node to an appropriate node, routing the packet to the first recipient node, said flow-control subsystem, responsive to the traffic congestion and to a plurality of packets having voice data, for routing the plurality of packets through a path in the plurality of nodes to ensure that the plurality of packets arrive sequentially; and

said hub node, responsive to an information packet arriving from a central office, for routing the information packet to a second recipient node.

**2**. A distributed network, spread-spectrum system, comprising:

a plurality of remote stations;

a plurality of nodes for covering a geographic area, the plurality of nodes including a set of hub nodes, each node covering a micro-cell having a radius less than one mile, each node including,

a spread-spectrum transceiver for communicating, using packets having spread-spectrum modulation, over radio waves, with the plurality of remote stations, each packet having a source address and a destination address;

a store-and-forward subsystem, coupled to the spread-spectrum transceiver, for storing and forwarding one or more packets to and from the remote station, and for storing and forwarding the one or more packets to and from another node in the plurality of nodes;

a flow-control subsystem, coupled to the store-and-forward subsystem, for controlling the store-and-forward subsystem, to store each packet arriving at the spread-spectrum transceiver, said flow-control subsystem communicating traffic information between each of the nodes in the plurality of nodes, with the traffic information including traffic density at each of the nodes, said flow-control subsystem, responsive to the traffic information and to a packet having the destination address to a particular hub node, for routing the packet through appropriate nodes to the particular hub node, said flow-control subsystem, responsive to the traffic at each node, each packet having a destination address to a first recipient node, for transmitting the packet from the particular hub node to an appropriate node, routing the packet to the first recipient node, said flow-control subsystem, responsive to the traffic congestion and to a plurality of packets having voice data, for routing the plurality of packets through a path in the plurality of nodes to ensure that the plurality of packets arrive sequentially; and

said particular hub node, responsive to an information packet arriving from a central office, for routing the information packet to a second recipient node.

**3**. A distributed network, spread-spectrum method, for a plurality of remote stations and a plurality of nodes for covering a geographic area, the plurality of nodes including a hub node, each node covering a micro-cell having a radius less than one mile, comprising the steps of:

communicating, using packets having spread-spectrum modulation, over radio waves, with the plurality of remote stations, each packet having a source address and a destination address;

storing and forwarding one or more packets to and from the remote station;

storing and forwarding the one or more packets to and from another node in the plurality of nodes;

US 6,493,377 B2

9

controlling the steps of storing and forwarding, to store each packet arriving at the spread-spectrum transceiver;

communicating traffic information between each of the nodes in the plurality of nodes, with the traffic information including traffic density at each of the nodes;

routing, in response to the traffic information and to a packet having the destination address to the hub node, the packet through appropriate nodes to the hub node;

transmitting, in response to the traffic at each node, each packet having a destination address to a first recipient node;

transmitting the packet from the hub node to an appropriate node;

routing the packet to the first recipient node;

routing, in response to the traffic congestion and to a plurality of packets having voice data, the plurality of packets through a path in the plurality of nodes to ensure that the plurality of packets arrive sequentially; and

routing, in response to an information packet arriving from a central office, the information packet to a second recipient node.

4. A distributed network, spread-spectrum system, comprising:

a plurality of remote stations;

a plurality of nodes for covering a geographic area, each node in the plurality of nodes for communicating, with one or more remote stations of the plurality of remote stations, using packets having a destination address and modulated with spread-spectrum modulation, with each packet transmitted between a respective node and remote station using radio waves; and

flow-control means for communicating traffic information between a first multiplicity of neighboring nodes of a first node of the plurality of nodes, with the first node capable of communicating a respective packet to a node in the first multiplicity of neighboring nodes, with the traffic information including traffic density at each of the first multiplicity of neighboring nodes, said flow-control means, responsive to the traffic information and to the respective packet, from the first node, having a respective destination address of a respective destination node of the plurality of nodes, for selecting a second node of the first multiplicity of neighboring nodes, said flow-control means for routing, responsive to the traffic information, the respective packet through the second node to the respective destination node.

5. The distributed network, as set forth in claim 4, with said flow-control means for communicating traffic information between a second multiplicity of neighboring nodes of the second node, with the second node capable of communication the respective packet to a node in the second multiplicity of neighboring nodes, with the traffic information including traffic density at each of the second multiplicity of neighboring nodes, said flow-control means, responsive to the traffic information and to the respective packet, from the second node, having the respective destination address of the respective destination node, for selecting a third node of the second multiplicity of neighboring nodes, said flow-control means, responsive to the traffic information, for routing the respective packet through the third node to the respective destination node.

6. The distributed network, as set forth in claim 5, with said flow-control means for communicating traffic informa-

10

tion between a third multiplicity of neighboring nodes of the third node, with the third node capable of communicating the respective packet to a node in the third multiplicity of neighboring nodes, with the traffic information including traffic density at each of the third multiplicity of neighboring nodes, said flow-control means, responsive to the traffic information and to the respective packet, from the third node, having the respective destination address of the respective destination node, for selecting a fourth node of the third multiplicity of neighboring nodes, said flow-control means, responsive to the traffic information, for routing the respective packet through the fourth node to the respective destination node.

7. The distributed network, as set forth in claim 6, with said flow-control means for communicating traffic information between a fourth multiplicity of neighboring nodes of the fourth node, with the fourth node capable of communicating the respective packet to a node in the fourth multiplicity of neighboring nodes, with the traffic information including traffic density at each of the fourth multiplicity of neighboring nodes, said flow-control means, responsive to the traffic information and to the respective packet, from the fourth node, having the respective destination address of the respective destination node, for selecting a fifth node of the fourth multiplicity of neighboring nodes, said flow-control means, responsive to the traffic information, for routing the respective packet through the fifth node to the respective destination node.

