FILED by DJ D.C.
ELECTRONIC

**May 19 2006**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

LINEX TECHNOLOGIES, INC.

      Plaintiff,

v.

MOTOROLA, INC., et al.,

      Defendants.

_____/

Case No. 05-80300-CIV-MARRA/SELTZER

Judge Marra

Mag. Judge Seltzer

## DEFENDANTS' JOINT MEMORANDUM OF LAW
## IN RESPONSE TO PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF

Defendants Motorola, Inc., Nortel Networks, Inc., Tropos Networks, Inc., and Strix Systems, Inc. (collectively, "Defendants"), by and through their undersigned counsel, respectfully submit this memorandum of law in response to Plaintiff Linex Technologies, Inc.'s ("Plaintiff") Opening Claim Construction Brief concerning the disputed terms in asserted claims 32 and 33 of U.S. Patent No. 6,493,377 ("'377 patent").[1]

## I.    INTRODUCTION

Defendants' Joint Memorandum of Law in Support of their Proposed Claim Construction Terms ("Defendants' Memorandum") set forth constructions of claims 32 and 33 of the '377 patent that are consistent with the disclosure in the patent, the patent statute, case precedent and the sources available to the public that show what a person of skill in the art would have understood the disputed claim language to mean. However, after reading Plaintiff's Opening Claim Construction Brief ("Plaintiff's Memorandum"), those unfamiliar with the law of claim construction would conclude that the claims may be construed without regard to the surrounding language in a claim, the patent specification, or the limitations necessary for patentability.

In several instances, Plaintiff invites the Court to commit reversible error by disregarding well-known and indisputable tenets of claim construction set forth by the Federal Circuit,

---

[1] A copy of the '377 Patent was attached as Exhibit 1 to Defendants' Joint Memorandum of Law in Support of their Proposed Claim Construction Terms (DE 68). There are 13 disputed terms presently at issue, as identified in the Joint Claim Chart filed by the Plaintiff and the Defendants (DE 65), which sets forth the parties' respective constructions for each of the 13 disputed terms.

including: (1) the words of a claim are generally given their ordinary and customary meaning to a person of ordinary skill in the art at the time of the invention; (2) the person of ordinary skill in the art is deemed to read the claim term not only in the context of a particular claim, but in the context of the entire patent, including the specification and file history; and (3) the construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.[2]

Overall, Plaintiff's Memorandum makes clear that its goal is to obtain a claim construction, albeit unsupported, broad enough to cover almost all uses of mesh networks. Indeed, the fact that Plaintiff has sued all Defendants, each of which sells different systems, on the same claims, is evidence that Plaintiff is arguing for a particularly expansive claim construction that suits its needs. Unfortunately, this claim construction is based on misguided legal principles and omissions of key evidence. For these reasons, and those set forth below, Defendants respectfully request that the Court adopt each of Defendants' proposed constructions.

## II.   DEFENDANTS' CONSTRUCTIONS SHOULD BE ADOPTED

### 1.   SPREAD-SPECTRUM [MODULATION/SYSTEM] (CLAIMS 32 AND 33)

Plaintiff asserts that the term "spread-spectrum" means "a form of communication in which the signal is spread over a greater bandwidth than is necessary to transmit the signal," including direct sequence spread spectrum ("DSSS") and frequency hopping spread spectrum ("FHSS"). Defendants do not disagree with this definition as a starting point; however, Plaintiff further asserts that one of ordinary skill in the art would recognize that other types of spread-spectrum systems that have "emerged over the years," such as orthogonal frequency-division multiplexing ("OFDM") and ultra wideband ("UWB"), should be included in the definition. Pl. Mem., p. 12.

Plaintiff's assertion that OFDM and UWB qualify as "spread-spectrum" is nothing more than a transparent effort to afford a claim scope larger than what was envisioned by the inventor at the time of the invention. As a threshold matter, the legal tenet that terms are "given their ordinary and customary meaning as recognized by persons of ordinary skill in the art" is incomplete without clarifying that this evaluation is made "at the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005) ("We

---

[2] *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-1317 (Fed. Cir. 2005).

Case No. 05-80300-CIV-MARRA/SELTZER

have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application"), *citing*, *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.,* 381 F.3d 1111, 1116 (Fed. Cir. 2004) ("A court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention."); *PC Connector Solutions LLC v. SmartDisk Corp.,* 406 F.3d 1359, 1363 (Fed. Cir. 2005) (meaning of claim "must be interpreted as of [the] effective filing date" of the patent application); *Schering Corp. v. Amgen Inc.,* 222 F.3d 1347, 1353 (Fed. Cir. 2000) (same). The '377 patent was filed on December 6, 2000, and as such, what one of ordinary skill in the art would have interpreted "spread-spectrum" to mean must be evaluated at that time.

Thus, Plaintiff is over-reaching when it states that the definition of "spread-spectrum" must include systems that "emerged over the years." The applicable legal standard does not permit the claims to encompass spread-spectrum technologies that "emerged" after the filing date, but rather, only those at the effective filing date of the patent application. Plaintiff's criticism that there is no basis in the specification for Defendants' definition of spread-spectrum as being limited to DSSS and FHSS is also not well-taken. The term "spread-spectrum" is not defined in the specification and Plaintiff themselves fail to identify any support for their construction in the specification.

