

FILED by DJ    D.C.
ELECTRONIC

Jun 2 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

LINEX TECHNOLOGIES, INC.

        Plaintiff,

v.

MOTOROLA, INC., et al.,

        Defendants.

_____/

Case No. 05-80300-CIV-MARRA/SELTZER

Judge Marra

Magistrate Judge Seltzer

### DEFENDANTS' JOINT REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR PROPOSED CLAIM CONSTRUCTION

Defendants Motorola, Inc., Nortel Networks, Inc., Tropos Networks, Inc., and Strix Systems, Inc. (collectively, "Defendants"), by and through their undersigned counsel, respectfully submit this reply memorandum in support of their proposed constructions of the disputed terms in claims 32 and 33 of U.S. Patent No. 6,493,377 ("the '377 patent").[1]

**I.  CLAIM 32 IS INDEFINITE AND INVALID UNDER 35 U.S.C. §112**

    **A.  "Flow-Control Means" is a Means-Plus Function Element**

Plaintiff Linex Technologies, Inc. ("Plaintiff") concedes that the "flow-control means" in claim 32 of the '377 patent is presumptively a means-plus-function element under 35 U.S.C. § 112, ¶ 6, but nevertheless contends that the presumption has been overcome either because the term "flow-control" implies some definite structure or because sufficient structure for the term is recited elsewhere in the claim. Pl. Opp., p. 4. Neither argument has merit.

Contrary to Plaintiffs' argument, the term "flow-control" cannot reasonably be equated with terms such as filter, brake, clamp, screwdriver, lock, or baffle because, unlike these common mechanical terms, "flow-control" does not readily conjure any images of structure in the mind of the reader. Pl. Opp., p. 2-4 (*citing Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580 (Fed. Cir. 1996) and *Envirco Corp. v. Clestra Cleanroom, Inc.*, 209 F.3d 1360 (Fed. Cir.

---

[1] In an effort to simplify the issues, Defendants have conferred with Plaintiff Linex Technologies, Inc. in an attempt to reach an agreement concerning certain claim constructions. Where applicable, these alternative proposals are presented herein.

2000))[2].  While Plaintiff contends that "flow-control means" has a well-defined meaning in the art, Plaintiff offers no evidence whatsoever, intrinsic or otherwise, to support this bald assertion.[3]

Equally unsupported is Plaintiff's assertion that the rest of claim 32 "recites sufficient structure for the flow-control means."  Pl. Opp., p. 4.  Plaintiff offers only indiscriminate citations to other claim terms (*i.e.*, "traffic information," "packet," "first node," "destination node"), some of which have no structure at all, and none of which can be ascribed to a structure for performing the claimed functions of the "flow-control means."  This is not the sort of proof necessary to overcome the presumption created by the use of "means for" language in a claim.  *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1374 (Fed.Cir. 2003); *see also*, *Billingsnetwork Patent, Inc. v. Cerner Physician Practice, Inc.*, 2006 WL 263601 *4 (February 1, 2006) (*citing Apex*).

*Billingsnetwork*, cited by Plaintiff, illustrates the type of structure that may be sufficient to avoid the restrictions of 35 U.S.C. § 112, ¶ 6 in a computer-related application.  There, the court determined that sufficient structure was recited in the claim regarding the term "means for providing electronic transfer" because the claim recited "a database server [] utilizing an appropriate software."  *Id.* at *12-16.  By contrast, claim 32 makes no mention of a computer, processor, server, software, much less a "flow-control subsystem"—the precise system Plaintiff asserts is the structure corresponding to "flow-control means."  Pl. Opp., p. 7.[4]  Thus, there is insufficient structure in claim 32 to overcome the presumption that the use of the term "means" was meant to express a "means-plus-function" element.

---

[2] *Greenberg* (involving "detent mechanism") and *Envirco* (involving "baffle means") do not support Plaintiff's argument regarding "flow-control" as the terms at issue in those cases were mechanical ones readily equated with structure.  Moreover, the claim at issue in *Greenberg* did not employ "means for" language at all, whereas the claim at issue in *Envirco* went on to describe the exact structure as "having inner surfaces for directing airflow…radially outward…and thereafter…between said first baffle means and said air filter means."  *Greenberg*, 91 F.3d 1583; *Envirco*, 209 F.3d at 1365.  Neither of those situations are presented here.

[3] If Plaintiff's position were correct, a patentee could always escape the confines of 35 U.S.C. § 112, ¶ 6, even when employing the term "means," simply by asserting that the functional expression has a recognized structure to one of ordinary skill in the art.

[4] Plaintiff's reliance on *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524 (Fed. Cir. 1996) is misplaced.  In that case, the court held that the term "perforation means…for tearing" was not a means-plus-function clause because the claim sufficiently described a structure (*i.e.*, the perforation itself) to perform the function of tearing.  *Id.* at 531.  Specifically, the court construed the term "perforation means…for tearing" to mean "perforations."  *Id.*  Here, there is no structure recited in the claim that performs the function of the "flow-control means," and as such, *Cole* is inapposite.

