IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 05-80300 CIV-MARRA/SELTZER

LINEX TECHNOLOGIES, INC.,

    Plaintiff,

  v.

MOTOROLA, INC., NORTEL NETWORKS
INC., TROPOS NETWORKS, INC., and
STRIX SYSTEMS, INC.,

    Defendants.

**DEFENDANTS' JOINT MEMORANDUM OF LAW IN RESPONSE TO
PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
<u>ADDITIONAL AND REVISED CLAIM CONSTRUCTION TERMS</u>**

Defendants Nortel Networks Inc., Tropos Networks, Inc., and Strix Systems, Inc. (collectively, "Defendants"), by and through their undersigned counsel, respectfully submit this memorandum of law in response to Plaintiff Linex Technologies, Inc.'s ("Plaintiff") Memorandum of Law in Support of Additional and Revised Claim Construction Terms (DE 125; "Plaintiff's Memorandum"). For the reasons stated herein and in Defendants' Joint Memorandum of Law in Support of Additional Claim Construction Terms (DE 124; "Defendants' Memorandum"), Defendants respectfully request that the Court adopt Defendants' proposed constructions of the six claim terms in U.S. Patent Nos. 6,493,377 and 7,167,503 (the "'377 patent" and "'503 patent," respectively; collectively, the "patents-in-suit") currently being addressed by the parties.

I.   **Introduction**

Defendants have proposed constructions of the six additional claim terms presently at issue that are consistent with the disclosures of the patents-in-suit, their file histories, the case law, and the patent statute. In contrast, Plaintiff's proposed constructions fail to properly reflect the scope of the alleged invention described in the patents-in-suit, and instead introduce ambiguities that broaden the scope of the claims well beyond anything the inventors actually invented. Defendants' approach is the legally correct one. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.").

II.   **Analysis of Disputed Claim Terms**[1]

A.   **Capable of Communicating – Claims 16 and 22 in the '377 Patent, And Claims 1, 2, 15, 18, and 30 in the '503 Patent**

| **Plaintiff's Construction** | **Defendants' Construction** |
|---|---|
| No construction necessary.<br><br>[or]<br><br>Having the ability to transmit and/or receive (depending on the context of the term). | The ability of a node to transmit a packet directly to an adjacent node or to receive a packet directly from an adjacent node. |

In their opening brief, Defendants supported their proposed construction of "capable of communicating" with citations to numerous instances in the specifications of the patents-in-suit showing that the word "communicating" was consistently used to refer only to a direct exchange

---

[1] Defendants note that the six disputed claim terms are addressed in this paper in the same order as in Defendants' Memorandum.

of packets between two adjacent nodes. Defendants' Memorandum at 3-6 (citing '377 patent, col. 4, lines 49; col. 4, lines 46-67; col. 5, lines 32-55; Figs. 2 and 3).[2]

In contrast, Plaintiff's Memorandum ignores the specifications and merely quotes two of the asserted claims where "capable of communicating" appears. Claim interpretation, however, is not performed in a vacuum. Where, as here, the specification of the patent consistently and exclusively uses a term in a particular way, it is appropriate to construe the term in accordance with that usage. *See Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003). Therefore, Defendants' proposed construction of this term should be adopted by the Court.

**B.    Flow-Control System – Claim 15 in the '503 Patent**

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| A system that routes packets through a part of or the entire distributed network. | A central computer or processor maintaining traffic information about all of the nodes in the distributed network, which (a) communicates such traffic information between all of the nodes, (b) selects a path for routing a packet from a first node to a destination node in view of the traffic information, and (c) causes the packet to be transmitted to the destination node through the selected path. |

Plaintiff and Defendants have taken very different approaches to the construction of this disputed term. As set forth in their opening brief, Defendants have construed the term according to express limitations in the claim language and the specification of the patents-in-suit. Defendants' Memorandum at 6-8. In contrast, while purporting to rely on the same intrinsic evidence, Plaintiff seeks a construction that would broadly encompass any and all systems for

---

[2] As in Defendants' Memorandum, and except where necessary, references to the specifications of the patents-in-suit will be made only to the '377 patent because the written description of the '503 patent is identical.

routing packets in a distributed network. Plaintiff's Memorandum at 7-10. Once again, Plaintiff's construction goes far beyond what the '503 patent describes as the patented invention.