8. The distributed network, as set forth in claim 7, with said flow-control means for communicating traffic information between a fifth multiplicity of neighboring nodes of the fifth node, with the fifth node capable of communicating the respective packet to a node in the fifth multiplicity of neighboring nodes, with the traffic information including traffic density at each of the fifth multiplicity of neighboring nodes, said flow-control means, responsive to the traffic information and to the respective packet, from the fifth node, having the respective destination address of the respective destination node, for selecting a sixth node of the fifth multiplicity of neighboring nodes, said flow-control means, responsive to the traffic information, for routing the respective packet through the sixth node to the respective destination node.

9. The distributed network, as set forth in claim 8, with said flow-control means for communicating traffic information between a sixth multiplicity of neighboring nodes of the sixth node, with the sixth node capable of communicating a respective packet to a node in the sixth multiplicity of neighboring nodes, with the traffic information including traffic density at each of the sixth multiplicity of neighboring nodes, said flow-control means, responsive to the traffic information and to the respective packet, from the sixth node, having the respective destination address of the respective destination node, for selecting a seventh node of the sixth multiplicity of neighboring nodes, said flow-control means, responsive to the traffic information, for routing the respective packet through the seventh node to the respective destination node.

10. A distributed network, spread-spectrum system, comprising:

a plurality of remote stations;

a plurality of nodes for covering a geographic area, each node in the plurality of nodes for communicating, with one or more remote stations of the plurality of remote stations, using packets having a destination address and modulated with spread-spectrum modulation, with each packet transmitted between a respective node and remote station using radio waves; and

US 6,493,377 B2

11

12

flow-control means for communicating first traffic information between a first multiplicity of neighboring nodes of a first node of the plurality of nodes, with the first node capable of communicating a respective packet to a node in the first multiplicity of neighboring nodes, with the first traffic information including traffic density at each of the first multiplicity of neighboring nodes, said flow-control means, responsive to the first traffic information and to the respective packet, from the first node, having a respective destination address of a respective destination node of the plurality of nodes, for selecting a second node of the first multiplicity of neighboring nodes, said flow-control means for responsive to the first traffic information, the respective packet through the second node to the respective destination node.

11. The distributed network, as set forth in claim 10, with said flow-control means for communicating second traffic information between a second multiplicity of neighboring nodes of the second node, with the second node capable of communicating a respective packet to a node in the second multiplicity of neighboring nodes, with the second traffic information including traffic density at each of the second multiplicity of neighboring nodes, said flow-control means, responsive to the second traffic information and to the respective packet, from the second node, having the respective destination address of the respective destination node, for selecting a third node of the second multiplicity of neighboring nodes, said flow-control means, responsive to the second traffic information, for routing the respective packet through the third node to the respective destination node.

12. The distributed network, as set forth in claim 11, with said flow-control means for communicating third traffic information between a third multiplicity of neighboring nodes of the third node, with the third node capable of communicating a respective packet to a node in the third multiplicity of neighboring nodes, with the third traffic information including traffic density at each of the third multiplicity of neighboring nodes, said flow-control means, responsive to the third traffic information and to the respective packet, from the third node, having the respective destination address of the respective destination node, for selecting a fourth node of the third multiplicity of neighboring nodes, said flow-control means, responsive to the third traffic information, for routing the respective packet through the fourth node to the respective destination node.

13. The distributed network, as set forth in claim 12, with said flow-control means for communicating fourth traffic information between a fourth multiplicity of neighboring nodes of the fourth node, with the fourth node capable of communicating a respective packet to a node in the fourth multiplicity of neighboring nodes, with the fourth traffic information including traffic density at each of the fourth multiplicity of neighboring nodes, said flow-control means, responsive to the fourth traffic information and to the respective packet, from the fourth node, having the respective destination address of the respective destination node, for selecting a fifth node of the fourth multiplicity of neighboring nodes, said flow-control means, responsive to the fourth traffic information, for routing the respective packet through the fifth node to the respective destination node.

14. The distributed network, as set forth in claim 13, with said flow-control means for communicating fifth traffic information between a fifth multiplicity of neighboring nodes of the fifth node, with the fifth node capable of communicating a respective packet to a node in the fifth multiplicity of neighboring nodes, with the fifth traffic information including traffic density at each of the fifth multiplicity of neighboring nodes, said flow-control means, responsive to the fifth traffic information and to the respective packet, from the fifth node, having the respective destination address of the respective destination node, for selecting a sixth node of the fifth multiplicity of neighboring nodes, said flow-control means, responsive to the fifth traffic information, for routing the respective packet through the sixth node to the respective destination node.

15. The distributed network, as set forth in claim 14, with said flow-control means for communicating sixth traffic information between a sixth multiplicity of neighboring nodes of the sixth node, with the sixth node capable of communicating a respective packet to a node in the sixth multiplicity of neighboring nodes, with the sixth traffic information including traffic density at each of the sixth multiplicity of neighboring nodes, said flow-control means, responsive to the sixth traffic information and to the respective packet, from the sixth node, having the respective destination address of the respective destination node, for selecting a seventh node of the sixth multiplicity of neighboring nodes, said flow-control means, responsive to the sixth traffic information, for routing the respective packet through the seventh node to the respective destination node.

16. A distributed network, spread-spectrum method, having a plurality of remote stations and a plurality of nodes for covering a geographic area, comprising the steps of:

communicating, between a node of the plurality of nodes and one or more remote stations of the plurality of remote stations, using packets having a destination address and modulated with spread-spectrum modulation, with each packet transmitted between a respective node and remote station using radio waves;

communicating traffic information between a first multiplicity of neighboring nodes of a first node of the plurality of nodes, with the first node capable of communicating a respective packet to a node in the first multiplicity of neighboring nodes, with the traffic information including traffic density at each of the first multiplicity of neighboring nodes;

selecting, responsive to the traffic information and to the respective packet, from the first node, having a respective destination address of a respective destination node of the plurality of nodes, a second node of the first multiplicity of neighboring nodes; and

routing, responsive to the traffic information, the respective packet through the second node to the respective destination node.