Where, as here, the meaning of a claim term as understood by persons of skill in the art is not immediately apparent, it is appropriate for the court to look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Innova,* 381 F.3d at 1116. Such sources include "extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* Although dictionary definitions may sometimes be of assistance in this regard, Plaintiff's reliance on The Wiley Electrical and Electronics Engineering Dictionary, published in 2004, is misplaced because Plaintiff is relying on a post-filing document to show what one skilled in the art would have understood four years earlier when the application that led to the '377 patent was filed. This is particularly inappropriate given that other, more relevant, and time-appropriate authority establishes that one skilled in the art in the year 2000 would have understood "spread-spectrum" to include only DSSS and FHSS. *See* Def. Mem., p. 10 (citing *In re Amendment of*

3

Case No. 05-80300-CIV-MARRA/SELTZER

*Part 15 of the Commission's Rules Regarding Spread Spectrum Devices*, Dkt. No. 99-231 (spread-spectrum operation is "limited to frequency hopping and direct sequence spread spectrum systems.")).

It is of particular significance that, in the context of the FCC's ruling on this point, it considered, and rejected, the same position Plaintiff now advances, namely, that OFDM qualifies as a form of spread spectrum. It is therefore clear that in the year 2000, only the two specific types of systems advanced by Defendants (DSSS and FHSS) qualified as spread-spectrum. *Id.* As such, Defendants' construction for "spread-spectrum," as that term is used in claims 32 and 33 of the '377 patent, is appropriate and should be adopted.

### 2.   REMOTE STATION (CLAIMS 32 AND 33)

The parties are in general agreement that a "remote station" is a device that is capable of communicating with a node. Plaintiff further construes a "remote station" as being capable of transmitting packets to, and receiving packets from, the distributed network via a node. However, Plaintiff's construction is fundamentally flawed in omitting two key aspects of a "remote station," as explicitly defined in the '377 patent. Namely, Plaintiff's construction fails to recognize that a "remote station" is capable of communicating *only with a node,* and that a "remote station" is an *end-user device.*   And, in fact, Plaintiff's construction of "node" effectively concedes that the remote stations can only communicate with a node. *See* Pl. Mem., p. 15 ("The key feature that sets apart a node in the distributed network from other types of communications devices is that nodes are capable of communicating both with remote station and other nodes in the distributed network.").

As demonstrated in Defendants' Memorandum, a "remote station" is described throughout the '377 patent as communicating with a node (or a hub node specifically in some instances). Furthermore, the '377 patent uses the term "remote station" in col. 1, ln. 18-19 of the "Description of the Relevant Art" to describe cellular telephone type devices (*i.e.*, "remote stations (RS)"), and then continues throughout the "Summary" and "Detailed Description" to use the identical term to refer to the "remote stations" that are employed in the distributed network, spread-spectrum system. Defendants submit that one skilled in the art, in viewing this intrinsic evidence, would understand the term "remote station" to represent a device that has no ability to communicate with any other device except a node or, in other words, is capable of

4

Case No. 05-80300-CIV-MARRA/SELTZER

communicating *only* with a node, and that a "remote station" is an end-user device, such as a telephone or workstation computer. *See, e.g.,* the '377 patent, Figs. 2 and 3.

Defendants further note that in the section entitled "Mesh network systems" beginning on page 3 of Plaintiff's Memorandum, Plaintiff describes a "remote station" as transmitting or receiving data to and from a node in the mesh network and therefore also presumably recognizes that a "remote station" has no other communication capability. Pl. Mem., p. 3, ln. 12-19 and p. 5, ln. 1-4. Also, each section of the '377 patent cited in the "remote station" section of Plaintiff's Memorandum describe a "remote station" as communicating with a node, and nothing more. Pl. Mem., p. 13-14. Plaintiff provides no evidence, intrinsic or otherwise, that a "remote station" taken in context with the '377 patent has the ability to communicate with a device other than a node or to act as an intermediate or non-end-user device. Nevertheless, Plaintiff requests that the Court adopt a construction for the term "remote station" that fails to recognize the requirements set forth in the '377 patent, and which is thus incomplete. Plaintiff even goes as far to suggest that the term "remote station" can be construed to cover "other devices such as servers." Pl. Mem., p. 14, ln. 18-20. However, the '377 patent fails to use the term "servers" or "server" even once, and certainly not in a manner synonymous with the term "remote station."

As evidenced above, the overbroad, incomplete construction proffered by Plaintiff lacks adequate support in the '377 patent, and thus runs afoul of the requirements of 35 U.S.C. § 112, first paragraph, and should not be permitted. *See LizardTech, Inc. v. Earth Resource Mapping, Inc.,* 424 F.3d 1336, 1342-46 (Fed. Cir. 2005); *Wang Laboratories, Inc. v. America Online, Inc.,* 197 F.3d 1377, 1382-83 (Fed. Cir. 1999). For all of the above reasons, the Court should therefore adopt Defendants' proposed construction.