2

### B. Claim 32 is Indefinite for Failing to Disclose Sufficient Structure in the Specification for the "Flow-Control Means"

As detailed in Defendants' opening memorandum, a claim reciting a means-plus-function element is invalid for indefiniteness if the specification fails to provide a sufficient disclosure of corresponding structure. Def. Mem., p. 6-9. Plaintiff has failed to refute Defendants' showing that the '377 patent does not clearly link a structure for performing the claimed function of the "flow-control means" in claim 32. Specifically, the '377 patent fails to associate any software or algorithm in connection with selecting a specific path that a packet takes through the network. In the absence of such guidance, the claim is indefinite because the public (and Defendants in this case), are unable to understand the scope of claim 32, or determine whether they are infringing.[5]

Plaintiff does not dispute that a computer implements the "flow-control means." Pl. Opp., p. 7. It is well-settled that "[a] computer-implemented means-plus-function term is limited to the corresponding structure disclosed in the specification and equivalents thereof, and <u>the corresponding structure is the algorithm</u>." *Harris Corp. v. Ericsson, Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005) (emphasis added). Thus, to properly interpret claim 32, the algorithm must be disclosed, and failing to limit claim 32 to the disclosed algorithm is reversible error. *WMS Gaming, Inc. v. Int'l Game Tech.*, 180 F.3d 1339, 1348 (Fed. Cir. 1999).

Plaintiff relies on *Billingsnetwork* and *CIVIX-DDI, LLC v. Microsoft Corp.*, 84 F. Supp. 2d 1132 (D. Col. 2000) to suggest that "the standard for disclosing a structure corresponding to a means-plus-function limitation is not as onerous as Defendants suggest," (Pl. Opp., p. 6), but these cases do not support Plaintiff's position. On the contrary, the court in *Billingsnetwork* required the disclosure of "the <u>entire</u> algorithm" for performing the function at issue. 2006 WL 263601 at *18 (emphasis added). The fact that the court found it by "look[ing] to other parts of the specification to determine whether they contribute to disclosure of the algorithm" does not alter the requirement that the algorithm itself be provided in full. *Id.* Similarly, in *CIVIX*, the

---

[5] "The primary purpose of the definiteness requirement is to ensure that the claims are written in such a way that they give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public, e.g., competitors of the patent owner, can determine whether or not they infringe." *Default Proof Credit Card System, Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1302-33 (Fed. Cir. 2005); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006). Otherwise, a patent would have a "zone of uncertainty" and the "public[] would be deprived of rights suppose to belong to it, without being clearly told what it is that limits these rights." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996) (quoting *Merrill v. Yeomans*, 94 U.S. 568, 573 (1877)). Accordingly, when a "means for" performing a function is recited in a claim, a patentee must clearly link a structure to the claimed function. *Medical Instrumentation & Diagnostics Corp. v. Elektaab*, 344 F.3d 1205, 1211 (Fed. Cir. 2003) ("The duty of a patentee to clearly link or associate structure with the claimed function is the quid pro quo for allowing the patentee to express the claim in terms of function under § 112, ¶ 6.")

specification disclosed specific attributes of the database and software in question (*i.e.*, an SQL-server, xBASE, object-oriented programming, Visual Basic, and other software architectures configured to allow user interaction). 84 F. Supp. 2d at 1160. For these reasons, the court held that the "disclosure of software, different types of computers and databases, and related communications means [was] sufficient." *Id.* (*citing Fonar Corp. v. General Electric Co.*, 107 F.3d 1542, 1549 (Fed. Cir. 1997) (disclosure of the functions of the software required)). No such disclosure is in the '377 patent.[6]

Indeed, bearing in mind that the entire algorithm must be disclosed, and that an algorithm is a "step-by-step process,"[7] it is apparent that the '377 patent fails to disclose an algorithm for selecting a path that a packet takes through the network. Although Plaintiff points to the "flow-control subsystem" as the structure associated with "flow-control means," it is insufficient to identify only a special purpose computer programmed to carry out an algorithm—the algorithm itself must be identified. *Harris Corp.*, 417 F.3d at 1253. At most, the specification repeats the vague, summary language of claim 32,[8] informing only that packets are routed[9] based on traffic information. Pl. Opp., p. 7; '377 patent, claim 32, col. 6, ln. 4-28. However, providing the factor upon which routing decisions may be based falls well short of providing the actual algorithm for selecting the path. *MDS Assoc. v. United States*, 37 Fed. Cl. 611 (Cl. Ct. 1997).[10] In sum, the '377 patent provides no "step-by-step" process allowing the reader to ascertain how the traffic information is used to select the path. Absent such information, claim 32 does not reasonably apprise one of ordinary skill in the art of its scope and is thus indefinite.

---

[6] *CIVIX* also confirms that a patentee cannot escape the requirement that the specification disclose structure for performing the claimed function by stating that such a structure would simply be "understood." *CIVIX*, 84 F. Supp. 2d at 1160.

[7] Plaintiff concedes that an algorithm is a "step-by-step process." Pl. Opp., p. 7.