Set forth below is a detailed discussion of why Defendants' interpretation of "flow-control system" should be adopted by the Court.

### 1. The Flow-Control System Must Be a Central Computer That Maintains Traffic Information About All of the Nodes

Plaintiff seeks to avoid limiting the flow-control system to a "central" computer or processor based on a disclosure in the specification of the '503 patent of both centralized and distributed flow-control functionality. Plaintiff's Memorandum at 8 (citing '503 patent at col. 5, lines 21-24). While the patent may describe a distributed system, claim 15 definitively does not *claim* such a system. *See Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1373 (Fed. Cir. 2008) ("The words of the claims define the scope of the patented invention."). The distributed network recited in claim 15 has three distinct elements: (1) a plurality of remote stations, (2) a plurality of nodes, *and* (3) a flow-control system. As a result, the *claimed* flow-control system cannot be "distributed throughout the network, with a flow-control subsystem resident at each node" as disclosed in the specification. *See* Defendants' Memorandum at 6-7.

Plaintiff also seeks to avoid any limitation on the scope of the flow-control system regarding the maintenance of traffic information. However, claim 15 expressly requires that the flow-control system selects a path and routes a packet through that path "responsive to *the traffic information*." '503 patent at col. 8, lines 42-55 (emphasis added). Significantly, claim 15 lacks any antecedent basis for the recitation of "*the* traffic information." To the extent this limitation can be properly construed at all, one must look to the specification to determine what "traffic

information" is being claimed.[3] There, the "Summary of the Invention" contains the following pertinent disclosure:

> The flow-control subsystem communicates traffic information between each of the nodes in the plurality of nodes. The traffic information typically includes traffic density at each of the nodes and node-memory availability.

'503 Patent at col. 3, lines 1-5; *see also* '377 patent, col. 6, lines 18-22 ("*Based on the traffic at each node*, and each packet having a destination address to either the hub or a remote station, the flow-control subsystem 340 transmits the packet from the hub node to an appropriate node, and routes the packet to the first recipient node" (emphasis added)). A person skilled in the art reading the ambiguous reference to "the traffic information" in claim 15 in light of the specification would therefore conclude that the claim is referring to traffic information communicated, and thus maintained by, the flow-control system.

### 2. The Flow-Control System Communicates Traffic Information Between All of the Nodes

Although claim 15 does not explicitly recite that the flow-control system communicates traffic information between all of the nodes, for substantially the same reasons just discussed, a person skilled in the art attempting to understand the ambiguous references to "the traffic information" in the claim would conclude that the flow control system communicates traffic information between all of the nodes in the network.

In order for the flow-control system of claim 15 to "route[], responsive to traffic information, the particular packet through the path of the multiplicity of nodes to the respective destination node," each node must have information concerning the traffic at adjacent nodes. Otherwise, the network would not be able to "balance[] the activity in each node relative to other

---

[3] Defendants reserve the right to assert that claims 15 and 30, both of which suffer from the same defect, are invalid for indefiniteness pursuant to 35 U.S.C. § 112, ¶ 2.

nodes in the distributed network" as stipulated in the specification. '377 patent, col. 6, lines 28-29; *see also* col. 2, lines 60-62 ("The flow-control subsystem communicates traffic information between each of the nodes in the plurality of nodes."); col. 6, lines 10-12 ("The flow control subsystem 340 communicates traffic information between each of the nodes in the plurality of nodes."). Because the flow-control system is the entity maintaining the traffic information, it follows that it is also the entity that provides the traffic information to all of the nodes. Conversely, there is nothing in the specification of the '503 patent to suggest that anything other than the flow-control system is capable of communicating the necessary traffic information between each of the nodes. Thus, this aspect of Defendants' proposed construction of flow-control system is supported by the language of claim 15 itself and the specification.