17. The distributed network, spread-spectrum method, as set forth in claim 16, further comprising the steps:

communicating traffic information between a second multiplicity of neighboring nodes of the second node, with the second node capable of communication the respective packet to a node in the second multiplicity of neighboring nodes, with the traffic information including traffic density at each of the second multiplicity of neighboring nodes;

selecting, responsive to the traffic information and to the respective packet, from the second node, having the respective destination address of the respective destination node, a third node of the second multiplicity of neighboring nodes; and

routing, responsive to the traffic information, the respective packet through the third node to the respective destination node.

US 6,493,377 B2

13

**18**. The distributed network, spread-spectrum method, as set forth in claim **17**, further comprising the steps:

communicating traffic information between a third multiplicity of neighboring nodes of the third node, with the third node capable of communicating the respective packet to a node in the third multiplicity of neighboring nodes, with the traffic information including traffic density at each of the third multiplicity of neighboring nodes;

selecting, responsive to the traffic information and to the respective packet, from the third node, having the respective destination address of the respective destination node, a fourth node of the third multiplicity of neighboring nodes; and

routing, responsive to the traffic information, the respective packet through the fourth node to the respective destination node.

**19**. The distributed network, spread-spectrum method, as set forth in claim **18**, further comprising the steps:

communicating traffic information between a fourth multiplicity of neighboring nodes of the fourth node, with the fourth node capable of communicating the respective packet to a node in the fourth multiplicity of neighboring nodes, with the traffic information including traffic density at each of the fourth multiplicity of neighboring nodes;

selecting, responsive to the traffic information and to the respective packet, from the fourth node, having the respective destination address of the respective destination node, a fifth node of the fourth multiplicity of neighboring nodes; and

routing, responsive to the traffic information, the respective packet through the fifth node to the respective destination node.

**20**. The distributed network, spread-spectrum method, as set forth in claim **19**, further comprising the steps:

communicating traffic information between a fifth multiplicity of neighboring nodes of the fifth node, with the fifth node capable of communicating the respective packet to a node in the fifth multiplicity of neighboring nodes, with the traffic information including traffic density at each of the fifth multiplicity of neighboring nodes;

selecting, responsive to the traffic information and to the respective packet, from the fifth node, having the respective destination address of the respective destination node, a sixth node of the fifth multiplicity of neighboring nodes; and

routing, responsive to the traffic information, the respective packet through the sixth node to the respective destination node.

**21**. The distributed network, spread-spectrum method, as set forth in claim **20**, further comprising the steps:

communicating traffic information between a sixth multiplicity of neighboring nodes of the sixth node, with the sixth node capable of communicating a respective packet to a node in the sixth multiplicity of neighboring nodes, with the traffic information including traffic density at each of the sixth multiplicity of neighboring nodes;

selecting, responsive to the traffic information and to the respective packet, from the sixth node, having the respective destination address of the respective destination node, for selecting a seventh node of the sixth multiplicity of neighboring nodes; and

14

routing, responsive to the traffic information, the respective packet through the seventh node to the respective destination node.

**22**. A distributed network, spread-spectrum method, having a plurality of remote stations and a plurality of nodes for covering a geographic area, comprising the steps of:

communicating, between a node of the plurality of nodes and one or more remote stations of the plurality of remote stations, using packets having a destination address and modulated with spread-spectrum modulation, with each packet transmitted between a respective node and remote station using radio waves;

communicating first traffic information between a first multiplicity of neighboring nodes of a first node of the plurality of nodes, with the first node capable of communicating a respective packet to a node in the first multiplicity of neighboring nodes, with the first traffic information including traffic density at each of the first multiplicity of neighboring nodes;

selecting, responsive to the first traffic information and to the respective packet, from the first node, having a respective destination address of a respective destination node of the plurality of nodes, a second node of the first multiplicity of neighboring nodes; and

routing, responsive to the first traffic information, the respective packet through the second node to the respective destination node.

**23**. The distributed network, spread-spectrum method, as set forth in claim **22**, further comprising the steps:,

communicating second traffic information between a second multiplicity of neighboring nodes of the second node, with the second node capable of communicating a respective packet to a node in the second multiplicity of neighboring nodes, with the second traffic information including traffic density at each of the second multiplicity of neighboring nodes;

selecting, responsive to the second traffic information and to the respective packet, from the second node, having the respective destination address of the respective destination node, a third node of the second multiplicity of neighboring nodes; and

routing, responsive to the second traffic information, the respective packet through the third node to the respective destination node.

**24**. The distributed network, spread-spectrum method, as set forth in claim **23**, further comprising the steps:

communicating third traffic information between a third multiplicity of neighboring nodes of the third node, with the third node capable of communicating a respective packet to a node in the third multiplicity of neighboring nodes, with the third traffic information including traffic density at each of the third multiplicity of neighboring nodes;

selecting, responsive to the third traffic information and to the respective packet, from the third node, having the respective destination address of the respective destination node, a fourth node of the third multiplicity of neighboring nodes; and

routing, responsive to the third traffic information, the respective packet through the fourth node to the respective destination node.

**25**. The distributed network, spread-spectrum method, as set forth in claim **24**, further comprising the steps:

communicating fourth traffic information between a fourth multiplicity of neighboring nodes of the fourth

US 6,493,377 B2

15

node, with the fourth node capable of communicating a respective packet to a node in the fourth multiplicity of neighboring nodes, with the fourth traffic information including traffic density at each of the fourth multiplicity of neighboring nodes;

selecting, responsive to the fourth traffic information and to the respective packet, from the fourth node, having the respective destination address of the respective destination node, a fifth node of the fourth multiplicity of neighboring nodes; and

routing, responsive to the fourth traffic information, the respective packet through the fifth node to the respective destination node.