### 3.     NODE (CLAIMS 32 AND 33)

Unlike Defendants' proposed construction of the term "node," which is consistent with the meaning of the term as set forth in the '377 patent, Plaintiff's proposed construction is vague and incomplete. Indeed, Plaintiff's proposed construction fails to consider the characteristics of a "node" that enable a node to communicate with remote stations and with other nodes as described in the '377 patent.

The '377 patent describes a "node" as including a plurality of spread-spectrum transceivers, or equivalently, a plurality of spread-spectrum transmitters and a plurality of spread-spectrum receivers, and at least one other transceiver, or equivalently, at least one other

5

Case No. 05-80300-CIV-MARRA/SELTZER

transmitter and receiver pair that is capable of communicating with other nodes. '377 patent at col. 4, ln.12-29 and col. 5, ln. 1-5 and 19-24. Plaintiff's Memorandum alleges that Defendants' proposed construction "unnecessarily limits the nodes to 'having multiple transceivers for store-and-forward routing of packets to and from end-user devices.'" Pl. Mem., p. 16, ln. 7-8. Specifically, Plaintiff alleges that the statement in the '377 patent "each node's spread-spectrum transceiver, or equivalently spread-spectrum transmitter and spread-spectrum receiver…" refutes Defendants' view that a "node" includes multiple transceivers for store and forward routing to end-user devices (*i.e.*, remote stations). '377 patent, col. 5, ln. 56-60.

However, both embodiments illustrated in Figures 4 and 5, and further described in the specification, explicitly include a <u>plurality</u> of spread-spectrum transceivers that each include a spread-spectrum transmitter and a spread-spectrum receiver. '377 patent, col. 4, ln. 17. Defendants note that the embodiment illustrated in Fig. 4 includes one node transceiver having a node transmitter and node receiver, while the embodiment illustrated in Fig. 5 includes multiple node transceivers, each having a respective node transmitter and a respective node receiver. '377 patent, Figs. 4 and 5. Defendants submit that one skilled in the art would have understood from these descriptions that a node must require a plurality of spread-spectrum transceivers, but can have as few as one node transceiver, consistent with Defendants' proposed construction. In circumstances where a patent specification describes features as being present in all embodiments as in this case, it is not unreasonable for the Court to interpret the patent claims as requiring those features. *SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.,* 242 F. 3d 1337, 1342-46 (Fed. Cir. 2001).

Moreover, Plaintiff mischaracterizes the phrase "each node may include a plurality of spread-spectrum transceivers" (col. 5, ln. 1-2) as suggesting that each node need not include a plurality of spread-spectrum transceivers, but rather, can include only a single spread-spectrum transceiver. Pl. Mem., p. 16, ln. 13-15. Defendants note, however, that the phrase in question reads as follows: "Each node may include a plurality of spread-spectrum transceivers 310, 320, 330, or, equivalently, a plurality of spread-spectrum transmitters 311, 321, 331 and a plurality of spread-spectrum receivers 312, 322, 332…" '377 patent, col. 5, ln. 1-4. Accordingly, it is clear from its full context that the term "may" would not have been understood by one skilled in the art to suggest that a node may include less than a plurality of transceivers as Plaintiff would have the Court to believe. Rather, the term "may" would have been understood to mean that a node

6

Case No. 05-80300-CIV-MARRA/SELTZER

*may* include a plurality of transceivers, or *may* include a plurality of transceivers and receivers, but in any event, that a plurality is required.

Plaintiff further alleges that Defendants' proposed construction is "redundant" because it includes the terms "geographic area" and "spread spectrum modulation" that are "already found within the claims themselves." Pl. Mem., p. 16, ln. 16-18. Again, Plaintiff's contention is inaccurate and misleading. Granted, the term "geographic area" does indeed appear in claim 32, yet does not appear in claim 33. Moreover, claim 32 recites "a plurality of nodes for covering a geographic area." It is, therefore, consistent with this claim language to construe an individual node as performing store-and-forward routing of packets to and from end-user devices within a limited geographic area, while the entire plurality of nodes covers the geographic area as a whole. Also, the term "spread-spectrum modulation" in claims 32 and 33 describes the packets that the nodes are communicating with the remote stations. That is, the packets are defined as having been modulated by spread-spectrum modulation. Contrary to Plaintiff's assertion, it is perfectly consistent with the language of claims 32 and 33 to define a node as performing that spread-spectrum modulation on the packets that are being routed to the end-user devices (remote stations). Accordingly, the Court should adopt the Defendants' construction of the term "node."

### 4.   PACKET (CLAIMS 32 AND 33)

The parties' competing constructions for the term "packet" differ only in that Plaintiff seeks to avoid any requirement that the packet be "formatted," or that it be used for communicating in a "packet switching network." The support for each of these limitations was detailed in Defendants' Memorandum. Def. Mem., p. 12-13. Apart from a general allegation that Defendants are trying to place "artificial limitations" on the definition of the term, Plaintiff fails to cite any intrinsic or extrinsic evidence that is contrary to Defendants' proposed construction. Nor has Plaintiff cited any intrinsic or extrinsic evidence that supports construing this term more broadly than Defendants' proposed construction.[3]

As demonstrated in Defendants' opening brief, the term "packet" has a well-understood meaning to persons of ordinary skill in the art, and that meaning is reflected in Defendants' proposed construction. Moreover, the manner in which the term is used in the '377 patent is

---

[3] Significantly, Plaintiff fails to explain how an unformatted packet could even be used to communicate in the manner required by the claims. Unless there is some agreed-upon format for the packets exchanged between nodes, a receiving node would have no way of knowing where to find the destination address, and thus no way of knowing where the packet should be routed.