[8] Plaintiff attempts to create a new standard whereby any language that "resembles the functional language" of the "means for" clause is sufficient disclosure. However, the only case that uses this phrase is *Harris Corp.*, and only to denote the simple fact that the algorithm identified in *WMS Gaming* could be linked or associated with the function recited in the claim. *Harris Corp.*, 417 F.3d at 1253. This does not—and cannot—mean, as Plaintiff contends, that every time the functional claim language is repeated in the specification, an algorithm has been provided.

[9] The routing function is essentially described as transmitting a packet to an appropriate node. The algorithm to determine the path of appropriate nodes is what the specification fails to disclose.

[10] Plaintiff fails to address, much less refute, *MDS*.

4

## II. DEFENDANTS' CONSTRUCTIONS SHOULD BE ADOPTED

### 1. SPREAD-SPECTRUM [MODULATION/SYSTEM] (CLAIMS 32 AND 33)

Defendants offer the following alternative construction for "spread spectrum": "**A form of communication in which the bandwidth for transmitting information is deliberately widened by means of a spreading function over that which would be needed to transmit the information alone.**" This definition, derived from the definition of "spread-spectrum" in 47 C.F.R. § 2.1, differs from Defendants' original construction only in that the reference to direct sequence spread spectrum (DSSS) and frequency hopping spread spectrum (FHSS) have been removed. Although Defendants continue to believe that spread-spectrum is properly limited,[11] the above proposal is being made to simplify the issues by avoiding an exhaustive discussion of which communication forms fall within the ambit of DSSS and FHSS during claim construction (but without waiving Defendants' arguments regarding which forms constitute "spread-spectrum"). Unfortunately, Plaintiff rejected this universally accepted definition, insisting without any reason or basis that the phrase "by means of a spreading function" be removed.

### 2. REMOTE STATION (CLAIMS 32 AND 33)

Plaintiff's contend that Defendants' proposed construction for "remote station" would "unnecessarily limit this term contrary to the teachings of the patent." Pl. Opp., p. 12. However, it would be necessary to distort the alleged "teachings" of the '377 patent to provide basis for Plaintiff's proposed construction of this term. In particular, in seeking to avoid having the term "remote station" limited to an end-user device, Plaintiff contends that Figs. 2 and 3 of the '377 patent teach that "computers 171, 172 and 182" are not limited to end-user devices and could be a server. Pl. Opp., p. 12. However, item 171 in these figures is illustrated as a cellular-type telephone, and items 172 and 182 are illustrated as standard personal computers. In any event, nowhere does the '377 patent teach, suggest, or otherwise represent that any of the remote stations communicate with any other device except a node in the distributed network.

Defendants have demonstrated that a "remote station" is described throughout the '377 patent as communicating with a node (or a hub node), and having no other communication capability. In response, Plaintiff cites, out of context, certain passages of the '377 patent, and contends that those passages teach that a remote station "can ultimately communicate with nodes

---

[11] *See In re Amendment of Part 15 of the Commission's Rules Regarding Spread Spectrum Devices*, Dkt. No. 99-231 (2001).

and other remote stations and to other networks." Pl. Opp., p. 13. However, in each instance in which the terms "remote station" or "remote stations" are used in the '377 patent, the '377 patent describes the remote station (or stations) as communicating only with a node or hub node (or with a base station in the Background section of the '377 patent). Therefore, it is more accurate to state that a "remote station" communicates only with a node. That node (not the remote station), upon receiving a communication from a remote station, then communicates with another device, such as another node or another remote station, to forward the communication. Accordingly, Defendants' proposed construction is more accurate and consistent with the meaning set forth in the '377 patent and should be adopted.

### 3. NODE (CLAIMS 32 AND 33)

Plaintiff contends that Defendants' proposed construction "is contrary to the express language" found in the '377 patent, and "runs contrary to well settled law" by allegedly attempting to limit the claim to an embodiment of the invention. Pl. Opp., p. 14 (*citing Comark Comms., Inc. v. Harris Corp.,* 156 F.3d 1182, 1186-87 (Fed. Cir. 1998)). Plaintiff, however, ignores the more recent holding by the Federal Circuit in *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F. 3d 1337, 1342-46 (Fed. Cir. 2001), which requires claims to be construed as including features described in the specification in certain instances. Plaintiff also fails to identify that the *Comark* decision does recognize that there is a "fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification," and that the specification should be used to "reconcile the claim language" and "shed[s] light on either the meaning of the term to the inventor, or the common meaning of the term to one of skill in the art." 156 F.3d at 1186-87.

Furthermore, Defendants' construction does not attempt to limit the entirety of claims 32 and 33 to an embodiment disclosed in the '377 patent. Rather, Defendants propose a construction of the term "node" consistent with the meaning of the term as set forth in the '377 patent, taking into account the characteristics that enable a node to communicate with remote stations and with other nodes as described in the '377 patent. Also, Plaintiff's Opposition Brief maintains the mischaracterization of the phrase "each node may include a plurality of spread-spectrum transceivers" (col. 5, ln. 1-2) as suggesting that each node need not include a plurality of spread-spectrum transceivers, but rather, can include only a single spread-spectrum transceiver. Pl. Opp., p. 13. Defendants, however, have demonstrated that in this context, the

6

term "may" would have been understood to mean that a node *may* include a plurality of transceivers, or *may* include a plurality of transceivers and receivers, but in any event, that a plurality is required. Def. Mem., p. 6-7.