### 3. The Flow-Control System Selects a Path for Routing a Packet from a First Node to a Destination Node in View of the Traffic Information

This aspect of Defendants' proposed construction is dictated by the language of claim 15 itself, which states that the flow-control system "select[s] a path . . . through the plurality of nodes to the destination node . . . for routing, responsive to the traffic information." '503 patent at col. 8, lines 50-53. Plaintiff has not disputed that the flow-control system must perform this function, but Plaintiff would apparently prefer to have the jury figure out that requirement on its own. However, the grammar of the "flow-control system" limitation of claim 15 is at best awkward, and at worst incomprehensible. It is therefore appropriate for this Court to provide the jury with additional guidance in its claim construction ruling, even though this aspect of Defendants' proposed construction is expressly recited in the claim itself.

### 4. The Flow-Control System Causes the Packet to Be Transmitted to the Destination Node Through the Selected Path

As with the "selecting a path" limitation, claim 15 itself states that the flow-control system causes "the particular packet [to travel] through the path of the multiplicity of nodes to the respective destination node." Once again, in view of the confusing grammatical structure of the "flow-control system" limitation, it is appropriate for the Court to expressly include this indisputable limitation in its claim construction even though it is recited in the claim itself.

### 5. Plaintiff's Construction Fails to Impose Any Meaningful Limitation on the Scope of the Claim

Notwithstanding that the "flow-control system" limitation occupies fully two-thirds of the text of claim 15, the only substantive restriction that Plaintiff is willing to concede is that it must "route[] packets."[4] Even a cursory review of claim 15 reveals that the patent uses the term in a much more restricted manner. Read in view of the disclosure in the specification of the '503 patent, it is apparent that Defendants' construction properly reflects the scope of the disclosed invention, whereas Plaintiff's construction would encompass anything and everything capable of routing a packet, regardless of any relationship to what is described in the patent.

### C. Central Flow-Control Management System – Claim 30 in the '503 Patent

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| A system that routes packets through the entire distributed network. | A central computer or processor maintaining traffic information about all of the nodes in the distributed network, which (a) communicates such traffic information between all of the nodes, (b) selects a path for routing a packet from a first node to a destination node in view of the traffic information, and (c) causes the packet to be transmitted to the destination node |

---

[4] Plaintiff's proposed construction also states that the flow-control system routes packets "through a part of or the entire distributed network," but this additional text is meaningless.

|  | through the selected path. |
|---|---|

With minor exceptions, the issues before the Court are identical to those just discussed with respect to the term "flow-control system." First, for the term "central flow-control management system," Plaintiff has dropped any reference to routing packets only "through a part of" the distributed network, and thus has come closer to Defendants' proposed construction. Second, it is noteworthy that Plaintiff still does not restrict this claim term to a central system, as in Defendants' construction, despite the fact the claim expressly recites a "*central* flow-control management system." '503 Patent at col. 10, line 20. Again, it is Defendants' proposed construction that "most naturally aligns with the patent's description of the invention." *Phillips*, 415 F.3d at 1316.

**D.  First Multiplicity of Neighboring Nodes – Claims 16 and 22 in the '377 Patent**

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| Nodes within the distributed network that are in communication range with the first node. | A group of nodes, each of which is adjacent to the first node. |

As stated in Defendants' Memorandum and in claims 16 and 22 of the '377 patent, the "first multiplicity of neighboring nodes" are the nodes capable of communicating – *i.e.*, being in direct contact – with the first node. In other words, these are the nodes that are necessarily closest, or adjacent, to the first node.

In contrast, Plaintiff's proposed definition provides no assistance to the fact finder, as it introduces ambiguity through use of the term "communication range." Plaintiff has provided no explanation as to what "communication range" actually means, much less provide any indication where support for such an interpretation can be found. For example, it is unclear whether a remote station and the central office are within "communication range" of one another simply because they can communicate via a series of nodes. Indeed, Plaintiff's construction renders the

"first multiplicity of neighboring nodes" meaningless, since by definition *every node* in the distributed network is capable of communicating to every other node, at least indirectly. Therefore, Defendants' proposed construction of this term should be adopted by the Court.