26. The distributed network, spread-spectrum method, as set forth in claim 25, further comprising the steps:

communicating fifth traffic information between a fifth multiplicity of neighboring nodes of the fifth node, with the fifth node capable of communicating a respective packet to a node in the fifth multiplicity of neighboring nodes, with the fifth traffic information including traffic density at each of the fifth multiplicity of neighboring nodes;l

selecting, responsive to the fifth traffic information and to the respective packet, from the fifth node, having the respective destination address of the respective destination node, a sixth node of the fifth multiplicity of neighboring nodes; and

routing, responsive to the fifth traffic information, the respective packet through the sixth node to the respective destination node.

27. The distributed network, spread-spectrum method, as set forth in claim 26, further comprising the steps:

communicating sixth traffic information between a sixth multiplicity of neighboring nodes of the sixth node, with the sixth node capable of communicating a respective packet to a node in the sixth multiplicity of neighboring nodes, with the sixth traffic information including traffic density at each of the sixth multiplicity of neighboring nodes;

selecting, responsive to the sixth traffic information and to the respective packet, from the sixth node, having the respective destination address of the respective destination node, a seventh node of the sixth multiplicity of neighboring nodes; and

routing, responsive to the sixth traffic information, the respective packet through the seventh node to the respective destination node.

28. The distributed network as set for in claim 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 or 15, with said flow-control means including means for communicating with radio waves.

29. The distributed network as set for in claim 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 or 15, with said flow-control means including means for communicating with spread-spectrum modulation using radio waves.

30. The distributed-network, spread-spectrum method as set forth in claim 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26 or 27, with the routing step including the step of modulating the packet with spread-spectrum modulation.

31. The distributed-network, spread-spectrum method as set forth in claim 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26

16

or 27, with the routing step including the step of transmitting, using radio waves, the packet with spread-spectrum modulation.

32. A distributed network, spread-spectrum system, comprising:

a plurality of remote stations;

a plurality of nodes for covering a geographic area, each node in the plurality of nodes for communicating, with one or more remote stations of the plurality of remote stations, using packets having a destination address and modulated with spread-spectrum modulation, with each packet transmitted between a respective node and remote station using radio waves; and

flow-control means for communicating traffic information between the plurality of nodes, with the traffic information including traffic density at each of the plurality of nodes, said flow-control means, responsive to the traffic information and to a respective packet, from a first node, having a respective destination address of a respective destination node of the plurality of nodes, for selecting a path of a multiplicity of nodes through the plurality of nodes to the destination node, said flow-control means for routing, responsive to the traffic information, the respective packet through the path of the multiplicity of nodes to the respective destination node.

33. A distributed network, spread-spectrum method, having a plurality of nodes, comprising the steps of:

communicating, to a respective node of the plurality of nodes, with one or more remote stations of a plurality of remote stations, using packets having a destination address and modulated with spread-spectrum modulation, with each packet transmitted between the respective node and remote station using radio waves;

communicating traffic information between the plurality of nodes, with the traffic information including traffic density at each of the plurality of nodes;

selecting, responsive to the traffic information and to a respective packet, from the respective node, having a respective destination address of a respective destination node of the plurality of nodes, a path of a multiplicity of nodes through the plurality of nodes to the destination node; and

routing, responsive to the traffic information, the respective packet through the path of the multiplicity of nodes to the respective destination node.

34. The distributed network as set for in claim 32, with said flow-control means including means for communicating with radio waves.

35. The distributed network as set for in claim 32, with said flow-control means including means for communicating with spread-spectrum modulation using radio waves.

36. The distributed-network, spread-spectrum method as set forth in claim 33, with the routing step including the step of modulating the packet with spread-spectrum modulation.

37. The distributed-network, spread-spectrum method as set forth in claim 33, with the routing step including the step of transmitting, using radio waves, the packet with spread-spectrum modulation.

*   *   *   *   *

# NEWTON'S TELECOM DICTIONARY

copyright © 1998 Harry Newton

All rights reserved under International and Pan-American Copyright conventions, including the right to reproduce this book or portions thereof in any form whatsoever.

Published in the United States by
Flatiron Publishing
a division of Miller Freeman, Inc.

Tenth floor
12 West 21 Street
New York, NY 10010
212-691-8215 Fax 212-691-1191
1-800-999-0345 and 1-800-LIBRARY
email: Harry_Newton@email.msn.com
personal web site: www.harrynewton.com
dictionary sales site: www.telecombooks.com

ISBN Number 1-57820-023-7

March, 1998

Manufactured in the United States of America

Fourteenth Expanded and Updated Edition



Computer Telephony    The Internet    IP Telephony    Intranet    LANs & WANs
Windows 95, NT, NetWare & Unix Networking
Wired & Wireless Telecommunications
Voice Processing    Carrier Telephony
The Intelligent Network    ISDN & T-1
Voice on The Internet & Intranets

NEWTON'S TELECOM DICTIONARY

NEWTON'S TELE(

"modern" (i.e. automatic) and no operator was needed any longer to complete outgoing calls. You could dial "9." Thus it became a "PABX." Now all PABXs are modern. And a PABX is now commonly referred to as a "PBX." Some manufacturers have tried to make their PBX appear different by calling it something else. Rolm/IBM calls theirs the "CBX" (Computerized Branch Exchange). Some others call theirs the "EPABX" (the Electronic Private Automatic Branch Exchange. Then there are the special ones, like Wang's WBX, SRX's SRX, NEC's IMS (Information Management System), etc. See PBX.

**PAC** Personal Activity Center. A combination IBM PC clone, alarm clock, answering machine, speakerphone, fax machine, modem, compact-disk player and AM/FM radio all rolled into one unit sitting on your desk.

**Pac Bell** Pacific Bell, the California Bell Operating Company (BOC) which, along with Nevada Bell, formed Pacific Telesis (PacTel). PacTel was one of the seven original Regional Bell Operating Companies (RBOCs) formed in 1984 by the Modified Final Judgement (MFJ). As PacTel was acquired by SBC Corporation (Southwestern Bell) in 1996, Pac Bell is now a subsidiary of SBC.