7

fully consistent with that well-understood meaning. Plaintiff has failed to cite any evidence to support its effort to have this Court construe the term "packet" more broadly.

### 5.  DESTINATION ADDRESS (CLAIMS 32 AND 33)

Plaintiff's interpretation of "destination address" broadens the term beyond what is claimed in claims 32 and 33. In particular, Plaintiff objects to Defendants' proposed definition on the basis that the "destination address" could be beyond the network because the ultimate intended recipient of the packet may be outside of the network. Pl. Mem., p. 18. That interpretation is directly contradicted by the surrounding language of the claims. Both claims 32 and 33 are directed to a "distributed network" that consists in part of "*a plurality of nodes.*"[4] The claims then call for a "destination address of a respective destination node of the plurality of nodes." Claim 32 (col. 16, ln. 19-20); claim 33 (col. 16, lns. 41-42) (emphasis added). Thus, the claims specify that the "destination address" corresponds to a recipient within the network— because the claims expressly state that the "destination address" is the address of one of the "plurality of nodes" that makes up the network.

Indeed, the entire patent is focused on the network. There is no description of what occurs beyond the network. *See, e.g.,* Abstract. Plaintiff struggles to find support for its proposed construction, repeatedly citing to one sentence in the patent: "When an information packet(s) arrives from a remote station, the node routes the packet(s) to an appropriate second recipient node on the way to an intended hub node and central office, toward the destination address." '377 patent, col. 3, ln. 18-22 (cited three times in the relevant portion of Plaintiff's Memorandum., pp. 18-19). According to Plaintiff, the inclusion of "toward the destination address" suggests that the destination address is beyond the network. Read in context, however, this portion of the patent is more appropriately understood as consistent with the Defendants' proposed interpretation. The packet is routed through the network "toward the destination address," which is its final stop within the network. Even viewed most favorably to Plaintiff, the statement is at best ambiguous.

Plaintiff also ignores the language of the claims by suggesting that "destination address" may identify "either a node or a remote station." Pl. Mem., p. 19. Claims 32 and 33 expressly call for a "destination address *of a respective destination node,*" as discussed above. Thus, in

---

[4] Claim 32 calls for "A distributed network, spread-spectrum system, comprising... a plurality of nodes for covering a geographic area...." ('377 patent, col. 16, ln. 4-5, 7); claim 33 describes "A distributed network, spread-spectrum method, having a plurality of nodes...." ('377 patent, col. 16, ln. 27-28).

8

these claims, "destination address" is limited to the address of a "destination node." Plaintiff also argues that the "destination address" need not identify the *final* intended recipient of the packet. *Id.* Defendants have not, however, proposed that "destination address" identify the "final intended recipient of the packet." Rather, Defendants' construction recognizes that the "destination address" identifies the final intended recipient of the packet "in the network."

The use of the word "final" clarifies that there is only a *single* destination address within the network. In other words, each packet has a destination, not multiple destinations in the network. The patent nowhere describes or suggests the use of multiple destination addresses. Rather, "destination address" is always used in the singular: there is only one. *See, e.g.*, '377 patent, col. 6, ln. 15-16, ln. 19, ln. 34. Indeed, each packet itself is made up of, in part, "a destination address" — again, singular, just one. '377 patent, col. 5, ln. 60-61. This destination address does not change as the packet moves through the network; the patent never describes a packet reaching an intermediate destination and being reformatted to include a new "destination address." Therefore, the one destination address must correspond to the final intended recipient of the packet in the network.

This point is reinforced by the patent's description of the invention. The patent contemplates communication of data packets from one place to another. Specifically, packets are always being routed either to a hub node or to a remote station. *See, e.g,* '377 patent, col. 2, ln. 67-col. 3, ln. 1 ("the flow control subsystem routes the packet through appropriate nodes to the hub node or, in the case of a 'local call,' to the remote user directly." (emphasis added)); *see also* Pl. Mem., p. 19. The patent never indicates that nodes along the path to a hub node or remote station could themselves be considered "destinations." On the contrary, these nodes along the path are referred to merely as "recipient" nodes. *See, e.g.,* '377 patent, col. 3, ln. 8-10 ("from a central office to an appropriate hub node, and routes the packet to a next recipient node"); col. 3, ln. 19-21 ("the node routes the packet(s) to an appropriate second recipient node on the way to an intended hub node and central office..." (emphasis added)). The patent describes routing the packet "through" these "appropriate nodes," not "to" them. '377 patent, col. 2, ln. 67 (emphasis added). Plaintiff's efforts to broaden the claims are inconsistent with the *Phillips* guidelines and should be rejected.

Case No. 05-80300-CIV-MARRA/SELTZER

In the context of claims 32 and 33, "destination address" means "a unique network identifier for the final intended recipient of the packet in the network." In the context of the asserted claims, the final intended recipient is the destination node.