In addition, Plaintiff contends that Defendants' construction runs afoul of the "doctrine of claim differentiation," and presents a disjointed comparison of claims 1 and 2 of the '377 patent to language in Defendants' claim construction. Pl. Opp., p. 14 (*citing Seachange Int'l, Inc. v. C-CorInc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005)). Plaintiff's discussion of *Seachange*, however, does not address the fact that the claims at issue (claims 1 and 37) were nearly identical, which is not the present case. 413 F.3d at 1369. Furthermore, Plaintiff fails to note that the *Seachange* holding recognizes that the doctrine "cannot broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence" (*quoting Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998)), and that the doctrine "is not a hard and fast rule, and will be overcome by a contrary construction dictated by the written description or prosecution history." 413 F.3d at 1369.

All this being said, and despite Plaintiff's allegations, it is perfectly consistent with the language of the '377 patent and case precedent to define a node as performing spread-spectrum modulation on the packets that are being routed to the end-user devices (remote stations). Accordingly, the Court should adopt the Defendants' construction of the term "node."

4.  **PACKET (CLAIMS 32 AND 33)**

The parties have agreed that the term "packet" should be construed as: **"A formatted block of information for communicating in a distributed network, which includes a source address and a destination address."**

5.  **DESTINATION ADDRESS (CLAIMS 32 AND 33)**

Plaintiff objects to Defendants' definition of "destination address," arguing that a "packet need not contain only one 'fixed' destination address, which may change at each node as the packet is transmitted through the network depending upon the information present at that node." Pl. Opp., p. 15. Plaintiff specifically argues that the patent "teaches that as a packet is transmitted through the distributed network, it contains the destination address to the next node (i.e., intended recipient) in the transmission." *Id.* This argument is inconsistent with the ordinary meaning of "destination" and the claim language, and has no support in the '377 patent.

7

According to Plaintiff, the "destination address" changes at each node to mean the next node along the path the packet takes. This is inconsistent with the ordinary meaning of "destination," which is commonly used to refer to an *ultimate* goal.[12] Destination is not used to refer to every step along the path.[13]

More importantly, Plaintiff's argument is inconsistent with the language of claims 32 and 33. Claim 32, for example, recites "flow-control means, responsive to the traffic information and to a respective packet, from a first node, having a respective destination address of a respective destination node of the plurality of nodes, [the flow-control means] for selecting a path of a multiplicity of nodes through the plurality of nodes to the destination node..." Though the language is awkward, the claim requires that the packet have "a" destination address (not destination "addresses"), that the address be to "the" destination node (not "a" destination node), that the path be selected at the "first node" (not at "each node or "every node"), and that the path be through a "multiplicity of nodes" (not to "an adjoining node"). The claim language is inconsistent with Plaintiff's theory that the destination address changes for each packet at each node, and is to the "next node...in the transmission." If the path were selected at each node, the reference to "first" node makes no sense. Similarly, if the destination node were the next node, the reference to a path through a "multiplicity of nodes" makes no sense. The same holds true for claim 33, which states that "packets have *a* destination address," and that the system "select[s], responsive to the traffic information and with respect to a packet, from the respective [first] node, having a respective destination address of a respective destination node...a path of a multiplicity of nodes through the plurality of node to the destination nodes . . . ."

Finally, contrary to Plaintiff's arguments, the '377 patent does not anywhere disclose that a packet's destination address (i.e., the destination node) changes at each node. Plaintiff relies on statements in the patent that the path of packets "is not predefined," and that the "paths for several packets for the same remote station can be different." '377 Patent, col.6, ln. 60-67. Although packets may travel different paths to reach the same destination, there is no suggestion that the destination address/destination node changes at each node. Instead, the patent

---

[12] Dictionary definitions for "destination" include "the place to which one is going or directed," and "the ultimate purpose for which something is created or intended." *The American Heritage Dictionary* (3d Ed. 2000).

[13] A person climbing a mountain describes the top as his or her destination, not the next rock on the path; someone driving from New York to Miami identifies his or her destination as Miami, not every intervening city. In terms of a packet in a network, the ordinary meaning of destination suggests that it means the final recipient of the packet in the network (which, in the '377 patent, is either a hub node or a remote station).

8

consistently refers to the destination address as being to either a remote station or a hub node (not an adjoining node).[14] In claims 32 and 33, the destination address must be to "the destination node." Remote stations are not "nodes." ("Nodes" and "remote stations" are distinguished throughout the patent—in the claims, the specification, and the drawings.) Accordingly, the only possible "node" that can be a destination is a hub node. Based upon the common meaning of "destination," the claim language, and the patent disclosure, claims 32 and 33 must be interpreted as requiring that the system calculates a path through a multiplicity of nodes to the destination node (i.e., hub node) at the time that a packet reaches the first node in the network. Plaintiff's attempt to twist the claim language should be rejected.