### E.   First Traffic Information – Claim 22 in the '377 Patent

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| Traffic information related to the first multiplicity of neighboring nodes. | Information communicated between the first multiplicity of neighboring nodes *and the first node* in routing packets that indicates the capacity of each of the first multiplicity of neighboring nodes to handle additional packets in view of, at least, the traffic density at that node.[5] |

Defendants' proposed construction of "first traffic information" is consistent with the term "traffic information" recited in other asserted claims of the '377 patent, which was previously briefed and argued to the Court. *See* DE 68 at 18-19; DE 74 at 12-13; and DE 81 at 11-12. In particular, the term represents the conditions existing at the first multiplicity of neighboring nodes in order to determine the appropriate path for a packet traveling from the first node. Absent information concerning the traffic density at each of the first multiplicity of neighboring nodes, the path selection in accordance with the invention described in the '377 patent would be impossible because the information about the network traffic conditions would be incomplete. Defendants' Memorandum at 10-11.

Unlike Defendants' construction, Plaintiff's proposed definition, and in particular the use of the phrase "related to," introduces significant uncertainty as to the scope of this claim

---

[5] Defendants have added the italicized text to their proposed construction because, as Plaintiff conceded in its opening memorandum, "[i]t is clear from the context of claim 22 that the referenced 'traffic information' relates to that traffic information exchanged between the first multiplicity of neighboring nodes and the first node." Plaintiff's Memorandum at 7.

limitation. Therefore, Defendants' proposed construction of this term should be adopted by the Court.

### F. Second Node – Claims 16 and 22 in the '377 Patent and Claims 1, 2, 15, 18, and 30 in the '503 Patent

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| No construction necessary.<br><br>[or]<br><br>A node within the distributed network that receives a packet from a first node. | A selected one of two or more neighboring nodes through which a packet is routed to the destination node. |

The issue before the Court is whether the term "second node" in the asserted claims of the patents-in-suit refers to one of the "neighboring nodes" through which a packet is routed on its way to a destination node, as Defendants propose, or instead refers generally to any node in the network that receives a packet from a first node. In their opening brief, Defendants supported their proposed construction with citations to express language in the asserted claims and supporting disclosure in the specifications of the patents-in-suit. Defendants' Memorandum at 11-12. Plaintiff cited much the same language from the claims, but then inexplicably proposed a generic construction that completely ignores the very claim language on which it purported to be relying. *See* Plaintiff's Memorandum at 11 (quoting claim 1 of the '503 patent, reciting "the *second node selected from two or more nodes capable of communicating with the first node*") (emphasis in original). Thus, Plaintiff's own evidence supports Defendants' proposed construction, not Plaintiff's.

### III. Plaintiff's Proposed Changes Do Not Correct the Deficiencies in Its Original Constructions

Plaintiff's Memorandum proposes new constructions for three claim terms that were previously briefed and presented to the Court: node, destination address, and traffic density.

Rather than repeat Defendants' arguments in support of these constructions, Defendants respectfully refer the Court to their previously briefing and arguments presented in the *Markman* hearing on July 20, 2006. Set forth below is a short statement as to why Plaintiff's new constructions are still not correct.

### A.  Node

Plaintiff's proposed modification to the definition of "node" still fails to properly consider the characteristics of nodes that allow them to communicate with remote stations and with other nodes. *See* DE 68 at 11-12; DE 74 at 5-7; DE 81 at 6-7. And, although Defendants agree that, as claimed, nodes are capable of communicating with more than one remote station, these nodes must communicate with those remote stations via spread-spectrum modulation. Therefore, Defendants' definition should be adopted by the Court.

### B.  Destination Address

Plaintiff's "new" definition of "destination address" is actually no such thing, as it previously argued that the recipient of a packet could be within or outside the network. *See, e.g.*, DE 70 at 18-19. Tellingly, Plaintiff points to nothing in any of the newly asserted claims to justify its modified definition of this term. Rather, it appears that Plaintiff has added verbiage to its proposed definition of destination address merely to justify supplemental briefing on an issue that was first presented to the Court over two years ago. In any event, Defendants long ago demonstrated that Plaintiff's previous – and current – efforts to define this term are not supported by the claims themselves or the specifications of the patents-in-suit. *See* DE 68 at 13-14; DE 74 at 8-10; DE 81 at 7-9. Therefore, Defendants' definition should be adopted by the Court.