**Pacific Telesis** One of the seven, now-independent Regional Holding Companies formed at the Divestiture of AT&T of 1983. It holds Pacific Bell, Nevada Bell and several non-regulated subsidiaries. In 1996, SBC Corporation bought Pacific Telesis.

**Pacing** Controlled rate of flow dictated by the receiving component, to prevent congestion. A method of flow control in IBM's SNA. See PACING GROUP.

**Pacing Algorithm** The mathematical rules established to control the rate at which calls are placed by an automatic dialing machine, also called a predictive dialer. See PREDICTIVE DIALER.

**Pacing Control** SNA term for flow control. See PACING GROUP.

**Pacing Group** In IBM's SNA, the number of data units (Path Information Units, or PIUs) that can be sent before a response is received. An IBM term for window.

**Pack** To compress data items so they take up less space. A process used by many database programs to remove records marked for deletion.

**Packet** 1. Generic term for a bundle of data, usually in binary form, organized in a specific way for transmission. The specific native protocol of the data network may term the packet as a packet, block, frame or cell. A packet consists of the data to be transmitted and certain control information. The three principal elements of a packet include: 1. Header —control information such as synchronizing bits, address of the destination or target device, address of originating device, length of packet, etc., 2. Text or payload — the data to be transmitted, and 3. Trailer — end of packet, error detection and correction bits.

2. Specific packaging of data in a packet-switched network, such as X.25. A true packet-switched network such as X.25 involves packets of a specific and fixed length. In a public packet switched network, such packet payloads are specified as

| Generic Format of a Data Packet | STX=Start of Text | EXT=End of Text |
| :---: | :---: | :---: |

| Header | S T X | Text | E T X | Trailer |
| --- | --- | --- | --- | --- |

being either 128B or 256B, where B=Byte. Custom networks, such as those traditionally used in airline reservation systems, may employ a packet payload of 1024B. A X.25 packet prepends the payload with header information including a flag of eight bits; the flag denotes the beginning of the packet and also serves to assist the network nodes (packet switches) in synchronizing on the rate of transmission. An address field of eight bits also prepends the payload, with four bits identifying the target device and four bits identifying the transmitting device. Control data of eight-to-sixteen bits comprise the last element of the header; included in control data is the packet number in order that the network nodes might identify and correct for lost or errored packets. Appending the payload is a trailer consisting of a sixteen-bit CRC, which is used by all packet nodes for purposes of error detection and correction. See Packet ASSEMBLER/DISASSEMBLER (PAD) and CRC.

**Packet   Assembler/Disassembler** PAD. A hardware/software combination that forms the interface between a X.25 network such as PDN and an asynchronous device such as a PC. The PAD generates call request, call clear, and other information packets in addition to the ones that contain user data. The PAD is responsible for packetizing the data from the transmitting device before it is forwarded through the packet network. On the receiving end of the transmission, the PAD strips away the control information contained in the header and trailer in order to get at the original text or payload, in effect disassembling the packets and reconstituting the original set of data in its native or original form. The PAD may be in the form of a standalone DCE device on the customer premise and supporting one or more terminals, or in the form of a printed circuit board which fits into an expansion slot of the terminal. Smaller users generally rely on the carrier to provide the PAD, which is embedded in the packet switch.

**Packet Buffer** Memory set aside for storing a packet awaiting transmission or for storing a received packet. The memory may be located in the network interface controller or in the computer to which the controller is connected. See BUFFER.

**Packet Burst Protocol** A protocol built on top of IPX that speeds the transfer of NCP data between a workstation and a NetWare server by eliminating the need to sequence and acknowledge each packet. With packet burst, the server sends a whole set (or burst) of packets before it requires an acknowledgement.

**Packet Controller** The hub of the AT&T ISDN system. It acts as a fast packet switch providing virtual circuit services to the devices hooked to the system.

**Packet Driver** The specification developed by John Romkey at FTP Software to allow TCP/IP and other transport protocols to share a common network interface card. Packet Drivers have been written for a variety of network interface cards, and in many cases provide NetWare compatibility.

**Packet Filter** A router-based firewall that can accept or reject packets based on predefined rules. The ability to search a packet to determine its destination and to then route it or block it accordingly. This ability helps to control network traffic. See Packet Filtering.

**Packet Filtering** The recognition and selective transmission or blocking of individual packets based on destination addresses or other packet contents.

**Packet Filtering Firewall** A packet filtering firewall is a router or a computer running software that has been configured to block certain types of incoming and outgoing packets. A packet-filtering firewall screens packets based on information contained in the packets' TCP and IP headers, including

some or all of the following: Source address Destinatio address Application or protocol Source port numb Destination port number

**Packet Forwarding** Copying the packet to another no without looking at the destination address.

**Packet Handler Function** The packet switching functi within an ISDN switch, for the packet mode bearer service.

**Packet Interleaving** Refers to the process of multiple ing multiple incoming packets from multiple channels on t single outgoing channel by sampling one or more packe from the first channel, then the next, and so on.

**Packet Level** In packet data networking technology, lev 3 of X.25. Defines how user messages are broken into pac ets, how calls are established and cleared over the entire PDN. T packet level also handles missing and duplicate packets.

**Packet Level Procedure** PLP. A full-duplex protoc that defines the means of packet transfer between a X.25 D and a X.25 DCE. It supports packet sequencing, flow cont (including maintenance of transmission speed), and er detection and recovery.

**Packet Mode Bearer Service** An ISDN term for X packet data transmission over the D channel in a BRI appli tion. Always a part of the ITU-T (nee CCITT) standards, th service has only recently been made available. The 16-K D channel can accomplish its primary responsibilities for si naling and control while still leaving 9.6 Kbps free for th user transmission of low-speed data. Retailers make ext sive use of this service for credit card authorization. Onl the very recent past has the D channel been made availabl end users like you and me. See also AO/DI, BRI and ISDN.