### 6.   RESPECTIVE NODE (CLAIMS 32 AND 33)

Defendants have offered a construction for "respective node" that is gleaned from the context of the surrounding claim language—that "respective node" refers to the first node within the distributed network that receives a packet originated by a remote station. Plaintiff offers no explanation of any plausible alternative meaning. Indeed, if "respective node" does not refer to the "first node," the term is indefinite and the claim should be held invalid because it fails to properly define the invention as required under 35 U.S.C. §112. The Court should adopt Defendants' proposed construction.

### 7.   FLOW-CONTROL MEANS (CLAIM 32)[5]

Plaintiff encourages the Court to adopt its definition of the term "flow-control means" as "a subsystem that routes packets through the distributed network" because this definition is "simple and concise." Pl. Mem., p. 19. Unfortunately, this definition is also wrong. Not only is there no authority for Plaintiff's proposition that the simplest definition is the right one, a claim construction that fails to include limitations of an element that are set forth in the claim itself is wrong as a matter of law, particularly where such limitations are required to define the function of a "mean for" clause.

It is well-settled that the claims themselves provide substantial guidance as to the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314 (*citing Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (when construing claim terms, "[f]irst, we look to the words of the claims themselves. . .")). This is of particular import when construing a means-plus-function element[6] because, when identifying the claimed function, 35

---

[5] As set forth in Defendants' Memorandum, Claim 32 is indefinite because the '377 patent does not disclose the "structure" (*i.e.*, algorithm) that performs the claimed functions of the "flow-control means." Def. Mem., pp. 6-9. In particular, the '377 Patent fails to disclose a structure for selecting the path of a packet through the network. Def. Mem., pp. 8-9. Plaintiff's Memorandum does not address this argument, or point to any disclosure in the '377 patent that would provide structure for the "flow-control means." Nonetheless, because Plaintiff does propose a definition of "flow-control means," Defendants will address same in order to avoid any suggestion that Defendants agree with Plaintiff's position, but without waiving its indefiniteness argument. Defendants reserve the right to address Plaintiff's response to Defendants' indefiniteness argument, if any, in its Reply Memorandum.

[6] Plaintiff does not dispute that the proper construction of "flow-control means" is governed by 35 U.S.C. §112, ¶ 6.

10

Case No. 05-80300-CIV-MARRA/SELTZER

U.S.C. §112, ¶ 6, does not permit adoption of a function different from that explicitly recited in the claim. *ACTV, Inc. v. Walt Disney Co.,* 346 F.3d 1082, 1087 (Fed. Cir. 2003).

The language of claim 32 requires that the distributed network include a "flow-control means" [(a)] for communicating traffic information between the plurality of nodes, with the traffic information including traffic density at each of the plurality of nodes, said flow-control means, [(b)] responsive to the traffic information and to a respective packet, from a first node, having a respective destination address of a respective destination node of the plurality of nodes, for selecting a path of a multiplicity of nodes through the plurality of nodes to the destination node, said flow-control means for [(c)] routing, responsive to the traffic information, the respective packet through the path of the multiplicity of nodes to the respective destination node. '377 patent, col. 16, ln. 14-26. As such, the flow-control means does more than merely "route packets" as Plaintiff's construction suggests, and the proper claim construction must provide for these additional functions.

Plaintiff's argument that Defendants claim construction is "redundant" is equally unavailing. Pl. Mem., p. 20. Plaintiff offers no authority for its view that claim elements should be broadened simply because they may be inclusive of other, defined terms. Moreover, Plaintiff's statement that Defendant's construction "has no basis in the intrinsic record" is hollow. As demonstrated above, Defendants' claim construction derives directly from the claim itself, which of course, is part of the intrinsic record. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification and, if in evidence, the prosecution history.").

Finally, Plaintiff, under the auspices of simplicity, is attempting to take advantage of embodiments in the specification that are not included in claim 32. For example, Plaintiff argues that in one preferred embodiment the "flow-control subsystem" is distributed through the network, "with a flow-control sub-system resident at each node." Pl. Mem., p. 19-20, *citing*, col. 377 patent, 6, ln. 4-10; ln. 7-10. Plaintiff then criticizes Defendants' construction of the term "flow-control means" as a "*central* flow-control system." '377 Patent, col. 6, ln. 4-10 (emphasis added).

Simple inspection of claim 32, however, reveals that the claim itself requires the flow-control means (*i.e.,* the computer or processor) to be *central* in the distributed system, and not

11

Case No. 05-80300-CIV-MARRA/SELTZER

present at each of the nodes.  For example, the structure of claim 32 makes clear that there are three basic elements of the <u>distributed network</u>: (1) a plurality of remote stations; (2) a plurality of nodes; and (3) flow-control means.  '377 patent, col., 16, ln. 4-26.  Thus, the flow-control means is an element of the <u>distributed network</u>, not an element of the "plurality of nodes."