### 6. RESPECTIVE NODE (CLAIMS 32 AND 33)

Plaintiff suggests that a respective node "could be" a number of things. Pl. Opp., p. 17. That is the problem. Although "respective node" can mean any node in certain contexts, it must have a specific meaning for claim 33, where the claim requires the step of "selecting, responsive to…a respective packet, **from the respective node**, having a respective destination address of a respective destination node of the plurality of nodes, a path of a multiplicity of nodes through the plurality of nodes to the destination node…" The claim requires that the step of selecting a path to the destination node occur at "the respective node." In this context, the "respective node" cannot be any node. First, the claim does not say "a" respective node (compare to the reference to "a" packet); it says "the" respective node. Second, the respective node must be a "multiplicity of nodes" away from the destination node (because the path is through a multiplicity of nodes).

In opposing Defendants' construction of "respective node" Plaintiff argues that the path of a packet is determined on an *ad hoc* basis, such that a determination is made at each node as to where the packet will be sent next. Pl. Opp., p. 16-17. As set forth in the discussion of "destination address," this interpretation is contrary to the ordinary meaning of "destination," the language of the claims, and the patent disclosure.

---

[14] *See*, '377 patent, col. 2, ln. 64-66 ("in response to a packet having a destination address to the hub node, the flow-control sub-system routes the packet through appropriate nodes to the hub node . . . ."); col. 3, ln. 6-10 ("Based on the traffic at each node, each packet having a destination address to a remote station…"); col. 3, ln. 18-20. ("When an information packet(s) arrives from the remote station, the node routes the packet(s) to an appropriate second recipient node on the way to an intended hub node and central office, toward the destination address." ); col. 6, ln. 18-21 ("Based on the traffic of each node, each packet has a destination address to either the hub or remote station…").

9

Path selection to the destination node occurs once for each packet; the only issue is where the path selection step occurs. Claim 32, a network claim, states that it occurs at the "first node." Claim 33, the method claim analogue of claim 32, uses the term "respective node" instead of "first node." Although the language is different, the interpretation must be the same, or the claim is hopelessly indefinite. If the claim is to be saved, the only reasonable interpretation, consistent with the '377 patent, the language of claim 33, and the other claims, is that the system selects a path to the destination node when a packet arrives at the first node in the network. Defendants' construction should be adopted.

7.      **FLOW-CONTROL MEANS (CLAIM 32)**

As established above, "flow-control means" is governed by 35 U.S.C. §112, ¶ 6. In the event the Court determines that sufficient structure exists to render this term capable of interpretation, the construction must include the functions expressly recited in claim 32. Plaintiff's Opposition concedes that the "flow-control means" (i) communicates traffic information; (ii) selects a path of a multiplicity of nodes; and (iii) routes packets through a multiplicity of nodes."[15] Pl. Opp., p. 4. It is therefore unclear why Plaintiff continues to reject Defendants' claim construction whereby the "flow-control means" is defined to (a) communicate such traffic information…; (b) select a path for routing a packet…; and (c) cause the packet to be transmitted…; unless Plaintiff seeks an unduly broad interpretation of the term.

Plaintiff also contends that "there is absolutely no indication in claim 32 that the flow-control means must be centrally located and maintain traffic information about all of the nodes." Pl. Opp., p. 18. Yet, claim 32 expressly recites that the traffic information communicated between the plurality of nodes, includes traffic density "at *each* of the plurality of nodes." '377 patent, claim 32, col. 16, ln. 14-17. The only way such information could be communicated by the "flow-control means" is if this feature maintains traffic information about all of the nodes.

With respect to Plaintiff's argument that claim 32 is not a central flow-control system, Plaintiff is attempting to include systems which are not claimed. Pl. Opp., p. 18; '377 patent, col. 6, ln. 4-10. The disclosure of the '377 patent does disclose both a distributed flow-control system and a central flow-control system. *See* '377 patent, col. 6, lns. 6-10. As Defendants have

---

[15] The passages from the '377 patent cited in Plaintiff's Opposition also make clear that the construction of "flow-control means" must include communicating traffic information between all of the nodes; selecting a path for routing a packet; and causing the packet to be transmitted. *See* Pl. Opp., p. 18.

10

repeatedly noted, however, "[i]t is the *claims* that measure the invention." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985); *see also Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) ("the claim requirement presupposes that a patent applicant defines his invention in the claims, not in the specification. After all, the claims, not the specification, provide the measure of the patentee's right to exclude."). Although claims should not be unnecessarily restricted to specific embodiments, there is no authority for the notion that <u>every claim</u> must encompass <u>every embodiment</u>, particularly where the claim excludes the embodiment.[16] *Id.* Because the structure and language of claim 32 is inconsistent with a distributed system in which the "flow-control means" resides at each node, claim 32 is directed to a central flow-control system.

### 8. TRAFFIC INFORMATION (CLAIMS 32 AND 33)

In general, the parties' proposed constructions of "traffic information" differ in that Defendants properly limit the scope of the term to information that "indicates the capacity of a node to handle additional packets in view of, at least, the traffic density at the node," whereas Plaintiff seeks to encompass any and all information "regarding conditions of the distributed network or the transmission of data in the distributed network." The lack of support for Plaintiff's position is highlighted by the fact that its construction of the claims fails to recognize the one measure of network activity that unquestionably must be included within their scope. Specifically, both claims 32 and 33 expressly recite that "the traffic information includ[es] traffic density at each of the plurality of nodes," yet Plaintiff is attempting to avoid even this limitation.