### C.  Traffic Density

Plaintiff is admittedly broadening its proposed definition of "traffic density" in order to "dispense[] with the necessity of" a limitation that it previously deemed necessary. DE 125 at

16.  And Plaintiff bases its conclusion that its new definition ("traffic congestion") is "more correct" because this new definition supposedly appears in three claims of the '377 patent *that are not being asserted against Defendants*.  DE 125 at 17.  However, the claims do not, as Plaintiff suggests, equate "traffic congestion" and traffic density."  Instead, the cited claims refer to "the traffic congestion" without any antecedent basis.  *See* '377 patent at col. 8, line 6.  Plaintiff argues that this is a reference to the "traffic density" recited earlier in the claim, but it could just as easily be a reference to the term "traffic information," which also appears earlier in the claim.  At best, this sloppy claim drafting creates an ambiguity, but it most certainly does not represent an effort by the inventor to define "traffic density."

In contrast, Defendants' proposed definition makes clear that "traffic density" must properly refer to the number of packets traversing a node over a unit of time.  *See* DE 68 at 19-20; DE 74 at 13-14; DE 81 at 12.  Therefore, Defendants' definition should be adopted by the Court.

## IV. Conclusion

Defendants respectfully request that the Court reject Plaintiff's proposed constructions and adopt those presented by Defendants for the reasons stated herein and in Defendants' Joint Memorandum of Law in Support of Additional Claim Construction Terms.[6]

Dated: May 13, 2008

/s/Michael H. Jacobs
Mark M. Supko
msupko@crowell.com
Michael H. Jacobs
mjacobs@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116

Marissa D. Kelley (Bar No. 379300)
mkelley@swmwas.com
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
200 East Las Olas Boulevard
21st Floor (PH A)
Fort Lauderdale, Florida 33301
Tel: (954) 462-9500
Fax: (954) 462-9567

ATTORNEYS FOR NORTEL NETWORKS INC.

---

[6] The undersigned has been authorized by Tropos Networks, Inc. and Strix Systems, Inc. to file this joint memorandum of law on behalf of Defendants.

- 14 -

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 13, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the parties of record on the attached Service List.

                                      /s/Michael H. Jacobs  
                                      Michael H. Jacobs

Case 9:05-cv-80300-KAM   Document 131   Entered on FLSD Docket 05/13/2008   Page 14 of 15

**SERVICE LIST**

| | |
|---|---|
| Edward Goldstein, Esq.<br>GOLDSTEIN & FACCETT, LLP<br>1177 West Loop South, Suite 400<br>Houston, TX  77027<br>Tel:  (713) 877-1515<br>Fax: (713) 877-1737<br>Email: egoldstein@gfiplaw.com<br><br>Julie B. Kane<br>COLSON HICKS EIDSON<br>255 Aragon Avenue, 2nd Floor<br>Coral Gables, FL  33134-5008<br>Tel:  (305) 476-7400<br>Fax: (305) 476-7444<br>Email: Julie@colson.com<br><br>ATTORNEYS FOR LINEX TECHNOLOGIES, INC. | Ramsey M. Al-Salam, Esq.<br>PERKINS COIE, LLP<br>1201 Third Avenue, Suite 4800<br>Seattle, WA  98101-3099<br>Tel:  (206) 359-6385<br>Fax: (206) 359-9000<br>Email: ralsalam@perkinscoie.com<br><br>Charles H. Lichtman, Esq.<br>BERGER SINGERMAN<br>350 East Las Olas Blvd.<br>Ft. Lauderdale, FL  33301<br>Tel:  (954) 525-9000<br>Fax: (954) 523-2874<br>Email: clichtman@bergersingerman.com<br><br>ATTORNEYS FOR STRIX SYSTEMS, INC. |
| James A. Gale, Esq.<br>Gregory L. Hillyer, Esq.<br>FELDMAN GALE, P.A.<br>Miami Center, Suite 1920<br>201 South Biscayne Boulevard<br>Miami, FL  33131<br>Tel:  (305) 358-5001<br>Fax: (305) 358-3309<br>Email: jgale@feldmangale.com<br><br>ATTORNEY FOR TROPOS NETWORKS, INC. | |