**Packet Overhead** A measure of the ratio of the t packet bits occupied by control information to the numbe bits of data, usually expressed as a percent.

**Packet Radio** Packet Radio is the transmission of c over radio using a version of the international standard X data communications protocol adapted to radio (AX.25 takes your information, and breaks it up into "packets" wh are each sent and acknowledged separately.  This assu error-free delivery from sender to receiver. A packet i stream of characters consisting of a header, the informa the user is sending, and a check sequence. The header g the destination call sign, the call sign of the sender, and digipeaters (digital repeater) call signs that will be used relaying the packet. The check sequence makes certain the data received is what was sent. AlohaNET, a packet r network developed for a number of years ago for use at University of Hawaii, was an early packet radio network LAN networking among the islands and laying a founda for subsequent packet networks, both wired and wirel Packet radio data networks recently have been deployed number of carriers serving mobile and fleet applications, such carriers including ARDIS, RAM Mobile Data and Ne

**Packet Size** The length of a packet, expressed in bytes Packet size is of specified and fixed length in X.25 and o true packet networks. The size of the "packet" in other works may be variable within limits, as is the case wit Ethernet frame or a Frame Relay frame.

**Packet Switching** Sending data in packets through a work to some remote location. The data to be sent is ass bled by the PAD (Packet Assembler/Disassember) into i vidual packets of data, involving a process of segmentati subdivision of larger sets of data as specified by the n protocol of the transmitting device. Each packet has a un

OM DICTIONARY                                    NEWTON'S TELECOM DICTIONARY

being either 128B or 256B, where B=Byte. Custom networks, such as those traditionally used in airline reservation systems, may employ a packet payload of 1024B. A X.25 packet prepends the payload with header information including a flag of eight bits; the flag denotes the beginning of the packet and also serves to assist the network nodes (packet switches) in synchronizing on the rate of transmission. An address field of eight bits also prepends the payload, with four bits identifying the target device and four bits identifying the transmitting device. Control data of eight-to-sixteen bits comprise the last element of the header; included in control data is the packet number in order that the network nodes might identify and correct for lost or errored packets. Appending the payload is a trailer consisting of a sixteen-bit CRC, which is used by all packet nodes for purposes of error detection and correction. See Packet ASSEMBLER/DISASSEMBLER (PAD) and CRC.

**Packet Assembler/Disassembler** PAD. A hardware/software combination that forms the interface between a X.25 network such as PDN and an asynchronous device such as a PC. The PAD generates call request, call clear, and other information packets in addition to the ones that contain user data. The PAD is responsible for packetizing the data from the transmitting device before it is forwarded through the packet network. On the receiving end of the transmission, the PAD strips away the control information contained in the header and trailer in order to get at the original text or payload, in effect disassembling the packets and reconstituting the original set of data in its native or original form. The PAD may be in the form of a standalone DCE device on the customer premise and supporting one or more terminals, or in the form of a printed circuit board which fits into an expansion slot of the terminal. Smaller users generally rely on the carrier to provide the PAD, which is embedded in the packet switch.

**Packet Buffer** Memory set aside for storing a packet awaiting transmission or for storing a received packet. The memory may be located in the network interface controller or in the computer to which the controller is connected. See BUFFER.

**Packet Burst Protocol** A protocol built on top of IPX that speeds the transfer of NCP data between a workstation and a NetWare server by eliminating the need to sequence and acknowledge each packet. With packet burst, the server sends a whole set (or burst) of packets before it requires an acknowledgement.

**Packet Controller** The hub of the AT&T ISDN system. It acts as a fast packet switch providing virtual circuit services to the devices hooked to the system.

**Packet Driver** The specification developed by John Romkey at FTP Software to allow TCP/IP and other transport protocols to share a common network interface card. Packet Drivers have been written for a variety of network interface cards, and in many cases provide NetWare compatibility.

**Packet Filter** A router-based firewall that can accept or reject packets based on predefined rules. The ability to search a packet to determine its destination and to then route it or block it accordingly. This ability helps to control network traffic. See Packet Filtering.

**Packet Filtering** The recognition and selective transmission or blocking of individual packets based on destination addresses or other packet contents.

**Packet Filtering Firewall** A packet filtering firewall is a router or a computer running software that has been configured to block certain types of incoming and outgoing packets. A packet-filtering firewall screens packets based on information contained in the packets' TCP and IP headers, including

some or all of the following: Source address Destination address Application or protocol Source port number Destination port number

**Packet Forwarding** Copying the packet to another node without looking at the destination address.

**Packet Handler Function** The packet switching function within an ISDN switch, for the packet mode bearer service.

**Packet Interleaving** Refers to the process of multiplexing multiple incoming packets from multiple channels on to a single outgoing channel by sampling one or more packets from the first channel, then the next, and so on.

**Packet Level** In packet data networking technology, level 3 of X.25. Defines how user messages are broken into packets, how calls are established and cleared over the packet data network (PDN) and how data flows across the entire PDN. The packet level also handles missing and duplicate packets.

**Packet Level Procedure** PLP. A full-duplex protocol that defines the means of packet transfer between a X.25 DTE and a X.25 DCE. It supports packet sequencing, flow control (including maintenance of transmission speed), and error detection and recovery.

**Packet Mode Bearer Service** An ISDN term for X.25 packet data transmission over the D channel in a BRI application. Always a part of the ITU-T (see CCITT) standards, the service has only recently been made available. The 16-Kbps D channel can accomplish its primary responsibilities for signaling and control while still leaving 9.6 Kbps free for end user transmission of low-speed data. Retailers make extensive use of this service for credit card authorization. Only in the very recent past has the D channel been made available to end users like you and me. See also AO/DI, BRI and ISDN.

**Packet Overhead** A measure of the ratio of the total packet bits occupied by control information to the number of bits of data, usually expressed as a percent.