Inspection of the other claims in the '377 patent also leads to this same conclusion. *Phillips*, 415 F.3d at 1314 ("Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term.") (*citing Vitronics*, 90 F.3d at 1582).  For example, in claim 1, the distributed network includes a plurality of nodes, wherein <u>each node</u> includes a store-and-forward system.  '377 patent, col. 7, ln. 39-56. The flow-control sub-system, in turn, is coupled to the store-and-forward system for controlling same.  '377 patent, col. 7, ln. 57-59.  It would therefore appear that, because the store-and-forward system resides at each node, and because the flow-control system is coupled to the store-and-forward system and controls its functions, the flow-control subsystem may reside at each of the nodes.  Thus, if the patentee intended the flow-control sub-system to reside at each node, claim 32 could have, and would have, listed the flow-control means as a portion of the plurality of nodes.

That is not the situation in claim 32.  Claim 32 does not refer to the aspects of "each node," but rather, recites the "flow-control means" as part of the distributed network.  This interpretation is consistent with the '377 patent's description of a distributed system that has a "*central* flow-control system."  '377 Patent, col. 6, ln. 4-10 (emphasis added).  Moreover, the "flow-control means" must be a centrally located system so that it may contain information about the traffic at all of the nodes in order to perform the specified functions (*i.e.*, communicate traffic information, select a path and route the packets).[7]  As such, to the extent "flow-control means" can be defined, and is not indefinite, Defendants' construction is the correct one.

### 8.   TRAFFIC INFORMATION (CLAIMS 32 AND 33)

In an effort to support its overly broad construction of the term "traffic information," Plaintiff mischaracterizes Defendants' proposed construction by suggesting that Defendants have limited the term to include only traffic density, to the exclusion of other embodiments

---

[7]   This conclusion is also consistent with the interpretation of other claims in the '377 patent.  For example, independent claim 4 stipulates that the "flow-control means" communicates traffic information between a "multiplicity of neighboring nodes," and as such, there is a clear distinction between a network in which the flow-control means contains traffic information about some, but not all, of the nodes (claim 4), and a centralized network containing traffic information about all of the nodes (claim 32).  '377 Patent, col. 9, ln. 37.

12

Case No. 05-80300-CIV-MARRA/SELTZER

supposedly disclosed in the '377 patent. Defendants' proposed construction does no such thing. Rather, Defendants' construction requires that traffic information include *at least* traffic density – a requirement that comes straight out of the asserted claims. '377 Patent, col. 16, ln. 15-17 (claim 32 reciting "with the traffic information including traffic density at each of the plurality of nodes"), ln. 36-37 (claim 33 reciting "with the traffic information including traffic density at each of the plurality of nodes"). Plaintiff, however, would apparently have this Court err by construing the term in a vacuum, ignoring the context in which it appears. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (when construing claim terms, "[f]irst, we look to the words of the claims themselves. . ."). In fact, even if the '377 patent disclosed an embodiment in which traffic information excluded traffic density—which it does not—there is no question that the asserted claims explicitly require that traffic information includes at least the traffic density at each of the nodes.

Plaintiff also fails to provide support in the intrinsic evidence for its attempt to broaden the meaning of traffic information to encompass information relating to "conditions of the distributed network" and "the transmission of data in the distributed network." Contrary to Plaintiff's argument, the claims and specification of the '377 patent consistently use the term "traffic information" to refer only to conditions *at a node*. *See, e.g.*, '377 Patent, col. 16, ln. 15-17 (claim 32 reciting that traffic information includes traffic density "*at each of the plurality of nodes*"); col. 3, ln. 6-10 (explaining that packets are routed "[b]ased on the traffic *at each node*"); col. 6, ln. 12-14 ("traffic information typically includes traffic density *at each of the nodes* and memory availability") (emphasis added). In contrast, Plaintiff fails to cite a single instance in the specification where the term traffic information is used to refer to conditions of the network or the transmission of data through the network.[8]

### 9.   TRAFFIC DENSITY (CLAIMS 32 AND 33)

Plaintiff again ignores the express language of claims 32 and 33 in arguing for an unduly broad construction of the term "traffic density." In particular, Plaintiff argues that traffic density can encompass not only a condition at a node, as Defendants' construction requires, but also a condition of a link between nodes or of the network as a whole. Pl.'s Mem., p. 22. However, the

---

[8] Plaintiff purports to cite specification support for construing traffic information to encompass "traffic density, traffic congestion, traffic flow, node memory availability, whether the intended recipient is inside or outside of the network, and the specific types of data being transmitted (*e.g.*, voice data)." Pl.'s Mem., p. 21. However, inspection of the cited specification passages reveals that only traffic density and node memory availability are described as "traffic information."

13

Case No. 05-80300-CIV-MARRA/SELTZER

asserted claims themselves expressly recite only that "traffic information includes traffic density *at each of the plurality of nodes*." '377 Patent, col. 16, ln. 15-17, 37-38 (emphasis added). Moreover, the portions of the specification that Plaintiff cites in support of its broader construction do not, in fact, teach measuring traffic density anywhere other than at a node. Specifically, column 2, line 62 of the '377 patent describes the flow control subsystem communicating "traffic information between each of the nodes," supporting Defendants' construction; column 6, lines 24-30 describes routing packets to ensure that they arrive sequentially, with no mention of traffic density; and column 6, lines 44-46 describes a hub node keeping track of certain information, but again with no mention of traffic density.