Plaintiff contends that "the '377 patent specifies that traffic information could include a number of possible variables at any given time," but the portions of the specification Plaintiff cites do not support its position. Pl. Opp., p. 19. For example, nowhere does the '377 patent use the term "traffic information" to refer to traffic congestion, traffic flow, or whether the recipient is inside or outside of the network. Plaintiff also misrepresents Defendants' claim construction by charging that it excludes embodiments of the invention that use other types of traffic information to transmit packets. Pl. Opp., p. 19. Although Defendants' proposed construction requires the use of at least traffic density, it does not exclude other types of traffic information,

---

[16] If Plaintiff were permitted to simply read in every possible embodiment of the invention, no basis would remain for the statutory requirement that an applicant conclude his specification with "claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." *Sri Int'l,* 775 F.2d at 1121 (*citing* 35 U.S.C. § 112).

11

so long as such information indicates the capacity of a node to handle additional packets. Thus, for the reasons previously stated, the Court should adopt the Defendants' proposed construction as it more accurately reflects the scope of what the inventors actually described and claimed in the '377 patent. Def. Op. Br., p. 18-19; Def. Mem., p. 12-13.

### 9. TRAFFIC DENSITY (CLAIMS 32 AND 33)

Retreating somewhat from its original position, Plaintiff now contends that "traffic density" should be defined as "the number of packets at a node at a given time." Pl. Opp., p. 20. However, this new definition still does not accurately reflect the manner in which the term is used in the '377 patent. Although the term "traffic density" is not expressly defined in the '377 patent, given the ordinary meaning of the constituent words this term logically does not refer to a static condition, such as the number of packets stored in the memory of a node, as Plaintiff's new construction suggests. Rather, the term refers to the *movement* of packets *through* a node *during a period of time*. To illustrate, if someone was describing the "traffic density" at the intersection of two roads, he or she would likely speak in terms of the number of cars passing through the intersection per second, minute, hour, etc. In the same way, "traffic density" would ordinarily be understood as referring to the number of packets passing through a node per second, minute, hour, etc. Thus, Defendants' proposed construction most accurately reflects the manner in which the '377 patent uses the term "traffic density." Def. Op. Br., p. 13-14; Def. Mem., p. 19-20.[17]

### 10. RESPONSIVE TO THE TRAFFIC INFORMATION (CLAIMS 32 AND 33)

In an attempt to validate its proposed construction, Plaintiff continues to distort the teachings of the '377 patent pertaining to the term "traffic information." The numerous flaws in Plaintiff's position have already been addressed in the "Traffic Information" section, above, and in Defendants' Opposition Brief at p. 12-15.

Plaintiff now further argues that the '377 patent's alleged teaching of a distributed flow control subsystem precludes the construction offered by Defendants. Pl. Opp., p. 20. Specifically, Plaintiff contends that such a flow control subsystem enables a node to "react to the

---

[17] Plaintiff attempts to support its inaccurate construction by arguing that the '377 patent does not explain the meaning of Defendants' *definition* of the term "traffic density," but the same could be said anytime a patent does not provide an express definition for a claim term. It is axiomatic that "the construction of claims is simply a way of elaborating the normally terse claim language: in order to understand and explain, but not to change, the scope of the claims." *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991). Defendants' proposed construction does just that, explaining the meaning of the term "traffic density" in the context of the '377 patent using language that a jury can readily understand and apply.

12

traffic information at its neighboring nodes, and not necessarily to the traffic information throughout the entire network." *Id.* Once again, Plaintiff distorts the issue. Nowhere does Defendants' proposed construction state that the traffic information throughout the "entire network" be considered. Defendants proposed construction merely captures what is required by the specification and the asserted claims, namely, that the traffic information must include at least traffic density. The Court should therefore adopt Defendants' proposed construction of "responsive to the traffic information."

###### 11. FIRST NODE (CLAIM 32)

Plaintiff initially agreed that "first node" means "the first node within the distributed network that receives a packet originated by a remote station." The only disagreement was over whether the "first node" is also called the "respective node." Plaintiff's opposition, however, takes a new position. In a purported "clarification," Plaintiff now asserts that "a 'first node' could also be any type of node in the network, including a hub node, destination node, intermediate node and/or remote station." Pl. Opp., pp. 20-21. Plaintiff's "clarification" is inconsistent with its proposed definition and renders the term "first node" meaningless.