**Packet Radio** Packet Radio is the transmission of data over radio using a version of the international standard X.25 data communications protocol adapted to radio (AX.25). It takes your information, and breaks it up into "packets" which are each sent and acknowledged separately. This assures error-free delivery from sender to receiver. A packet is a stream of characters consisting of a header, the information the user is sending, and a check sequence. The header gives the destination call sign, the call sign of the sender, and any digipeaters (digital repeater) call signs that will be used for relaying the packet. The check sequence makes certain that the data received is what was sent. AlohaNET, a packet radio network developed for a number of years ago for use at the University of Hawaii, was an early packet radio network for LAN networking among the islands and laying a foundation for subsequent packet networks, both wired and wireless. Packet radio data networks recently have been deployed by a number of carriers serving mobile and fleet applications, with such carriers including ARDIS, RAM Mobile Data and Nextel.

**Packet Size** The length of a packet, expressed in bytes (B). Packet size is of specified and fixed length in X.25 and other true packet networks. The size of the "packet" in other networks may be variable within limits, as is the case with an Ethernet frame or a Frame Relay frame.

**Packet Switching** Sending data in packets through a network to some remote location. The data to be sent is assembled by the PAD (Packet Assembler/Disassembler) into individual packets of data, involving a process of segmentation or subdivision of larger sets of data as specified by the native protocol of the transmitting device. Each packet has a unique

identification and each packet carries its own destination address. Thereby, each packet is independent, with multiple packets in a stream of packets often traversing the network from originating to destination packet switch by different routes. Since the packets may follow different physical paths of varying lengths, they may experience varying levels of propagation delay, also known as latency. Additionally, they may encounter varying levels of delay as they are held in packet buffers awaiting the availability of a subsequent circuit. Finally, they may be acted upon by varying numbers of packet switches in their journeys through the network, with each switch accomplishing the process of error detection and correction. As a result, the packets may also arrive in a different order than they were presented to the network. The packet sequence number allows the destination node to reassemble the packet data in the proper sequence before presenting it to the target device.

Originally developed to support interactive communications between asynchronous computers for time-share applications, packet switched networks are shared networks, based on the assumption of varying levels of latency and, thereby, yielding a high level of efficiency for digital data networking. Isochronous data such as realtime voice and video, on the other hand, are stream-oriented and highly intolerant of latency. As a result, packet switched networks are considered to be inappropriate for such applications. Recent development of certain software and making use of complex compression algorithms, however, has introduced packetized voice and video to the corporate intranets and the Internet, which was the first public packet-switched data network and remains by far the most heavily used.

Here is another way of explaining packet switching: There are two basic ways of making a call. First, the one everyone's familiar with — the common phone call. You dial. Your local switch finds an unused path to the person you called and joins you. While you are speaking, the circuit is 100% all yours. It's dedicated to the conversation. This is called circuit switched. Packet switching is different. In packet switching, the "conversation" (which may be voice, video, images, data, etc.) is sliced into small packets of information. Each packet is given a unique identification and each packet carries its own destination address — i.e. where it's going. Each packet may go by a different route. The packets may also arrive in a different order than how they were shipped. The identification and sequencing information on each packet lets the data be reassembled in proper sequence. Packet switching is the way the Internet works. Circuit switching is the way the worldwide phone system works, also called the PSTN (Public Switched Telephone Network).

Packet and Circuit Switching each have their own significant advantages. Packet switching for example does a wonderful job getting oodles of data into circuits. Think about a voice conversation. When you are talking, he's listening. Therefore half the circuit is dead. There are pauses between your voice. Packet switching takes advantage of those pauses to send data. Packet switching has been used primarily for data. But with the growth of the Internet, it has been used also for voice. Because of the need to re-assemble packets and other reasons, there's up to a half second delay between talking and the person at the other end hearing anything. Packet voice on the Internet is not as clear as circuit switched voice. But that's changing as the packets come faster and the technology improves. See INTERNET, IP Telephony and TAPI 3.0

527

### NEWTON'S TELECOM DICTIONARY

**Packet Switching Network** A network designed to carry data in the form of packets. See PACKET SWITCHING.

**Packet Tracing** The monitoring and reporting a particular packet addresses or types for diagnostic purposes.

**Packet Type Identifier** In packet data networking technology, the third octet in the packet header that identifies the packet's function and, if applicable, its sequence number.

**Packetized Video** First, read the definition of "Packet Switching." Then read the definition of "Packetized Voice" just below. The concept of packetized video is basically the same as that of packetized voice. A video camera feeds the signal into a codec, which converts the native analog signal into a digital format, and segments the data into data packets. The packets are sent across a packet network as a packet stream for reassembly by a codec on the receiving end of the transmission before presentation on a monitor. While packetized video performance is improving in quality through the application of increasingly sophisticated video compression techniques, it suffers from the same intrinsic packet-switching characteristics as does packetized voice. Namely, packet latency and loss. The result often is a video image which is less than pleasing. Note that voice and video are isochronous data, meaning that they are stream-oriented. In other words, the transmitting device must have regular and reliable access to the network. Further, the network must transport and deliver the data on a regular and reliable basis in order that a stream of information reach the presentation device. Such regular and reliable ingress, transport and egress of data results in a image of consistent quality. As packet-switched networks are not designed to support isochronous data communications, they generally are considered unsuitable for voice and video communications. Additionally, video is very bandwidth-intensive, thereby placing additional stress on packet-switched networks such as the Internet, which already is overloaded.

An example might help. Let's say that you are using an inexpensive ($200 or so) videoconferencing package consisting of a camera and software. Your friend has the same package. At a pre-arranged time, you place a call over the Internet to establish a videoconference. At two fps (frames per second) the videoconference goes along pretty smoothly, although both the video and voice quality are a bit rough. At some point, your friend turns his head quickly; at the same time, the Internet bogs down. The packet which contains the image of your friend's nose gets delayed or lost in the network. The video image of your friend now is missing a nose. Funny the first time, aggravating the second, maddening thereafter. The upside is that the videoconference is cheap, if not free, depending on your cost of Internet access. See also PACKET SWITCHING, VIDEOCONFERENCING, INTERNET and ISOCHRONOUS.