Equally unsupported is Plaintiff's contention that traffic density should be construed generally to relate to the "amount of traffic," as opposed to a "number of packets" as Defendants propose. Pl.'s Mem., p. 22. While attacking Defendants' construction as too narrow, Plaintiff fails to cite anything in the intrinsic evidence that teaches measuring an "amount of traffic" based on something other than the number of packets being handled, and likewise fails to even suggest what such other basis for measurement might be. Again, the portions of the specification that Plaintiff cites fail to support the broad construction it seeks.

### 10.  RESPONSIVE TO THE TRAFFIC INFORMATION (CLAIMS 32 AND 33)

The parties are in agreement, fundamentally, that this term should be construed to mean "reacting to the traffic information." However, Plaintiff is satisfied with this incomplete and vague construction, while Defendants offer a construction that is unambiguous and consistent with the intended meaning set forth in the '377 patent.

Specifically, Plaintiff contends that "traffic information" includes the variables "traffic congestion," "traffic flow," "whether the intended recipient is inside or outside of the network" and "the specific types of data being transmitted." Pl. Mem., pg. 21, ln. 28-31. However, the '377 patent does not even recite the phrases "inside or outside of the network" or "specific types of data being transmitted," much less in conjunction with the term "traffic information." On the contrary, consistent with Defendants' proposed construction, the '377 patent describes "traffic information" as including "traffic density including traffic density at each of the nodes and memory availability." '377 patent, col. 6, ln. 12-14.

Furthermore, Plaintiff's handling of the terms "traffic congestion" and "traffic flow" is also misleading. In particular, the '377 patent uses the term "traffic congestion" in claims 1-3

14

which are not at issue, and once in the "Detailed Description", stating that "[i]n response to the traffic congestion and to a plurality of packets having voice data, the flow-control subsystem routes the plurality of packets through a path in the plurality of nodes to ensure that the plurality of packets arrive sequentially." '377 patent, col. 6, ln. 24-28. Also, the '377 patent uses the term "traffic flow" only once, stating that "[e]ach hub keeps track of the traffic flow, memory availability, of many nodes." '377 patent, col. 6, ln. 44-45. Hence, a construction that would leave the term "traffic information" open to an interpretation that would cover these terms, as Plaintiff suggests, is vague and inconsistent with the '377 patent.

On the other hand, as explained in Defendants' Memorandum, one skilled in the art would understand from the '377 patent that a path of a multiplicity of nodes is selected by taking into account congestion and the available capacity of the nodes in the network, and the congestion and available capacity of the nodes cannot be ascertained without considering the traffic density at each of the nodes. Accordingly, Defendants' proposed construction requiring the inclusion of the "traffic density" component in the term "traffic information" as used in the phrase "responsive to the traffic information" is consistent with the intended meaning of the phrase as consistent with the '377 patent. The Court should therefore adopt Defendants' proposed construction of "responsive to the traffic information."

### 11. FIRST NODE (CLAIMS 32 AND 33)

As noted above in connection with the term "respective node," Defendants believe that "first node" is synonymous with this term because "respective node" refers to the first node within the distributed network that receives a packet originated by a remote station. Plaintiff offers no support for its contentions otherwise, except to state that "respective node" is "not limited to the 'first node.'" Pl. Mem., p. 24. Defendants, however, have pointed to multiple instances in the specification wherein "respective node" is referred to as the node where a packet's journey begins. Def. Mem., p. 15. Thus, if "respective node" does not refer to the "first node," the term is indefinite and the claim should be held invalid under 35 U.S.C. §112.

### 12. DESTINATION NODE (CLAIMS 32 AND 33)

Plaintiff objects to Defendants' construction of "destination node" on the basis that a destination node allegedly does not need to be a "hub node." Pl. Mem., p. 24. Plaintiff, however, has not cited any portion of the '377 patent that describes routing a packet to any node other than a hub node because no such description exists. The '377 patent refers to "the destination address

15

Case No. 05-80300-CIV-MARRA/SELTZER

to the hub node" and describes routing the packet "to the hub" or "until [it] arrives at the hub." '377 patent, col. 2, ln. 64-67; col. 6, ln. 14-20, ln. 63-65. A hub node may be a destination; there is no description of any other node that serves that function.

The only argument Plaintiff offers is that the term "hub node" is itself used in other patent claims. Pl. Mem., p. 24. That fact is not determinative. *See Multiform Dessicants v. MedZam Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998) ("claims that are written in different words may ultimately cover substantially the same subject matter"). The claims should be interpreted in view of their text and the description and drawings in the patent. *Id.*; *see also, Phillips, supra*; *Inpro II Licensing S.A.R.L. v. T-Mobile USA, Inc.*, 2006 WL 1277815, at *2 (Fed. Cir. May 11, 2006) ("describing claim elements or limitations in different words does not invariably change the scope of the claim") (citing *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023-24 (Fed. Cir. 1987)). In the '377 patent, the only "destination node" is the hub node, and the claim should be construed accordingly.