Plaintiff's new position that a "first node" may be a remote station is contrary both to the '377 patent and to Plaintiff's own proffered claim constructions. A remote station is not a node. Claims 32 and 33 separately identify "a plurality of nodes" and "a plurality of remote stations." If the "plurality of nodes" included remote stations, there would be no reason to separately call for a "plurality of remote stations"—it would be redundant. Indeed, the distinction between a node and a remote station runs throughout the '377 patent. Figure 3, for example, illustrates nodes as separate from remote stations. The same is true in the written description: "The plurality of nodes forms the distributed network. The distributed network *plus* the plurality of remote stations form the distributed system." '377 patent, col. 2, lns. 22-25 (emphasis added). The patent also explains transmission between a remote station and a node. '377 patent, col. 2, ln. 37-38. If remote stations were nodes, this description would not make sense. Plaintiff, too, has distinguished between a node and a remote station in its proposed claim constructions. *See, e.g.*, Pl. Mem., p. 13 (Under Plaintiff's proposed definition, a "remote station" transmits and receives packets "via a node"). A remote station is not a node, and therefore cannot be a "first node."

Similarly, Plaintiff's contention that any node in the network could be a "first node" removes all meaning from the word "first." Plaintiff claims, for example, that a "first node" can be an "intermediate node." Pl. Opp., p. 21. Intermediate is not first. Further, Plaintiff includes a "destination node" on its list of nodes that might be a "first node," with no explanation as to how a "destination" could come "first." *Id.* Plaintiff's new contention that the "first node" need not be "*first*," and need not even be a "*node*" should be rejected. Plaintiff's earlier definition was correct: a "first node" is "the first node within the distributed network that receives a packet originated by a remote station."[18]

### 12. DESTINATION NODE (CLAIMS 32 AND 33)

The dispute over the construction of "destination node" is whether a "destination node" is a "hub node." Plaintiff argues that "nodes other than hub nodes can serve as destination nodes, and can include a remote station, a node in another network, or even a remote station in another network." Pl. Opp., p. 21. Plaintiff's proposal ignores the written description and the claims themselves.

The Federal Circuit has repeatedly emphasized that the claims should be interpreted with reference to the patent's specification, or written description of the invention.[19] Accordingly, the patent's specification "is always highly relevant to the claim construction analysis; usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (quoted in *Phillips,* 413 F.3d at 1315). Thus, considering the patent as a whole, there are at least three problems with Plaintiff's broadened claim construction: (1) a "remote station" is not a "node"; (2) there is no support in the written description for the notion that a node other than a hub node could be a destination; and (3) Plaintiff's construction would encompass nodes and remote stations in other networks, while claims 32 and 33 are expressly directed to a single "distributed network."

First, as discussed above with respect to "first node," a remote station is not a node. The patent consistently distinguishes between nodes and remote stations. Because a remote station is not a node, it cannot be a "destination node." The '377 patent describes a distributed network in

---

[18] "First node" is also synonymous with "respective node," as discussed further below.

[19] For example, the Federal Circuit has stated that "[u]ltimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005).

14

Case No. 05-80300-CIV-MARRA/SELTZER

which, as Plaintiff quotes, "each packet ha[s] a destination address to *either the hub or a remote station.*" Pl. Mem, p. 21 (emphasis in original). The '377 patent's use of "either" indicates exclusivity; hub nodes or remote stations are the only contemplated destinations. Remote stations are not nodes. Therefore, hub nodes are the only nodes described as destinations. The "destination node" must be a hub node.[20]

Plaintiff appears to argue that the term "destination node" cannot refer to a "hub node" because a "hub node" has functions other than serving as a destination. The argument merely muddies the waters. A "destination node" is simply an individual "hub node" that is a destination for a packet. "[T]here may be a plurality of hubs" in the distributed network. '377 patent, col. 4, ln. 7. One of those hub nodes may function as the destination for a particular packet.[21] The term "destination node" thus allows the patent to refer easily to that one specific hub node. The use of the broader term "hub node" elsewhere in the patent (including in other claims) is consistent with this understanding.

Finally, Plaintiff complains that Defendants' proposed construction leaves out nodes and remote stations in other networks. That is true and it is a result of the express scope of claims 32 and 33. Both claims are specifically directed to "*A* distributed network" (emphasis added). This claim language is consistent with the '377 patent, which focuses on workings within a single network. There is no reason the claim construction should encompass other networks. Because Plaintiff's construction of "destination node" would unjustifiably expand the scope of claims 32 and 33 beyond what the '377 patent describes, it should be rejected.

13. SELECTING A PATH OF A MULTIPLICITY OF NODES (CLAIM 32) AND SELECTING A PATH OF A MULTIPLICITY OF NODES (CLAIM 33)

In support of Plaintiff's proposed construction, Plaintiff attempts to distract the Court from what otherwise is a clear reading of this term. Specifically, Plaintiff presents a largely unintelligible statement that "the choice to route is made between the multiplicity of nodes, not the network as a whole, or only those intermediate nodes falling in between the first node and the destination node." Pl. Opp., p. 22. Plaintiff's Opposition Brief then alleges that this seemingly meaningless statement is supported by the '377 patent at col. 6, ln. 58-66.

---

[20] The fact that the patent contemplates remote stations as destinations does not require a construction that shoehorns remote stations into the definition of "destination node." The words of the patent claim—not the patent's other text—control. *See supra,* Section 7.

[21] Alternatively, the packet may be routed to a remote station.