**Packetized Voice** First read the definition of "Packet Switching" just above. The idea is to digitize voice and, compress it, and then slice it up into packets and send those packets from the sender by various routes and assemble them as they get to the receiver. Packet switching for data makes sense. Packet switching for voice has not made sense because the voice is too sensitive to latency, or delay, especially the variable delay which is part and parcel of packet-switched networking. Recently developed software and DSP hardware, which employs sophisticated compression techniques has improved the ability to conduct "reasonable" qual-

**PACS** Personal Communications Access System. PACS is a cellular system providing limited, regional mobility in a given area. It provides mobility between that of a cordless phone and a full-fledged cellular system. Originally developed by Bell Labs in the early 1980s, PACS is a comprehensive framework for the deployment of PCS and applies to both licensed and unlicensed applications. Now it is approved by the TIA and Exchange Carriers Standards Associations. Today's currently implemented versions of PCS are "up-banded" versions of the 900 MHz AMPS and GSM cellular standards.

**PACT** Siemens' PBX And Computer Teaming. It defines protocols between Siemens PBXs and external computers,

**Pad** 1. A device inserted into a circuit to introduce loss.
2. Packet Assembler/Disassembler. A device that accepts characters from a terminal or host computer and puts the characters into packets that can be handled by a packet switching network. It also accepts packets from the network and disassembles them into character streams that can be handled by the terminal or host.

**Pad Characters** In (primarily) synchronous transmission, characters that are inserted to ensure that the first and last characters of a packet or block are received correctly. Inserted characters that aid in clock synchronization at the receiving end of a synchronous transmission link. Also called fill characters.

**Pad Switching** A technique of automatically cutting transmission loss pad into and out of a transmission circuit for different operating conditions.

**PAF File** A British term. Post Office Address file, a publicly available data file that, when integrated with an application, links postcodes to full addresses. When using a PAF file, an agent can save time by entering only the postcode. The PAF file automatically inserts post town, street and country.

**Page** A chunk of information, like a document or file, on the Web. A hypermedia document as viewed through a World Wide Web browser. Pages are the way you make information available on the Web. They can contain text, black and white and color photographs, audio and video.

**Page hits** A measure of the number of Web pages accessed at a particular site, or of the number of times a site's page is accessed.

**Page Mirroring** You're surfing the Internet. You come upon an Web site and find something you want to buy. You see a button that says, "To speak to an Agent, push here." You click. An agent in a distant office calls you on another phone line. You're now both speaking to each other and your agent is also seeing the screen you're seeing. As you move to different screens (to different pages), the agent sees the same screen you are looking at. This is called page mirroring. At present the technology won't allow the agent to move the pages which you see. Only you can move the screens.

**Page Zone** A local area in the office that can receive directed Page announcements independently of the remainder of the office.

**Pager** A small one-way receiver you carry with you. When someone wants you, they make your pager receiver sound an alarm. They can activate your pager in a number of ways, including dialing your pager digits directly into a computer, giving your name and pager number to an operator who punches out your numbers. Pagers have become so cheap and very reliable. Monthly service costs have dropped and the area which you can be paged in most areas

bers to call and names of babies born. All this has made the pager far more useful. See also PAGING.

**Pager Codes** Forget the phone. Forget the PC. Pagers are teenagers' new communication tools of choice. Wondering what your kid is receiving? Here are the secret codes, according to September 1997 Seventeen Magazine and Danielle Cioffi.

   007 — I've got a secret.
   143 — I love you.
   07734 — Hello (upside down).
   55 — Let's go for a drive.
   2468 — Who do we appreciate? You.
   13 — I'm having a bad day.
   10-4 — Is everything ok?
   2-2 — Shall we dance?
   666 — He's a creep.
   90210 — She's a snob.
   9-5 — Time to go home.
   121 — I need to talk to you alone.
   100-2-1 — Bad odds. That's not likely.

**Paging** To give a message to someone who is somewhere, but where we don't know. Paging can be done with a little "beeper" carried in her purse or on his belt. Paging can also be done through speakers in phones or from speakers in the ceiling. Most phone systems offer a paging channel access. You dial that number and page your party. The system comes "live" and your voice is heard everywhere. Similar to the stuff they have at airline terminals. Paging systems as an accessory to phone systems always cost extra. They're one of the most valuable features on a phone system. Don't skimp, however, on the quality of the speakers or the power of the paging system. If you do, your system will sound awful and people will not use it. See PAGER.

**Paging Access, Rapid** Your attendant and you or anybody else with an extension off your PBX can make a page (access the paging equipment) by pushbuttoning one or several digits. Sometimes you can dial one several numbers for different paging alternatives. One number gives you the tenth floor. One number gives you the fourth floor, etc. And one number to page everyone — also called an "ALL CALL" page. See also RAPID PAGING ACCESS.

**Paging By Zone** By dialing the appropriate access code, any phone is able to selectively page "groups" of pre designated phones or speakers.

**Paging Channel** PCH (from Paging CHannel). Specified in IS-136, PCH carries signaling information for set up and delivery of paging messages from the cell site to the user terminal equipment. PCH is a logical subchannel of SPACH (SMS (Short Message Service) point-to-point messaging, Paging, and Access response CHannel), which is a logical channel of the DCCH (Digital Control CHannel), a signaling and control channel which is employed in cellular systems based on TDMA (Time Division Multiple Access). The DCCH operates on a set of frequencies separate from those used to support cellular conversations. See also DCCH, IS-136, PAGING, SPACH and TDMA.

**Paging Code Call Access** A feature of the ROLM Attendant Console which offers direct, one-touch access to the paging or code call features.

**Paging Speakers** Speakers in the telephone. Also external units located in ceilings, on walls, etc.

**Paging Total System** Upon dialing the appropriate special code, any station may make a paging announcement