### 13.   SELECTING A PATH OF A MULTIPLICITY OF NODES (CLAIM 32) AND SELECTING A PATH OF A MULTIPLICITY OF NODES (CLAIM 33)

Plaintiff contends that these phrases are "clearly understandable." Pl. Mem., p. 25, ln. 4. Nevertheless, Plaintiff fails to suggest what such a clear understanding would have been to one of ordinary skill in the art at the effective filing date. Defendants, on the other hand, do not intend to add "an additional layer of complexity to the construction" (Pl. Mem., p. 25, ln. 7-8) as the Plaintiff accuses, but rather simply offer a construction that is reasonable and appropriate in view of the context of claims 32 and 33 and the '377 patent as a whole, to assist the Court in arriving at a construction. Perhaps in doing so, Defendants are merely stating the obvious, and have thus opened themselves to attack by the Plaintiff. In any event, Plaintiff has offered no intrinsic or extrinsic evidence to demonstrate any flaw in the Defendants' proposed construction. Hence, the Court should adopt the construction offered by Defendants.

## III.   CONCLUSION

Defendants respectfully request that the Court adopt each of the proposed constructions set forth in their original Memorandum, as further supported by the above discussion, as those constructions are fully consistent with controlling precedent and the intrinsic and extrinsic evidence. By contrast, Plaintiff's vague and overly broad proposed constructions seek to unduly

16

Case No. 05-80300-CIV-MARRA/SELTZER

increase the scope of the alleged invention beyond what is actually described and claimed in the '377 patent.  Under such circumstances, Defendants' constructions should be adopted.[9]

Dated:  May 19, 2006                                      Respectfully submitted,


Darrell Payne, Esq.                                      Eric K. Gabrielle, Esq.
Fla. Bar No. 773300                                      Fla. Bar No. 160725
**SHOOK HARDY & BACON, L.L.P.**                          Marissa D. Kelley, Esq.
Miami Center, Suite 2400                                 Fla. Bar No. 379300
201 S. Biscayne Blvd.                                    **STEARNS, WEAVER, MILLER, WEISSLER,**
Miami, Florida U.S.A. 33131-4332                         **ALHADEFF & SITTERSON, L.L.P.**
Tel: (305) 358-5171                                      200 E. Broward Boulevard, Suite 1900
                                                         Fort Lauderdale, Florida 33301-1949
Michael E. Barry, Esq.                                   Tel: (954) 462-9500
David J. Moorhead, Esq.                                  Fax: (954) 462-9567
Nicole M. Bulman, Esq.
**GARDNER CARTON & DOUGLAS L.L.P.**                      Mark M. Supko, Esq.
191 N. Wacker Drive, Suite 3700                          Michael H. Jacobs, Esq.
Chicago, IL 60606-1698                                   **CROWELL & MORING, L.L.P.**
Tel: (312) 569-1000                                      1001 Pennsylvania Avenue, N.W.
                                                         Washington, DC 20004-2595
                                                         Tel: (202) 624-2500
Joseph J. Buczynski, Esq.                                Fax: (202) 628-5116
**Gardner Carton & Douglas L.L.P.**
1301 K Street, NW, Suite 900, East Tower
Washington, DC 20005-3317                                ***Counsel for Nortel Networks, Inc.***
Tel: (202) 230-5000


***Counsel for Motorola, Inc.***

---

[9] The undersigned counsel has been authorized to file this joint memorandum of law on behalf of all of the Defendants.

17

Case No. 05-80300-CIV-MARRA/SELTZER

Charles H. Lichtman, Esq.
Fla. Bar No. 501050
**BERGER SINGERMAN**
Las Olas Centre II
350 E. Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Tel: (954) 627-9913
Fax: (954) 523-2872

Ramsey M. Al-Salem, Esq.
Jessica L. Rossman, Esq.
**PERKINS COIE, L.L.P.**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Tel: (206) 359-8000
Fax: (206) 359-9000

*Counsel for Strix Systems, Inc.*

James A. Gale, Esq.
Fla. Bar No. 371726
Gregory L. Hillyer, Esq.
Fla. Bar No. 682489
**FELDMAN GALE, P.A.**
Miami Center, Suite 1920
201 South Biscayne Blvd.
Miami, FL 33131-4332
Tel: (305) 358-5001
Fax: (305) 358-3309

*Counsel for Tropos Networks, Inc.*

/s/ Gregory L. Hillyer

## CERTIFICATE OF SERVICE

I HEREBY BY CERTIFY that a true and correct copy of the foregoing was served by U.S. Mail on this 19th day of May, 2006, upon counsel for the Plaintiff, Linex Technologies, in accordance with the following service list.

/s/ Gregory L. Hillyer

## Service List

Julie Braman Kane
julie@colson.com
COLSON HICKS EIDSON
255 Aragon Avenue, 2nd Floor
Coral Gables, Florida 33134-5008
Tel: (305) 476-7400
Fax: (305) 476-7444

Edward W. Goldstein
egoldstein@gfiplaw.com
Corby R. Vowell
cvowell@gfiplaw.com
GOLDSTEIN & FAUCETT, L.L.P.
1177 West Loop South, Suite 400
Houston, TX 77027
Tel: (713) 877-1515
Fax: (713) 877-1737

*Counsel for Linex Technologies, Inc.*

18