15

15 of 18

Defendants note, however, that this cited passage of the '377 patent describe a manner in which a packet passes through "various nodes," and states that the path is not predefined and can be different for different packets. '377 patent, col. 6, ln. 58-66. This passage does not detract from the explicit language in claims 32 and 33 which state that a selection of "a path of a multiplicity of nodes" is made. Furthermore, Plaintiff ignores the statement that "[i]n response to the traffic congestion and to a plurality of packets having voice data, the flow-control subsystem routes the plurality of packets *through a path in the plurality of nodes* to ensure that the plurality of packets arrive sequentially." '377 patent, col. 6, ln. 24-28 (emphasis added). Clearly, this passage supports the plain, unequivocal reading of the phrase "path of a multiplicity of nodes" to mean that a path of multiple nodes between the first (or respective) node is selected. Hence, the Court should adopt the construction offered by Defendants.

### III. CONCLUSION

In view of the foregoing, Defendants' constructions are correct and should be adopted.[22]

---

[22] The undersigned counsel has been authorized to file this joint memorandum of law on behalf of all of the Defendants.

16

Case No. 05-80300-CIV-MARRA/SELTZER

Dated:  June 2, 2006                                         Respectfully submitted,

| | |
|---|---|
| Darrell Payne, Esq.<br>Fla. Bar No. 773300<br>**SHOOK HARDY & BACON, L.L.P.**<br>Miami Center, Suite 2400<br>201 S. Biscayne Blvd.<br>Miami, Florida U.S.A.  33131-4332<br>Tel: (305) 358-5171<br><br>Michael E. Barry, Esq.<br>David J. Moorhead, Esq.<br>Nicole M. Bulman, Esq.<br>**GARDNER CARTON & DOUGLAS L.L.P.**<br>191 N. Wacker Drive, Suite 3700<br>Chicago, IL  60606-1698<br>Tel: (312) 569-1000<br><br>Joseph J. Buczynski, Esq.<br>**Gardner Carton & Douglas L.L.P.**<br>1301 K Street, NW, Suite 900, East Tower<br>Washington, DC  20005-3317<br>Tel: (202) 230-5000<br><br>*Counsel for Motorola, Inc.* | Eric K. Gabrielle, Esq.<br>Fla. Bar No. 160725<br>Marissa D. Kelley, Esq.<br>Fla. Bar No. 379300<br>**STEARNS, WEAVER, MILLER, WEISSLER,**<br>**ALHADEFF & SITTERSON, L.L.P.**<br>200 E. Broward Boulevard, Suite 1900<br>Fort Lauderdale, Florida  33301-1949<br>Tel: (954) 462-9500<br>Fax: (954) 462-9567<br><br>Mark M. Supko, Esq.<br>Michael H. Jacobs, Esq.<br>**CROWELL & MORING, L.L.P.**<br>1001 Pennsylvania Avenue, N.W.<br>Washington, DC  20004-2595<br>Tel: (202) 624-2500<br>Fax: (202) 628-5116<br><br>*Counsel for Nortel Networks, Inc.* |
| Charles H. Lichtman, Esq.<br>Fla. Bar No. 501050<br>**BERGER SINGERMAN**<br>Las Olas Centre II<br>350 E. Las Olas Boulevard, Suite 1000<br>Fort Lauderdale, Florida  33301<br>Tel: (954) 627-9913<br>Fax: (954) 523-2872<br><br>Ramsey M. Al-Salam, Esq.<br>Jessica L. Rossman, Esq.<br>**PERKINS COIE, L.L.P.**<br>1201 Third Avenue, Suite 4800<br>Seattle, WA  98101-3099<br>Tel: (206) 359-8000<br>Fax: (206) 359-9000<br><br>*Counsel for Strix Systems, Inc.* | James A. Gale, Esq.<br>Fla. Bar No. 371726<br>Gregory L. Hillyer, Esq.<br>Fla. Bar No. 682489<br>**FELDMAN GALE, P.A.**<br>Miami Center, Suite 1920<br>201 South Biscayne Blvd.<br>Miami, FL  33131-4332<br>Tel: (305) 358-5001<br>Fax: (305) 358-3309<br><br>*Counsel for Tropos Networks, Inc.*<br><br>/s/ Gregory L. Hillyer_____ |

17

Case No. 05-80300-CIV-MARRA/SELTZER

## CERTIFICATE OF SERVICE

I HEREBY BY CERTIFY that a true and correct copy of the foregoing was served by U.S. Mail on this 2nd day of June, 2006, upon counsel for the Plaintiff, Linex Technologies, Inc. in accordance with the following service list.

/s/ Gregory L. Hillyer

### Service List

| | |
|---|---|
| Julie Braman Kane | Edward W. Goldstein |
| julie@colson.com | egoldstein@gfiplaw.com |
| COLSON HICKS EIDSON | Corby R. Vowell |
| 255 Aragon Avenue, 2nd Floor | cvowell@gfiplaw.com |
| Coral Gables, Florida 33134-5008 | GOLDSTEIN & FAUCETT, L.L.P. |
| Tel: (305) 476-7400 | 1177 West Loop South, Suite 400 |
| Fax: (305) 476-7444 | Houston, TX  77027 |
| | Tel: (713) 877-1515 |
| | Fax: (713) 877-1737 |

*Counsel for Linex Technologies, Inc.*